Peter J. Benvenutti (Bar No. 60566)
Tobias S. Keller (Bar No. 151445)
Michaeline H. Correa (Bar No. 215215)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
Email: pjbenvenutti@jonesday.com
tkeller@jonesday.com
mcorrea@jonesday.com

Proposed Attorneys for Debtor and Debtor in Possession PLANT INSULATION COMPANY

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PLANT INSULATION COMPANY, a California corporation,<br><br>Debtor. | Case No. 09-31347<br><br>Chapter 11<br><br>**DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY AND RETAIN JONES DAY AS GENERAL BANKRUPTCY COUNSEL, *NUNC PRO TUNC* TO THE PETITION DATE**<br><br><u>Hearing</u><br>Date: June 8, 2009<br>Time: 10:30 a.m. PDT<br>Place: 235 Pine Street, 23rd Floor<br>San Francisco, California<br>Judge: Honorable Thomas E. Carlson |

APPLICATION TO EMPLOY JONES DAY;
Case No. 09-31347

**TO THE HONORABLE THOMAS E. CARLSON, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; COUNSEL TO THE INFORMAL COMMITTEE OF UNSECURED CREDITORS; THOSE CREDITORS HOLDING THE TWENTY LARGEST UNSECURED CLAIMS AGAINST THE DEBTOR; AND THOSE PARTIES WHO HAVE REQUESTED SPECIAL NOTICE:**

Plant Insulation Company (the "Debtor" or "Plant"), debtor and debtor and possession herein, applies (the "Application") for an order, pursuant to sections 327(a) and 329(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the retention and employment of the law firm of Jones Day as its general bankruptcy counsel, *nunc pro tunc* to May 20, 2009. The Declaration of Peter Benvenutti (the "Benvenutti Declaration") is being filed concurrently herewith and in support of this Application. In further support of this Application, the Debtor respectfully represents as follows:

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. FACTUAL BACKGROUND[1]

### A. The Chapter 11 Case

On May 20, 2009, Plant filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor remains in possession of its property and continues to operate and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committee of unsecured creditors, trustee or examiner has been appointed in this case.

### B. Summary History of the Debtor

The Debtor, formerly known as both Plant Asbestos Company and Asbestos Company of California, was incorporated in California on March 23, 1937.[2] Plant was formed to engage in the

---

[1] Several of the facts contained herein have been adduced from the declarations of David Gordon and James Miller filed in this case on May 20, 2009.

[2] Thorpe Insulation Company ("Thorpe") was formed in 1948 and was formerly known as Plant Insulation Company. Thorpe is a debtor and debtor in possession in Chapter 11 Case No. 07-19271, currently pending in the Bankruptcy Court for the Central District of California, Los Angeles Division. Thorpe is completely

APPLICATION TO EMPLOY JONES DAY;
Case No. 09-31347

- 2 -

business of selling, installing and repairing asbestos, brick, cement, concrete, stone and all other types of fire proofing and insulating materials. Plant was an insulation contractor; its work regularly involved installing and removing asbestos products during a wide range of years.

As a result of Plant's sale and installation of asbestos-containing products dating back to the 1930s, Plant has been embroiled in asbestos-related litigation for many years. From early 1978 and continuing through the Petition Date, Plant had been subjected to thousands of asbestos bodily injury, wrongful death and loss of consortium claims and lawsuits for damages allegedly caused in whole or in part by exposure to asbestos-containing materials installed or supplied by Plant dating back to the 1930s (collectively, the "Asbestos Cases"). As of the Petition Date, thousands of Asbestos Cases were pending against Plant in California, primarily in Alameda and San Francisco counties. Prior to the Petition Date, approximately 40 new complaints were being filed against Plant each month, and Plant anticipates that numerous additional asbestos related claims will be asserted against it for many years to come. The potential liabilities represented by present and anticipated future asbestos related claims against Plant far exceed the value of Plant's assets. Plant believes that its historical comprehensive general insurance assets provide coverage for many of the present and future liabilities although, as discussed in further detail below, Plant's insurers dispute their liability in the Asbestos Cases.

### C. Insurance Coverage, Related Litigation, Claims and Settlements

Plant maintained comprehensive general and/or excess liability insurance from various insurers throughout the years during which it sold, handled, and installed the vast majority of the asbestos products that gave rise to the Asbestos Cases. Based on its belief that it has coverage for liabilities arising out of the Asbestos Cases, Plant has tendered thousands of suits to its primary Insurers. Notwithstanding their assertion that the polices were exhausted, the Insurers accepted

---

(continued...)

unrelated to Plant. Both Thorpe and Plant are also unrelated to the family of companies known as J.T. Thorpe, Inc., Thorpe Technologies, Inc., Thorpe Holding Co., Inc, and Dissolved Thorpe, Thorpe Corp., Thorpe Insulation Texas or Thorpe USA, Inc. Persons with claims against such entities should not file claims against Plant premised upon their claims against these unrelated entities.

the tender and continued to process, defend and/or settle numerous asbestos claims, pursuant to their policies, under a full reservation of rights.

In an effort to resolve certain coverage disputes with its Insurers[3], on January 17, 2006, Plant filed an action in the California Superior Court for the County of San Francisco, captioned *Plant Insulation Company v. Fireman's Fund Insurance Company, et al.* (No. CGC-06-448618) ("Declaratory Relief Action"). The Declaratory Relief Action is designated as complex litigation and is assigned for all purposes to the Honorable John E. Munter, Judge of the Superior Court. The current operative pleading seeking relief on behalf of Plant in the Coverage Litigation is the *Second Amended Complaint*, filed on April 16, 2007 (the "Amended Complaint"). Consistent with this Court's order modifying the automatic stay, Judge Munter will preside over a Phase II trial commencing on Tuesday, May 26, 2009. While the relief sought by Plant in the Declaratory Relief Action would substantially advance the parties' ability to finally resolve coverage issues relating to those policies, Plant believes that coverage issues relating to the Insurers' policies will survive the Declaratory Relief Action regardless of its outcome.

Plant has settled with two of its insurers for cash payments in excess of the stated limits of liability in their respective policies. Certain primary insurers have also paid cash to asbestos claimants in settlement of lawsuits against Plant. Thus far, in the aggregate, these settlements have resulted or may result in the Debtor receiving up to $27 million from those insurers for the benefit of asbestos claimants. Certain of the settlements are conditioned upon this Court approving those agreements. Also, the insurers' obligation to fund portions of the settlement amount are conditioned upon this Court confirming a plan that provides protection to the settling insurer

---

[3] These insurers include: Fireman's Fund Insurance Company, American Automobile Insurance Company, OneBeacon America Insurance Company, as successor under policies issued to Plant by American Employers Insurance Company, Sompo Japan Insurance Company of America, formerly known as Yasuda Fire & Marine Insurance Company, United States Fidelity and Guaranty Company, Royal Indemnity Company, successor by merger to Globe Indemnity Company, ACE Fire Underwriters Insurance Co., formerly known as CIGNA Fire Underwriters Insurance Co., formerly known as Aetna Fire Underwriters Insurance Company, United National Insurance Company, American Home Assurance Company, Insurance Company of the State of Pennsylvania, Granite State Insurance Company, Insurance Company of the West, ACE Property & Casualty Insurance Company, formerly known as Aetna Insurance Company, Mt. McKinley Insurance Company, formerly known as Gibralter Casualty Company, Safety National Casualty Corporation, Transport Insurance Company, and U.S. Fire Insurance Company, successor-in-interest to primary policies that Plant purchased from Industrial Indemnity between 1958 and 1962 (collectively, the "Insurers").

pursuant to section 524(g) of the Bankruptcy Code. The Debtor anticipates filing motions seeking the required Court approvals of those settlements.

### D. Sale of Plant's Assets and Wind Down of Business Operations

On May 17, 2001, Shahram Ameli, who had been Plant's Vice President and manager of operations for a number of years, formed Bayside Insulation, Inc. ("Bayside"). Pursuant to an agreement as of that same date, Plant sold substantially all of its business assets to Bayside.[4] By 2002, Plant had ceased active insulation operations, but continued to defend itself against claims and lawsuits and to pursue indemnity claims against Fibreboard. Ultimately, all outstanding stock in Plant was transferred to The Plant Insulation Trust, which as a result became, and is now, the owner of 100% of the outstanding shares of Plant. David J. Gordon is the President and Chief Executive Officer of Plant. Plant has no other officers or directors.

At present, Plant has no material liabilities except for liabilities unrelated to asbestos claims. Plant's assets consist principally of cash derived from settlements with certain insurers and claims against the Insurers and the Fibreboard Trust.

### E. Plant's Need for Reorganization

Plant is managing thousands of Asbestos Cases in numerous unrelated actions and venues. The *status quo* has numerous inefficiencies: The demand upon the courts is significant and Plant has been unable to consolidate the pending actions in a single or coordinated proceedings; Plant's resources have dwindled to the point that it is challenged in its efforts to fairly respond to plaintiffs' demands for discovery or the needs of counsel and its insurers to properly defend claims; plaintiffs with limited resources lack a streamlined means of submitting claims and having them considered, adjudicated, and paid; and insurers seeking to fully and finally limit their exposure lack the ability to protect themselves against unknown and future claimants that may be entitled to recourse against Plant's policies. In filing this chapter 11 case, the Debtor intends to invoke section 524(g) as a means of resolving the otherwise intractable set of issues associated with thousands of claims

---

[4] Other portions of Plant's business assets were purchased by Pacific Insulation Company, which itself is in bankruptcy in the Central District of California (Case No. 07-19271).

APPLICATION TO EMPLOY JONES DAY;
Case No. 09-31347
- 5 -

now pending against it in various jurisdictions, and the future lawsuits on future claims that would certainly be filed but for this bankruptcy case.

### III. RETENTION OF JONES DAY

Under section 327(a) of the Bankruptcy Code, a debtor in possession is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out [its] duties under this title." 11 U.S.C. § 327(a).[5] In accordance with Bankruptcy Rule 2014(a),[6] this Application and the Benvenutti Declaration set forth: (a) the specific facts showing the necessity for Jones Day's employment; (b) the reasons for the Debtor's selection of Jones Day as its restructuring counsel in connection with its chapter 11 case; (c) the professional services proposed to be provided by Jones Day; (d) the arrangement between the Debtor and Jones Day with respect to Jones Day's compensation (as well as the reasonableness thereof); and (e) to the best of the Debtor's knowledge, the extent of Jones Day's connections, if any, to certain parties in interest in this matters.

#### A. Jones Day's Qualifications

Jones Day is particularly well qualified to serve as the Debtor's counsel in this chapter 11 case. Jones Day is one of the largest law firms in the world, with a national and international practice, and has substantial experience in virtually all aspects of the law that may arise in this

---

[5] Section 101(14) of the Bankruptcy Code defines the phrase "disinterested person a person that —
    (A) is not a creditor, an equity security holder, or an insider;
    (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
    (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. 11 U.S.C. § 101(14).

[6] Bankruptcy Rule 2014(a) provides that an application seeking the employment of professional persons pursuant to section 327 of the Bankruptcy Code:
    shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

APPLICATION TO EMPLOY JONES DAY;
Case No. 09-31347
- 6 -

chapter 11 case, including bankruptcy, corporate, employee benefits, litigation, mergers and acquisitions, and tax.

Jones Day's restructuring practice group consists of approximately 100 attorneys practicing in offices throughout the United States and overseas. Jones Day's restructuring lawyers have played significant roles in various chapter 11 cases involving asbestos-related claims and Bankruptcy Code section 524(g)-related issues such as Thorpe Insulation Company, Pacific Insulation Company, USG Corporation, and Kaiser Aluminum Corporation.[7] Jones Day is also familiar with the Debtor's business, as the Debtor has been a Jones Day client since early February 2009. Jones Day's professionals have worked closely with the Debtor's management and other professionals and, as a result, are well acquainted with the Debtor's history, capital structure, asbestos claims, indemnity actions and related matters. Accordingly, Jones Day has substantial knowledge regarding the Debtor that will result in effective and efficient services in this chapter 11 case.

### B. Services to Be Provided by Jones Day

The Debtor seeks to employ and retain Jones Day as its general bankruptcy and restructuring counsel pursuant to the terms of this Application and the parties' chapter 11 engagement letter dated May 19, 2009, a copy of which is attached to the Benvenutti Declaration as Exhibit 1 (the "Engagement Letter").[8] Such retention is appropriate and necessary to enable the Debtor to execute faithfully its duties as a debtor and debtor in possession and to implement a successful restructuring and reorganization of its business operations and financial affairs. The Engagement Letter describes (a) the services that Jones Day anticipates performing for the Debtor in this chapter 11 case, (b) the terms and conditions of Jones Day's proposed engagement by the Debtor, and (c) the means by which conflicts of interest have been and will be identified and

---

[7] Jones Day also has extensive experience in a wide array of other chapter 11 cases, including Boscov's, Inc.; Burlington Industries, Inc.; Calpine Corporation; Cardinal Industries, Inc.; Chrysler, LLC; Cone Mills Corporation; CTC Communications; Dana Corporation; The Elder-Beerman Stores Corp.; Federated Department Stores, Inc.; FLYi, Inc.; Interep National Radio Sales, Inc.; Levitz Home Furnishings, Inc.; Montgomery Ward & Co.; Morrison Knudsen Corporation; Napster, Inc.; Oglebay Norton Company; Performance Transportation Services, Inc.; Slater Steel U.S., Inc.; and World Kitchen, Inc.

[8] Any references to, or summaries of, the Engagement Letter herein are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and the summaries provided herein.

APPLICATION TO EMPLOY JONES DAY;
Case No. 09-31347

- 7 -

avoided. The Debtor anticipates that Jones Day will render general legal services to the Debtor as needed throughout the course of this chapter 11 case, including advising on bankruptcy, employee benefits, finance, general corporate, labor and employment, litigation, mergers and acquisitions, real estate, securities and tax laws. In particular, the Debtor anticipates that Jones Day will perform, among others, the following legal services relating to this chapter 11 case (collectively, the "Restructuring Legal Services"):

(a) advising the Debtor of its rights, powers and duties as debtor and debtor in possession continuing to operate and manage its business and affairs under chapter 11 of the Bankruptcy Code;

(b) preparing on behalf of the Debtor all necessary and appropriate applications, motions, proposed orders, other pleadings, notices, schedules and other documents, and reviewing all financial and other reports to be filed in this chapter 11 case;

(c) advising the Debtor concerning, and preparing responses to, applications, motions, other pleadings, notices and other papers that may be filed by other parties in this chapter 11 case;

(d) advising the Debtor with respect to, and assisting in the negotiation and documentation of, financing agreements and related transactions;

(e) reviewing the nature and validity of any liens asserted against the Debtor's property and advising the Debtor concerning the enforceability of such liens;

(f) advising the Debtor regarding its ability to initiate actions to collect and recover property for the benefit of its estate;

(g) advising and assisting the Debtor in negotiations with the Debtor's certain of the Debtor's stakeholders;

(h) advising the Debtor in connection with the formulation, negotiation and promulgation of a plan or plans of reorganization and related transactional documents;

(i) assisting the Debtor in reviewing, estimating and resolving claims asserted against the Debtor's estate;

(j) commencing and conducting litigation that is necessary and appropriate to assert rights held by the Debtor, protect assets of the Debtor's chapter 11 estate or otherwise further the goal of completing the Debtor's successful reorganization; and

(k) performing all other necessary and appropriate legal services in connection with this chapter 11 case for or on behalf of the Debtor.

Jones Day also anticipates that it will be asked to provide (and continue to provide) non-bankruptcy services for the Debtor, including in the areas of corporate advice and governance, tax, and employee benefits.

The Debtor requires knowledgeable counsel to render these essential professional services. As noted above, Jones Day has substantial experience in all of these areas. Moreover, also as indicated above, Jones Day has obtained valuable institutional knowledge of the Debtor's business and financial affairs as a result of its representation of the Debtor prior to the Petition Date. Accordingly, the Debtor respectfully submits that Jones Day is uniquely well qualified to perform these services and represent the Debtor's interests in this chapter 11 case.

Jones Day will take the lead role in advising the Debtor on its overall strategy and the formulation and negotiation of a chapter 11 plan, as well as day-to-day case administration, operations and proceedings. Jones Day will coordinate with Snyder, Miller & Orton LLP ("SMO") and Morgan, Lewis & Bockius LLP ("MLB"), and with any other professionals Debtor may hereafter employ, to avoid duplication of services and increase efficiency by providing services within the scope of their respective employment. The Debtor understands that the firms intend to address and allocate primary responsibility for these different matters, in consultation with the Debtor or on a matter by matter basis as matters arise. Accordingly, the employment of Jones Day will enhance and will not duplicate the efforts of special litigation counsel SMO or MLB (or any other professionals retained by the Debtor).

### C.  Compensation and Fee Applications

Subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses (the "Fee Guidelines") issued by the Office of the United States Trustee (the "U.S. Trustee"), and pursuant to the Engagement Letter (and any future modification of Jones Day's compensation as discussed in the Engagement Letter), Jones Day will charge for its legal services on an hourly basis in accordance with the ordinary and customary hourly rates in effect as of January 1, 2009, as revised from time to time. Jones Day's hourly fees are comparable to those charged by attorneys of similar experience for engagements of scope and

complexity similar to this chapter 11 case. The hourly rates charged by Jones Day professionals differ based on, among other things, the professional's level of experience and the rates normally charged in the specific office in which the professional is resident. Jones Day will also seek reimbursement of actual and necessary out-of-pocket expenses in accordance with regular Jones Day policies. For all of these reasons, Jones Day's rates are reasonable.

The names, positions, resident offices and hourly rates as of January 1, 2009 of those Jones Day lawyers currently expected to spend significant time providing Restructuring Legal Services and other services during the pendency of this chapter 11 case are attached to the Benvenutti Declaration as <u>Exhibit 4</u>.

Jones Day will maintain detailed, contemporaneous time records in six minute intervals and apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses and any additional procedures that may be established by the Court in this chapter 11 case. Jones Day has agreed to accept as compensation and reimbursement such sums as may be allowed by the Court. Jones Day understands that interim and final fee awards are subject to approval by this Court, as modified by any interim fee procedures or arrangements approved by this Court.

### D. Funding Issues and Possibility of Withdrawal

The Engagement Letter contains the following acknowledgment of the Debtor's financial condition and its obligation to provide further assurances that Jones Day will be compensated in a fashion acceptable to Jones Day:

> Plant and the Firm anticipate that Plant's currently available cash resources will be insufficient to fund the Firm's fees and expenses over the course of the Bankruptcy Case. Accordingly, it is an essential part of our agreement that Plant will, within one hundred twenty (120) days following the filing of the Bankruptcy Case, provide the Firm with further assurances in the form of: (a) a commitment, on terms and from a source acceptable to the Firm and approved by the Bankruptcy Court, to fund a post-petition loan to Plant in an amount adequate in the Firm's judgment to pay administrative expenses of the Bankruptcy Case; (b) receipt by Plant of unencumbered and unrestricted funds available to pay

administrative expenses of the Bankruptcy Case, in an amount adequate in the Firm's judgment to do so; (c) negotiation of and agreement to a deferred compensation arrangement between the Firm and Plant, providing for contingent fee payments acceptable to the Firm in its sole discretion to compensate for the risk of non-payment and approved by the Bankruptcy Court pursuant to Bankruptcy Code §328; or (d) a combination of the foregoing acceptable to the Firm in its sole discretion.

If the foregoing are not or cannot be provided to the Firm within one hundred twenty (120) days after commencement of the Bankruptcy Case, or such additional time as the Firm may agree in its sole discretion, Plant's failure to do so shall constitute good cause for withdrawal, and the Firm shall have the right in its sole discretion to withdraw from Plant's representation in the Bankruptcy Case (subject to complying with its ethical responsibilities to cooperate in a transition to successor counsel, and to seek and obtain leave of Court for such withdrawal, which Plant agrees it will not oppose). This provision, including the right of the Firm to withdraw from the representation under the circumstances described herein, shall be an explicit element of the terms of the Firm's retention as counsel for Plant and of Plant's initial application to the Bankruptcy Court for authority to retain the Firm in the Bankruptcy Case, and the Court's approval of this provision authorizing withdrawal as part of the initial application to retain the Firm is an express condition to the Firm's agreement to undertake this representation at the outset.

Accordingly, pursuant to the terms of the Engagement Letter, Plant seeks to confirm that, as an express condition to its agreement to undertake this representation, Jones Day shall be authorized to withdraw if the assurances sought in the Engagement Letter are not timely provided.

### E. Disclosure Concerning Disinterestedness

The Benvenutti Declaration discloses Jones Day's connections to the Debtor and parties in interest in this cases and is incorporated herein by reference. Except as set forth in the Benvenutti Declaration, the Debtor believes that: (a) Jones Day has no connection with the Debtor, its affiliates, its creditors, the United States Trustee for the Northern District of California (the "U.S. Trustee"), any person employed in the office of the U.S. Trustee or any other party with an actual or potential interest in this chapter 11 case or their respective attorneys or accountants; (b) Jones Day is not a creditor, equity security holder or insider of the Debtor; (c) none of Jones Day's partners or associates is, or was within two years of the Petition Date, a director, officer or employee of the Debtor; and (d) Jones Day neither holds nor represents an interest adverse to the Debtor, its respective estates or any class of creditors or equity security holders, by reason of any

direct or indirect relationship to, connection with or interest in the Debtor, or for any other reason. For the foregoing reasons, the Debtor believes that Jones Day is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

### F. Prepetition Professional Compensation

On January 29, 2009, the Debtor provided Jones Day with an advance payment of $400,000 (the "Initial Deposit") to pay for legal services rendered or to be rendered by Jones Day in connection with the Debtor's efforts to pursue a possible out-of-court restructuring and in preparation for the commencement of this chapter 11 case (the "Prepetition Services"). The Debtor made subsequent advances of $1,240,000, and paid Jones Day or authorized withdrawals against the Initial Deposit in the aggregate amount of $385,318.40, leaving a net deposit of $1,254.680.60 (the "Retainer").[9] The source of the Retainer was the Debtor's cash.

The Debtor's cash deposits were never fully exhausted. Jones Day will seek Court approval to apply any remaining Retainer against any unpaid fees or unreimbursed disbursements for Restructuring Legal Services, with any unapplied portion of the Retainer, if any, to be promptly returned to the Debtor at the conclusion of the chapter 11 case.

### G. Request for *Nunc Pro Tunc* Retention

*Nunc pro tunc* retention is appropriate here because this Application was filed shortly after the Petition Date, and Jones Day anticipates that it will provide necessary services to the Debtor during the period between the Petition Date and the date the Court enters an order on this Application, as well as thereafter.

---

[9] Jones Day has not yet reconciled its actual fees and expenses through the Petition Date against estimated fees and expenses through the Petition Date. Any prepetition restructuring draws in excess of Jones Day's actual fees and expenses for the applicable invoice period will be added to, and treated as part of, the Retainer. Any shortfall in the prepetition restructuring draws compared to Jones Day's actual fees and expenses will result in an application, and corresponding reduction in the amount, of the Retainer. Accordingly, the amount of the Retainer remaining after (a) the reconciliation of any estimated prepetition restructuring draws and (b) the application of the prepetition restructuring draws and the Retainer to Jones Day's actual fees and expenses for the prepetition period, may differ from the amount stated above. Jones Day expects to complete its reconciliation of prepetition fees and expenses actually incurred through the Petition Date no later than the filing of its first interim fee application in this case and to make a corresponding adjustment to the amount and application of the Retainer described in the text above on or about that date, and will state the amount of any such adjustment in the fee application.

## IV. NOTICE

A copy of this Application has been provided to the United State Trustee. Notice of this Application and the hearing date thereon have been provided to the United State Trustee, counsel for the informal committee of unsecured creditors, the Office of the U.S. Trustee, the 20 largest creditors in this case, and any party who has filed a request for special notice as of the date of service of the Notice.

## V. CONCLUSION

Based on the foregoing, the Debtor believes that the retention of Jones Day is in the best interests of the Debtor and its estate.

**WHEREFORE**, the Debtor respectfully requests that the Court: (a) enter an order approving the Application; and (b) grant such other and further relief to the Debtor as the Court may deem proper.

Dated: May 22, 2009

PLANT INSULATION COMPANY

By: _____
David J. Gordon,
Its Chief Executive Officer

*APPROVED AS TO FORM:*

DATED: May 22, 2009

JONES DAY

By: /s/ Tobias S. Keller
Tobias S. Keller

Proposed Attorneys for Debtor and Debtor in Possession, Plant Insulation Company

SFI-603669v10

Case: 09-31347    Doc# 38    Filed: 05/22/09    Entered: 05/22/09 17:15:13    Page 13 of 13