Peter J. Benvenutti (Bar No. 60566)
Tobias S. Keller (Bar No. 151445)
Michaeline H. Correa (Bar No. 215215)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:    (415) 626-3939
Facsimile:    (415) 875-5700
Email:        pjbenvenutti@jonesday.com
              tkeller@jonesday.com
              mcorrea@jonesday.com

Proposed Attorneys for Debtor and Debtor in
Possession PLANT INSULATION COMPANY

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PLANT INSULATION COMPANY, a California corporation,<br><br>                    Debtor. | Case No. 09-31347<br><br>Chapter 11<br><br>**DECLARATION OF PETER J. BENVENUTTI IN SUPPORT OF DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY AND RETAIN JONES DAY AS GENERAL BANKRUPTCY COUNSEL, *NUNC PRO TUNC* TO THE PETITION DATE**<br><br><u>Hearing</u><br>Date:      June 8, 2009<br>Time:      10:30 a.m. PDT<br>Place:    235 Pine Street, 23rd Floor<br>           San Francisco, California<br>Judge:    Honorable  Thomas E. Carlson |

Case: 09-31347    Doc# 39    Filed: 05/22/09    Entered: 05/22/09 17:22:18    Page 1 of 38

I, Peter J. Benvenutti, declare:

1.     I am an attorney licensed to practice law in the State of California and am admitted to practice before this Court. I am a partner of the law firm of Jones Day, proposed general bankruptcy counsel to debtor and debtor in possession Plant Insulation Company (the "Debtor").

2.     I submit this declaration in support of the Debtor's Application for Authority to Employ and Retain Jones Day as General Bankruptcy Counsel, *nunc pro tunc* to the Petition Date (the "Application").

3.     The facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify thereto.

4.     Jones Day's restructuring practice group consists of approximately 100 attorneys practicing in offices throughout the United States and overseas. Jones Day's restructuring lawyers have played significant roles in various chapter 11 cases involving asbestos and 524(g)-related issues such as Thorpe Insulation Company, Pacific Insulation Company, USG Corporation, and Kaiser Aluminum Corporation. Jones Day also has extensive experience in a wide array of other chapter 11 cases including Boscov's, Inc.; Burlington Industries, Inc.; Cardinal Industries, Inc.; Chrysler, LLC; Cone Mills Corporation; CTC Communications; Dana Corporation; The Elder-Beerman Stores Corp.; Federated Department Stores, Inc.; FLYi, Inc.; Interep National Radio Sales, Inc.; Levitz Home Furnishings, Inc.; Montgomery Ward & Co.; Morrison Knudsen Corporation; Napster, Inc.; Oglebay Norton Company; Performance Transportation Services; Slater Steel U.S., Inc.; and World Kitchen, Inc.

5.     Jones Day has been employed by the Debtor since early 2009 to advise it regarding a potential restructuring. On May 19, 2009, the Debtor entered into a letter agreement attached hereto as <u>Exhibit 1</u> (the "Engagement Letter") reflecting the terms of the parties' agreement to have Jones Day represent the Debtor as its general counsel in the above-referenced chapter 11 case.

6.     The Engagement Letter contains the following acknowledgement of the Debtor's financial condition and its obligation to provide further assurances that Jones Day be compensated in a fashion acceptable to Jones Day:

BENVENUTTI DECLARATION IN
SUPPORT OF RETENTION OF JONES DAY

- 2 -

Plant and the Firm anticipate that Plant's currently available cash resources will be insufficient to fund the Firm's fees and expenses over the course of the Bankruptcy Case. Accordingly, it is an essential part of our agreement that Plant will, within one hundred twenty (120) days following the filing of the Bankruptcy Case, provide the Firm with further assurances in the form of: (a) a commitment, on terms and from a source acceptable to the Firm and approved by the Bankruptcy Court, to fund a post-petition loan to Plant in an amount adequate in the Firm's judgment to pay administrative expenses of the Bankruptcy Case; (b) receipt by Plant of unencumbered and unrestricted funds available to pay administrative expenses of the Bankruptcy Case, in an amount adequate in the Firm's judgment to do so; (c) negotiation of and agreement to a deferred compensation arrangement between the Firm and Plant, providing for contingent fee payments acceptable to the Firm in its sole discretion to compensate for the risk of non-payment and approved by the Bankruptcy Court pursuant to Bankruptcy Code §328; or (d) a combination of the foregoing acceptable to the Firm in its sole discretion.

If the foregoing are not or cannot be provided to the Firm within one hundred twenty (120) days after commencement of the Bankruptcy Case, or such additional time as the Firm may agree in its sole discretion, Plant's failure to do so shall constitute good cause for withdrawal, and the Firm shall have the right in its sole discretion to withdraw from Plant's representation in the Bankruptcy Case (subject to complying with its ethical responsibilities to cooperate in a transition to successor counsel, and to seek and obtain leave of Court for such withdrawal, which Plant agrees it will not oppose). This provision, including the right of the Firm to withdraw from the representation under the circumstances described herein, shall be an explicit element of the terms of the Firm's retention as counsel for Plant and of Plant's initial application to the Bankruptcy Court for authority to retain the Firm in the Bankruptcy Case, and the Court's approval of this provision authorizing withdrawal as part of the initial application to retain the Firm is an express condition to the Firm's agreement to undertake this representation at the outset.

Pursuant to this provision, Jones Day seeks confirmation that, as a condition to the Firm's agreement to undertake this representation, it shall be authorized to withdraw if the assurances sought in the Engagement Letter are not timely provided.

7. Jones Day understands that the Debtor requires ongoing bankruptcy-related services in order to accomplish a contemplated reorganization. Accordingly, Jones Day anticipates that it will perform, among others, the following legal services during this chapter 11 case (collectively, the "Restructuring Legal Services"):

1
     a.  advising the Debtor of its rights, powers and duties as debtor and debtor in possession continuing to operate and manage its business and affairs under chapter 11 of the Bankruptcy Code;

2

3
     b.  preparing on behalf of the Debtor all necessary and appropriate applications, motions, proposed orders, other pleadings, notices, schedules and other documents, and reviewing all financial and other reports to be filed in this chapter 11 case;

4

5
     c.  advising the Debtor concerning, and preparing responses to, applications, motions, other pleadings, notices and other papers that may be filed by other parties in this chapter 11 case;

6

7
     d.  advising the Debtor with respect to, and assisting in the negotiation and documentation of, financing agreements and related transactions;

8
     e.  advising the Debtor regarding its ability to initiate actions to collect and recover property for the benefit of its estate;

9
     f.  advising and assisting the Debtor in connection with any potential property dispositions;

10

11
     g.  advising and assisting the Debtor in negotiations with the Debtor's certain of the Debtor's stakeholders;

12
     h.  advising the Debtor in connection with the formulation, negotiation and promulgation of a plan or plans of reorganization and related transactional documents;

13

14
     i.  assisting the Debtor in reviewing, estimating and resolving claims asserted against the Debtor's estate;

15
     j.  commencing and conducting litigation that is necessary and appropriate to assert rights held by the Debtor, protect assets of the Debtor's chapter 11 estate or otherwise further the goal of completing the Debtor's successful reorganization; and

16

17
     k.  performing all other necessary and appropriate legal services in connection with this chapter 11 case for or on behalf of the Debtor.

18

19
Jones Day also anticipates that it will be asked to provide (and continue to provide) non-

20
bankruptcy services for the Debtor, including in the areas of corporate advice and governance,

21
tax, and employee benefits.

22
     8.    Based upon Jones Day's extensive general bankruptcy experience and the valuable

23
institutional knowledge of the Debtor's business and financial affairs that it has gained as a result

24
of its representation of the Debtor prior to the Petition Date, Jones Day is uniquely well qualified

25
to perform the foregoing services and represent the Debtor's interests in this chapter 11 case.

26
     9.    Jones Day will take the lead role in advising the Debtor on its overall strategy and

27
the formulation and negotiation of a chapter 11 plan as well as day-to-day case administration,

28
operations and proceedings. Jones Day will coordinate with the Debtor's professionals, including

BENVENUTTI DECLARATION IN
SUPPORT OF RETENTION OF JONES DAY

- 4 -

proposed special insurance counsel Snyder, Miller & Orton LLP and Morgan, Lewis & Bockius LLP, and any other professionals the Debtor may hereafter employ, to avoid duplication of services and increase efficiency by providing services within the scope of their respective employment. The firms intend to address and allocate primary responsibility for these different matters, in consultation with the Debtor or on a matter-by-matter basis as matters arise. Accordingly, the employment of Jones Day will enhance and not duplicate the efforts of any other professionals retained by the Debtor.

10.     Pursuant to the terms of the Engagement Letter, and subject to the Court's approval of the Application and to any future modification of Jones Day's compensation arrangement as discussed in the Engagement Letter and paragraph 6 above, Jones Day will charge for its legal services on an hourly basis in accordance with the ordinary and customary hourly rates in effect as of January 1, 2009,[1] as revised from time to time in accordance with the Engagement Letter, and will seek reimbursement of actual and necessary out-of-pocket expenses in accordance with regular Jones Day policies.

11.     The names, positions, resident offices and hourly rates as of January 1, 2009 of those Jones Day lawyers currently expected to spend significant time providing Restructuring Legal Services and other services during the pendency of this chapter 11 case are attached hereto as Exhibit 4. Jones Day's hourly fees are comparable to those charged by attorneys of similar experience for engagements of scope and complexity similar to this chapter 11 case. For all of these reasons, Jones Day's rates are reasonable.

12.     Jones Day will maintain detailed, contemporaneous time records in six minute intervals and apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any additional procedures that may be established by the Court in this chapter 11 case. Jones Day has agreed to accept as compensation and reimbursement such sums as may be allowed by the Court. Jones Day understands that interim and final fee awards are

---

[1] The hourly rates charged by Jones Day professionals differ based on, among other things, the professional's level of experience and the rates normally charged in the specific office in which the professional is resident.

Case: 09-31347    Doc# 39    Filed: 05/22/09    Entered: 05/22/09 17:22:18    Page 5 of 38

1  subject to approval by this Court, as modified by any interim fee procedures or arrangements

2  approved by this Court.

3         13.     To the best of my knowledge and except as set forth below: (a) Jones Day has no

4  connection with the Debtor, its affiliates, its creditors, the United States Trustee for the Northern

5  District of California (the "U.S. Trustee"), any person employed in the office of the U.S. Trustee

6  or any other party with an actual or potential interest in this chapter 11 case or their respective

7  attorneys or accountants; (b) Jones Day is not a creditor, equity security holder or insider of the

8  Debtor; (c) none of Jones Day's partners or associates is, or was within two years of the Petition

9  Date, a director, officer or employee of the Debtor; and (d) Jones Day neither holds nor represents

10  an interest adverse to the Debtor, its respective estates or any class of creditors or equity security

11  holders, by reason of any direct or indirect relationship to, connection with or interest in the

12  Debtor, or for any other reason. Accordingly, Jones Day is a "disinterested person," as defined in

13  section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy

14  Code.

15         14.     Jones Day received a list of the names (collectively, the "Interested Parties") of

16  individuals or institutions in the following categories:

17       a) the Debtor;
     b) the Debtor's Equity Holders;

18       c) the Debtor's Current and Former Directors / Officers;

19       d) the Debtor's insurers, insurance brokers and third party administrators; and
     e) parties in litigation or arbitration with the Debtor and certain non-debtor affiliates;

20       f) the attorneys for the United States Trustee's Office for the Northern District of California; and

21       g) the bankruptcy judges for the Northern District of California.

22  The identities of the Interested Parties are set forth on Exhibit 2 attached hereto.

23         15.     To check and clear potential conflicts of interest in these cases, as well as to

24  determine all "connections" (as such term is used in Bankruptcy Rule 2014) to the Debtor, its

25  creditors, other parties in interest, their respective attorneys and accountants, the U.S. Trustee or

26  any person employed in the office of the U.S. Trustee, Jones Day researched its client database to

27  determine whether it had any relationships with the Interested Parties. Jones Day began running

28  conflict checks on the parties in interest on January 20, 2009 (the date the first party in interest

BENVENUTTI DECLARATION IN
SUPPORT OF RETENTION OF JONES DAY

- 6 -

was identified) and continued to run conflict checks thereafter as new parties in interest were identified. To the extent that Jones Day's research of its relationships with the Interested Parties indicates that Jones Day has represented within the past two years, or currently represents, any of these entities in matters unrelated to this chapter 11 case, the identities of these entities and such entities' relationship to the Debtor and connection to Jones Day, are set forth on Exhibit 3 attached hereto. Immediately prior to the commencement of this chapter 11 case, Jones Day again conducted a conflicts review of the Debtor and its affiliates, the equity holders in the Debtor, current and former directors/officers of the Debtor, the creditors holding the twenty largest unsecured claims against the Debtor, the insurance coverage defendants, other adverse parties in this case, the counsel to the claimants/plaintiffs asserting a claim against the Debtor allegedly based upon personal injury and wrongful death caused by exposure to asbestos, and other professionals in this case. Jones Day is continuing its conflicts review regarding the parties that are co-defendants with the Debtor. Jones Day will make further appropriate disclosures, if any are needed, as the additional conflict checks are completed.

16. To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I, nor Jones Day nor any partner or associate thereof has any connection with the Debtor, its creditors, the U.S. Trustee or any other party with an actual or potential interest in this chapter 11 case or their respective attorneys or accountants, except as set forth below and in Exhibit 3 attached hereto:

   a) Jones Day has not, does not and will not represent any entity other than the Debtor in matters related to this chapter 11 case.

   b) Prior to the Petition Date, Jones Day performed certain legal services for the Debtor, as described herein and in the Application. Jones Day has been paid in full for all of its prepetition services.

   c) In matters *unrelated* to the Debtor or this chapter 11 case, Jones Day currently represents multiple co-defendants of the Debtor in a numerous cases. These relationships are set forth in the attached Exhibit 3. Jones Day, however, does not and will not represent the Debtor in matters relating to that litigation and the Debtor has agreed to waive any actual or potential conflict of interest.

BENVENUTTI DECLARATION IN
SUPPORT OF RETENTION OF JONES DAY

- 7 -

d) Jones Day currently represents the Official Creditors' Committee of Thorpe Insulation Company and Pacific Insulation Company in chapter 11 cases pending in the U.S.B.C., C.D. Cal. [cases no. 2: 07-19271 BB and 2:07-20016 BB]. Prior to October 2008, the Thorpe and Pacific Committee was represented by Heller Ehrman LLP. I was the Heller Ehrman lawyer with primary responsibility for its representation of the Thorpe and Pacific Committee, and I am the primary lawyer currently responsible for Jones Day's representation of that Committee. Alan Brayton, Esq., and David McClain, Esq., are the co-chairs of the Thorpe and Pacific Committee, and each of them represents one or more creditors of Thorpe who are members of that Committee. In the course of the representation of the Thorpe and Pacific Committee by Heller Ehrman, Heller Ehrman, and I individually, also represented Messrs. Brayton and McClain in responding to discovery directed to them by certain insurers which were taking positions adverse to the positions asserted by the Thorpe and Pacific Committee, arising out of the service by Messrs. Brayton and McClain as co-chairs of the Thorpe and Pacific Committee or of the predecessor informal creditors committee prior to the commencement of the Thorpe and Pacific Cases; and it is possible that Jones Day may represent either or both Mr. Brayton and Mr. McClain in responding to similar discovery requests in the future. I am informed and believe that Messrs. Brayton and McClain are the co-chairs of, and represent claimants against Plant who are members of, an informal creditors committee for Plant, and that that informal committee has requested or will request that the United States Trustee appoint it as, or as part of, the official Creditors' Committee in this case.

e) In addition to the specific parties identified above, Jones Day currently represents, formerly represented or may in the future represent certain other entities in matters *unrelated* to the Debtor or this chapter 11 case that are or may be (i) creditors in this case, (ii) parties to executory contracts and unexpired leases with the Debtor, (iii) customers of the Debtor, (iv) insurers and insurance brokers of the Debtor, (v) major or current business affiliations of Debtor's officers and directors, (vi) parties in litigation with the Debtor or (vii) otherwise directly or indirectly affiliated with creditors or other parties in interest in these cases. As described above, however, Jones Day has undertaken a detailed search to determine whether it represents or has represented any significant creditors, equity security holders, insiders or other parties in interest in such unrelated matters, and all such known representations within the last two years are set forth on Exhibit 3 hereto.

17. Despite the efforts described above to identify and disclose connections with parties in interest in these cases, because the Debtor has thousands of creditors and other relationships and Jones Day is an international firm with more than 2,400 attorneys in 31 offices, Jones Day is unable to state with certainty that every client representation or other connection of Jones Day has been disclosed.

18. On January 29, 2009, the Debtor provided Jones Day with an advance payment of $400,000 (the "Initial Deposit") to pay for legal services rendered or to be rendered by Jones Day

Case: 09-31347    Doc# 39    Filed: 05/22/09    Entered: 05/22/09 17:22:18    Page 8 of 38

in connection with the Debtor's efforts to pursue a possible out-of-court restructuring and in preparation for the commencement of this chapter 11 case (the "Prepetition Services"). The Debtor made subsequent advances of $1,240,000, and paid Jones Day or authorized withdrawals against the Initial Deposit in the aggregate amount of $385,318.40, leaving a net deposit of $1,254.680.60 (the "Retainer"). The source of the Retainer was the Debtor's cash.

19.     The Debtor's cash deposits were never fully exhausted. Jones Day will seek Court approval to apply any remaining Retainer against any unpaid fees or unreimbursed disbursements for Restructuring Legal Services, with any unapplied portion of the Retainer, if any, to be promptly returned to the Debtor at the conclusion of the chapter 11 case.

20.     Jones Day has not yet reconciled its actual fees and expenses through the Petition Date against estimated fees and expenses through the Petition Date. Any prepetition restructuring draws in excess of Jones Day's actual fees and expenses for the applicable invoice period will be added to, and treated as part of, the Retainer. Any shortfall in the prepetition restructuring draws compared to Jones Day's actual fees and expenses will result in an application, and corresponding reduction in the amount, of the Retainer. Accordingly, the amount of the Retainer remaining after (a) the reconciliation of any estimated prepetition restructuring draws and (b) the application of the prepetition restructuring draws and the Retainer to Jones Day's actual fees and expenses for the prepetition period, may differ from the amount stated above. Jones Day expects to complete its reconciliation of prepetition fees and expenses actually incurred through the Petition Date no later than the filing of its first interim fee application in this case and to make a corresponding adjustment to the amount and application of the Retainer described in the text above on or about that date, and will state the amount of any such adjustment in the fee application.

21.     To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I, nor Jones Day, nor any partner or associate thereof has received or been promised any compensation for legal services rendered or to be rendered in any capacity in connection with the Debtor's chapter 11 cases, other than as permitted by the Bankruptcy Code. Jones Day has not agreed to share compensation received in connection with these cases with any other person, except with members of the firm as permitted by section

BENVENUTTI DECLARATION IN
SUPPORT OF RETENTION OF JONES DAY

- 9 -

504(b) of the Bankruptcy Code and Bankruptcy Rule 2016(b) in respect of the sharing of compensation among Jones Day's partners.

22.     Biographies of the professionals and paraprofessionals that Jones Day anticipates will perform services on behalf of the Debtor are attached hereto as <u>Exhibit 5</u>.

23.     I will amend or supplement this declaration to the extent I learn that (a) any of the within representations are incorrect or (b) there is any change of circumstance relating thereto.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed this 22nd day of May, 2009, at San Francisco, California.

/s/ Peter J. Benvenutti
Peter J. Benvenutti

SFI-604160v7

Case: 09-31347    Doc# 39    Filed: 05/22/09    Entered: 05/22/09 17:22:18    Page 10 of 38

1

# EXHIBIT 1

2

3

**Engagement Letter**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BENVENUTTI DECLARATION IN
SUPPORT OF RETENTION OF JONES DAY

- 1 -

# JONES DAY

555 CALIFORNIA STREET · 26TH FLOOR · SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 · FACSIMILE: 415-875-5700

May 19, 2009

Direct Number: (415) 875-5826
pjbenvenutti@jonesday.com

Plant Insulation Company
c/o The Flintkote Company
Two Embarcadero Center, Suite 410
San Francisco, CA 94111
Attention: Mr. David J. Gordon, CEO

Re: Employment of Jones Day (Chapter 11 Addendum)

Dear David:

This letter confirms our discussions concerning the scope, terms and conditions of our engagement by Plant Insulation Company ("Plant" or "you") in connection with Plant's commencement, administration and completion of a case (hereafter, a "Bankruptcy Case") under the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and supersedes our letters dated February 6, 2009, and February 13, 2009. Thank you for retaining Jones Day (the "Firm" or "we") in this engagement and for your consideration and cooperation concerning the matters covered in this letter. We are accepting this engagement subject to the terms set forth herein and, more particularly, subject to the commitments set forth in section 4 hereof.

1.    Limited Scope of Engagement and Client Relationship

Any new or expanded engagement beyond that described above will require our agreement. Our client is, and we are entering into an attorney-client relationship only with, Plant. Any representation in this engagement of any person or entity other than Plant, such as a parent, subsidiary or other direct or indirect affiliate, shareholder, officer, director, partner or joint venturer of Plant, will require our agreement. We understand that you have advised, or will advise, any other parties who express any uncertainty or different understanding, that this engagement does not include any undertaking by Jones Day to represent any of them or create any attorney/client relationship between Jones Day and any of them.

2.    Staffing

Plant has designated David Gordon as the primary person from whom we will take direction and to whom we will report in connection with this engagement. I will have primary responsibility for this engagement and will be assisted by my colleagues Tobias Keller and Michaeline Correa, and such other lawyers and service personnel as we deem appropriate from time to time in order to provide high quality services in a cost-efficient manner. I will be the

ATLANTA · BEIJING · BRUSSELS · CHICAGO · CLEVELAND · COLUMBUS · DALLAS · FRANKFURT · HONG KONG · HOUSTON
IRVINE · LONDON · LOS ANGELES · MADRID · MILAN · MOSCOW · MUNICH · NEW DELHI · NEW YORK · PARIS · PITTSBURGH
SAN DIEGO · SAN FRANCISCO · SHANGHAI · SILICON VALLEY · SINGAPORE · SYDNEY · TAIPEI · TOKYO · WASHINGTON

partner generally responsible for Jones Day's representation of Plant, including matters related to billing and staffing.

      3.    <u>Potentially Adverse Representations or Conflicts of Interest; Advance Waiver</u>

    Except as set forth below, you have not revealed to us any information that would indicate any conflict with any of our existing clients.[1] Of course, as is typical for a firm our size, Jones Day represents and in the future will represent many other clients in matters unrelated to this engagement on behalf of Plant, some of which may be direct competitors of Plant or otherwise have, or develop, business interests adverse to Plant.

    We currently represent RJ Reynolds Tobacco Company in *Tajie Major v. RJ Reynolds Tobacco Company, et al.*, and numerous related cases now pending in the San Francisco Superior Court. In addition, we currently represent Textron Inc., North Safety Products, Inc., Welsh, Siebe North Inc., and Honeywell (collectively, "Textron") in nationwide asbestos and silicosis litigation. We understand that Plant is a co-defendant in several of these cases. Although these cases do not typically involve cross-claims among the defendants, it is possible – even in the absence of cross-claims – that some of the positions of Plant and RJ Reynolds or Textron will become adverse. In particular, California Civil Code section 1431.2 provides for the allocation of non-economic damages among co-defendants who are found to be at fault. Under section 1431.2, the jury may be asked to allocate "fault" among the defendants found liable to plaintiff at trial. Therefore, we cannot represent Plant in that matter or in any matter adverse to RJ Reynolds or Textron. Accordingly, Plant agrees to waive any actual or potential conflict of interest in the foregoing cases that have been or in the future may be filed against RJ Reynolds Tobacco Company and its affiliates or Textron.

    More generally, Jones Day cannot enter into this engagement if it could interfere with our ability to represent, in matters unrelated to this engagement on behalf of Plant, existing or future clients who have, or develop, relationships or interests adverse to Plant. We therefore ask Plant to confirm that Jones Day may continue to represent or may undertake in the future to represent any existing or future client in any matter, even if the interests of that client in that other matter are directly adverse to Plant, as long as that other matter is not related to this engagement on behalf of Plant. In the event of our representation of another client in a matter directly adverse to Plant, however, appropriate measures will be taken to assure that proprietary or other confidential information of a non-public nature concerning Plant acquired by Jones Day as a result of our representation of Plant will not be transmitted to our lawyers or others in the Firm involved in such matter.

---

[1] You have identified the following adverse or potentially adverse entities in the initial Adverse Party List attached hereto as **Exhibit A**. Please review it for accuracy. In addition, if you are aware, or become aware, of other persons that are adverse or that may raise conflict concerns, please advise us immediately.

By executing this letter, we therefore request that Plant confirm, based on the representations and assurance provided by us in this letter, that (1) no engagement that we have undertaken or may undertake on behalf of Plant will be asserted by Plant either as a conflict of interest with respect to, or as a basis to preclude, challenge or otherwise disqualify Jones Day from, any current or future representation of any client in any matter unrelated to this engagement on behalf of Plant, (2) Plant hereby waives any conflict of interest that exists or might be asserted to exist and any other basis that might be asserted to preclude, challenge or otherwise disqualify Jones Day in any representation of any other client with respect to any such matter, (3) Plant has been advised by Jones Day, and has had the opportunity to consult with other counsel, with respect to the terms and conditions of these provisions and its prospective waiver, (4) Plant's consent to these provisions is both voluntary and fully informed, and (5) Plant intends for its consent to be effective and fully enforceable, and to be relied upon by Jones Day.

4.     <u>Compensation and Disbursements</u>

Our fees are generally determined by the time devoted by each lawyer or other service provider involved in the engagement and the hourly billing rates assigned to each such person. Currently, hourly rates for our lawyers who are likely to be working on this matter range from $600 to $775 for partners and $350 and $565 for associates. Our hourly rates are revised periodically, and we reserve the right to revise them from time to time during the course of our representation of Plant. We submit periodic billing statements (generally monthly or, depending on the circumstances, more frequently), which are due and payable upon presentation.

To retain the services of the Firm, Plant has agreed to pay an initial $1,250,000 retainer upon the execution of this letter, and to provide the Firm with further assurance of payment, pursuant to the terms set forth below:

    *Retainer.* We will hold the retainer in our client trust account as security for fees and disbursements, subject to bankruptcy law limitations, and may apply them to fees and expenses as earned. At the conclusion of the Firm's representation or as otherwise directed by the bankruptcy court or other court with jurisdiction over the Bankruptcy Case (the "Bankruptcy Court"), the retainers will be applied against our then-unpaid fees and expenses, and any unapplied portion will be promptly returned to Plant.

    *Further Assurance.* Plant and the Firm anticipate that Plant's currently available cash resources will be insufficient to fund the Firm's fees and expenses over the course of the Bankruptcy Case. Accordingly, it is an essential part of our agreement that Plant will, within one hundred twenty (120) days following the filing of the Bankruptcy Case, provide the Firm with further assurances in the form of: (a) a commitment, on terms and from a source acceptable to the Firm and approved by the Bankruptcy Court, to fund a post-petition loan to Plant in an amount adequate in

Plant Insulation Company
May 19, 2009
Page 4

the Firm's judgment to pay administrative expenses of the Bankruptcy Case; (b) receipt by Plant of unencumbered and unrestricted funds available to pay administrative expenses of the Bankruptcy Case, in an amount adequate in the Firm's judgment to do so; (c) negotiation of and agreement to a deferred compensation arrangement between the Firm and Plant, providing for contingent fee payments acceptable to the Firm in its sole discretion to compensate for the risk of non-payment and approved by the Bankruptcy Court pursuant to Bankruptcy Code §328; or (d) a combination of the foregoing acceptable to the Firm in its sole discretion.

If the foregoing are not or cannot be provided to the Firm within one hundred twenty (120) days after commencement of the Bankruptcy Case, or such additional time as the Firm may agree in its sole discretion, Plant's failure to do so shall constitute good cause for withdrawal, and the Firm shall have the right in its sole discretion to withdraw from Plant's representation in the Bankruptcy Case (subject to complying with its ethical responsibilities to cooperate in a transition to successor counsel, and to seek and obtain leave of Court for such withdrawal, which Plant agrees it will not oppose). This provision, including the right of the Firm to withdraw from the representation under the circumstances described herein, shall be an explicit element of the terms of the Firm's retention as counsel for Plant and of Plant's initial application to the Bankruptcy Court for authority to retain the Firm in the Bankruptcy Case, and the Court's approval of this provision authorizing withdrawal as part of the initial application to retain the Firm is an express condition to the Firm's agreement to undertake this representation at the outset.

Unless we specifically agree, any fee estimate that we may provide is not a commitment to perform the services within a fixed time or for a fixed fee.

In addition to our fees, we expect our clients to defray certain costs and expenses incurred during our representation of them. A description of our Disbursements and Charges Billing Policies is enclosed. Please note that although our charges for non-cash costs incurred by the Firm reflect our good faith estimate of our actual, fully absorbed, out-of-pocket costs, those estimates may differ from our actual costs. Normally, disbursements and charges will be subject to reimbursement from Plant in the regular billing cycle. In some circumstances, however, such as in the case of particularly large items, we may ask Plant to pay these items directly or in advance.

5.    Bankruptcy Case

Our employment by Plant will be subject to the approval of the Bankruptcy Court with jurisdiction over the petition. If necessary, we will modify the terms and conditions of our employment described above as may be required to comply with the applicable requirements of the bankruptcy process, including any orders of the Bankruptcy Court. As a condition to our

retention in the Bankruptcy Case, we require a provision in any order authorizing Plant to retain the Firm providing that the Firm is authorized to withdraw from the Bankruptcy Case after giving reasonable notice if Plant cannot provide it with the assurances provided in section 4 above within one hundred twenty (120) days of the commencement of the Bankruptcy Case.

We have compiled a draft schedule describing Jones Day's relationships with certain entities identified by Plant in matters unrelated to Plant or its potential chapter 11 cases (the "Disclosure Schedule"), which we will disclose to you and the Bankruptcy Court as part of our retention application. We will provide you with a draft of the Disclosure Schedule once it is available. Although the Firm believes that these relationships will not constitute actual conflicts of interest, these relationships must be described and disclosed in Plant's application to the Bankruptcy Court to retain the Firm as counsel. If actual conflicts of interest arise in Plant's chapter 11 cases with respect to any of the parties identified on the Disclosure Schedule, the following procedures will be utilized: (a) the Firm may determine that it is unable to represent Plant in matters adverse to those parties; and (b) if the Firm makes such a determination, Plant will be required to use separate counsel in those matters, and the Firm will not participate in those matters. Of course, the Firm will not represent any party adverse to Plant, or take any position adverse to Plant, in its Bankruptcy Case.

Please note that the Disclosure Schedule will be updated on a periodic basis throughout the course of the Bankruptcy Case. We will provide updated Disclosure Schedules to you after they become available.

6.     Audit Letter Issues

We further want to advise you that, in responses to any of your requests to provide information to your auditors, our policy is to comply with the American Bar Association Statement of Policy Regarding Lawyers' Responses to Auditors' Requests for Information regarding the scope and content of such responses, except when such Policy is clearly inapplicable.

7.     Procedures upon Termination; Intellectual Property; and Publicity

Unless previously terminated, our representation of Plant will terminate upon our sending you our final statement for services rendered in this matter. In that case, or otherwise at your request, any papers and property sent by you to us will be returned to you. Our own files pertaining to the matter, including lawyer work product and administrative records, as well as document copies, will be retained by the Firm in accordance with our document retention policy. All documents retained by the Firm will be transmitted in the ordinary course to the person responsible for administering our records retention program. Subject to our obligations under the California bar requirements applicable to us, we reserve the right to destroy or otherwise dispose

of any documents or other materials, including electronic versions, retained by us after the termination of the engagement.

All intellectual property and other know-how developed by us in connection with this engagement, including subject matter expertise, whether or not preserved in written or electronic form, may be retained by us and used in connection with engagements on behalf of other clients, so long as no confidential information relating to Plant is thereby disclosed.

You hereby consent to the Firm's identification of Plant in future Firm promotional materials.

8.    Governing Law

The laws of the State of California, without regard to conflict of law rules, shall govern the interpretation of this agreement.

Please sign and return to us the enclosed copy of this letter in order to confirm that it accurately reflects the scope, terms and conditions with respect to this engagement. If you would like to discuss any of these matters, please give me a call.

Sincerely,

JONES DAY

By: _____

Peter J. Benvenutti

On behalf of Plant, the undersigned confirms that this letter accurately reflects the scope, terms and conditions with respect to this engagement and that the undersigned's execution and delivery of this confirmation on behalf of Plant has been duly authorized by Plant.

Dated: May 19, 2009

PLANT INSULATION COMPANY

By: _____
Name:    David Gordon
Title:    Chief Executive Officer

Enclosure

Plant Insulation Company
May 19, 2009
Page 7


cc (w/o encl.):
      Paul D. Leake, Esq.
      Tobias S. Keller, Esq.

## EXHIBIT A
## Initial Interested Party List

### Client

Plant Insulation Company

### Equity Holders

PEACE LLC

### Current and Former Directors/Officers

David Gordon
John "Clay" Gregory
Monte Travis

### Adverse Parties (Insurers)

Ace Property and Casualty Insurance Co.
American Automobile Insurance Company
American Employers Insurance Company
American Home Assurance Company
Everest re Insurance Company
Fireman's Fund Insurance Company
Fireman's Fund Emp Ins Co
Fireman's Fund County Mutual Insurance Co.
Fireman's Fund Indemnity Corp.
Fireman's Fund Insurance Company of GA
Fireman's Fund Insurance Company of HI, Inc.
Fireman's Fund Insurance Company of LA
Fireman's Fund Insurance Company of MO
Fireman's Fund Insurance Company of OH
Fireman's Fund Insurance Company of WI
Fireman's Fund McGee
Globe Indemnity Company
Granite State Insurance Company
Insurance Company of the State of Pennsylvania
Insurance Company of the West
Mt. McKinley Insurance Company
One Beacon America Insurance Company

One Beacon Insurance Company
Pacific Employers Insurance Company
Pacific Employers Insurance Company, Inc.
Safety National Casualty Corporation
Sompo Japan Insurance Inc.
St. Paul Fire & Marine, individually and as successor in interest to United States
Fidelity & Guaranty Corporation
Transport Indemnity Company
United National Insurance Company
United States Fidelity & Guaranty Company
United States Fire Insurance Co.
United States Fire Insurance Company as Subrogee
Yasuda Fire & Marine Insurance Co. America
Yasuda Fire & Marine Insurance Co. (Europe)
Yasuda Fire & Marine Insurance Co. Ltd.

**Adverse Parties (Other)**

The Owens Corning Fibreboard Asbestos Personal Injury Trust

**Other Parties**

Bayside Insulation, Inc.

SFI-601128v7

# EXHIBIT 2

## Plant Insulation Company

### Interested Parties

**Debtor**

Plant Insulation Company
    f/k/a Plant Asbestos Company
    f/k/a Asbestos Company of California

**Current and Former Directors / Officers**

David J. Gordon
John "Clay" Gregory
Monte Travis
Douglas Ralston
Shahram Ameli

**Current Business Affiliations of Debtor's Officers and Directors**

The Flintkote Company

**Current and Former Shareholders of Plant Insulation Company**

The Plant Insulation Trust
PEACE LLC - Plant Equitable and Asbestos
    Claims Enterprise, LLC
John "Clay" Gregory
Monte Travis
Douglas Ralston
Shahram Ameli

**Insurers, Insurance Brokers and Third Party Administrators**

Ace Ltd.
Ace Property and Casualty Insurance Co.
Ace Fire Underwriters Insurance Company
    f/k/a Aetna Fire Underwriters
Allianz
American Assets
American Automobile Insurance Company
American Employers Insurance Company
American Home Assurance Company
American International Group (AIG)
Arrowpoint Capital
    f/k/a Royal Indemnity Company
Delphi Financial
Everest Re Insurance Company

Fairfax Financial
Fidelity & Guaranty Corporation
Fireman's Fund Insurance Company
Fireman's Fund Emp Ins Co
Fireman's Fund County Mutual Insurance
    Co.
Fireman's Fund Indemnity Corp.
Fireman's Fund Company of GA
Fireman's Fund Company of HI, Inc.
Fireman's Fund Company of LA
Fireman's Fund Company of MO
Fireman's Fund Company of OH
Fireman's Fund Company of WI
Fireman's Fund McGee
Fox Paine
Granite State Insurance Company
Insurance Company of the State of
    Pennsylvania
Insurance Company of the West
Mt. McKinley Insurance Company
National Indemnity Company
One Beacon America Insurance Company
One Beacon Insurance Company
Pacific Employers Insurance Company
Pacific Employers Insurance Company, Inc.
Resolute Management of the Northeast
Resolute Management of the Mid-Atlantic
Safety National Casualty Corporation
Sompo Japan Insurance Inc.
St. Paul Fire & Marine, individually and as
    successor in interest to United States
Transport Insurance Company
United National Insurance Company
United States Fidelity & Guaranty Company
United States Fire Insurance Co.
United States Fire Insurance Company as
    Subrogee
White Mountains Insurance Group
Yasuda Fire & Marine Insurance Co.
    America
Yasuda Fire & Marine Insurance Co.
    (Europe)
Yasuda Fire & Marine Insurance Co. Ltd.

Case: 09-31347   Doc# 39   Filed: 05/22/09   Entered: 05/22/09 17:22:18   Page 21 of 38

**Adverse Parties (Other)**

The Owens Corning Fireboard Asbestos
  Personal Injury Trust

**Top Twenty Unsecured Creditors**

Christine Collins
Nicholas Ernser
James Strause
Gina Bennett
Jim Sullivan Whinery
Zelinda C. Hanson
Carol A. White
Franklin Yancy
James M. Harris
Ronald Silva
Karen Garner
Donald Henderson
Darden Lyles
Joe Radley
Allan Edwards
Robert Bachman
Raymond Jenkins
Linda Seiler
Tommy Hughes
Noble Morris

**Other Parties**
Bayside Insulation, Inc.
Bayside Insulation & Construction, Inc.

**The Debtor's Proposed Professionals**

Jones Day
Bachecki, Crom & Co., LLP
Snyder Miller & Orton LLP
Morgan, Lewis & Bockius LLP
Law Offices of Travis & Pon

**Other Professionals**

Sheppard, Mullin, Richter & Hampton LLP

**Other Affiliates or Former Affiliates**
Law Offices of Clay M. Gregory

Plant Hazardous Asbestos and Lead
  Division, Inc.

**Creditor Law Firms**

Brayton Purcell LLP
Law Office of Bruce L. Ahnfeldt, PC
Casey, Gerry, Schenk, Francavilla, Blatt &
  Penfield
Brent Coon & Associates
Clapper, Patti, Schweizer & Mason
Harowitz & Tigerman
Hobin, Shingler & Simon, LLP
Law Offices of Anthony E. Vieira
Law Offices of Christopher E. Grell
Levin, Simes, Kaiser & Gornick, LLP
Lewis & Scholnick
The Wartnick Law Firm
The David Law Firm, P.C.
Keller · Fishback, LLP
Visse & Yanez, LLP
Rose Klein & Marias, LLP
Waters & Kraus
Simon, Eddins & Greenstone LLP
Baron & Budd, P.C.
Paul & Hanley LLP
Kazan, McClain, *et al.*

**Depositary and Disbursement Banks**
First Republic Bank

**Bankruptcy Judges for the Northern
District of California**

Judge Carlson
Judge Montali

**Office of the United States Trustee**

Minnie Loo
San Francisco Office of the United States
  Trustee

BENVENUTTI DECLARATION IN
SUPPORT OF RETENTION OF JONES DAY

- 2 -

# **EXHIBIT 3**

PLANT INSULATION COMPANY SCHEDULE OF INTERESTED PARTIES THAT CURRENTLY EMPLOY OR HAVE FORMERLY EMPLOYED JONES DAY IN MATTERS UNRELATED TO THE DEBTORS OR THEIR CHAPTER 11 CASES

| INTERESTED PARTY | RELATIONSHIP TO THE DEBTORS | CLIENTS AND THEIR AFFILIATES |
|---|---|---|
| **PARTIES IN INTEREST (OR AFFILIATED ENTITIES) WHO ARE CURRENT CLIENTS OR WERE CLIENTS WITHIN THE LAST TWO YEARS[2]** | | |
| Ace Ltd.; Ace Fire Underwriters Insurance Company, f/k/a Aetna Fire Underwriters; and Ace Property and Casualty Insurance Company | Insurers, Insurance Brokers and/or Third Party Administrators | • Affiliate company Ace American Insurance Company is a stockholder of current client *International Automotive Components Group LLC*; and <br><br> • Affiliated entity Montgomery Ward, Trustee In Care of Ace Insurance Company is a former client (closed 2007). |
| Allianz SE | Insurer, Insurance Broker and/or Third Party Administrator | • Allianz SE is: (a) the parent of current client *Dresdner Kleinwort Limited*; and (b) the parent of former clients Dresdner Bank AG (closed 2009) and Allianz Capital Partners (closed 2008); <br><br> • Affiliate company AGF Private Equity is: (a) a former client (closed 2007); and (b) a member of current client *Former Shareholders of Soamai*; and <br><br> • Affiliate company Fireman's Fund Insurance Company is a stockholder of current client *Magnequench International, Inc.* <br><br> • *See also* entry below for Fireman's Fund Company of GA, et al. regarding related disclosure. |

---

[2] The names of current clients of Jones Day appear in bold and italics. The disclosure of stockholder interests or other affiliate relationships among potentially related entities reflects only information known to Jones Day through its conflict reporting system. Jones Day has not performed independent research to identify all stockholder interests or other affiliate relationships with respect to interested parties. Moreover, Jones Day has not disclosed representations of trade associations and similar industry or special interest organizations in which interested parties are members.

BENVENUTTI DECLARATION IN
SUPPORT OF RETENTION OF JONES DAY

- 1 -

| INTERESTED PARTY | RELATIONSHIP TO THE DEBTORS | CLIENTS AND THEIR AFFILIATES |
|---|---|---|
| American Home Assurance Company; and American International Group, Inc. (AIG); | Insurers | • American International Group, Inc. (AIG) is: (a) the parent company of American Home Assurance Company; and (b) the parent company of Sun America, the employer of an individual who is a current Jones Day client;<br><br>• Affiliated companies *AIG Consumer Finance Group* and *A. I. Credit Consumer Discount Company* are current clients;<br><br>• Affiliated companies AIG Global Real Estate Investment Corporation and AIG European Real Estate Partners are affiliated with current client *Agimarques Troyes SARL*;<br><br>• Affiliated company National Union Insurance Company of Pittsburgh, PA is a stockholder of current client *International Automotive Components Group, Inc.*;<br><br>• Affiliated company AIG Annuity Insurance Company and Variable Annuity Life Insurance Co. (VALIC) are members of former client Ad Hoc Committee of Thomson S.A. Noteholders (closed 2009);<br><br>• Affiliated company AIG Life Insurance Company is a joint venture participant with former client Carter & Associates LLC (closed 2008); and<br><br>• Affiliated companies AIG Global Investment Group and AIG Private Bank Ltd. are former clients (both closed 2007). |
| *The David Law Firm, P.C.* | Law Firm to Certain Creditors | • *The David Law Firm, P.C.* is a current client. |

Case: 09-31347   Doc# 39   Filed: 05/22/09   Entered: 05/22/09 17:22:18   Page 24 of 38

| INTERESTED PARTY | RELATIONSHIP TO THE DEBTORS | CLIENTS AND THEIR AFFILIATES |
|---|---|---|
| Fireman's Fund Company of GA; Fireman's Fund Company of Hi, Inc.; Fireman's Fund Company of LA; Fireman's Fund Company of MO; Fireman's Fund Company of OH; Fireman's Fund Company of WI; Fireman's Fund County Mutual Insurance, d/b/a Fireman's Fund; Fireman's Fund Emp Insurance Company; Fireman's Fund Indemnity Corporation; Fireman's Fund Insurance Company; and Fireman's Fund McGee | Insurers, Insurance Brokers and/or Third Party Administrators | • Fireman's Fund Insurance Company is a stockholder of current client *Magnequench International, Inc.*; and<br>• Parent company Allianz SE is: (a) the parent of current client *Dresdner Kleinwort Limited*; and (b) the parent of former clients Dresdner Bank AG (closed 2009), Allianz Capital Partners (closed 2008) and AGF Private Equity (closed 2007).<br>• *See also* entry above for Allianz S.E. regarding related disclosure. |

BENVENUTTI DECLARATION IN
SUPPORT OF RETENTION OF JONES DAY

- 3 -

| INTERESTED PARTY | RELATIONSHIP TO THE DEBTORS | CLIENTS AND THEIR AFFILIATES |
|---|---|---|
| First Republic Bank | Depositary and Disbursement Bank | • Ultimate parent company **Bank of America Corporation** is: (a) a current client; (b) a stockholder of former client Giant Industries, Inc. (closed 2009); and (c) a former member of former client Murray Energy Ad Hoc Committee (closed 2008); <br><br>• Affiliate company Banc of America Securities LLC is a stockholder of current client **International Automotive Components Group, Inc.**; <br><br>• Affiliate companies **DSP Merrill Lynch Limited**, **Merrill Lynch Asia Pacific Ltd.**, **Merrill Lynch International** and **Merrill Lynch Europe Plc** are current clients; <br><br>• Affiliate company **Merrill Lynch & Co.** is: (a) a current client; (b) a co-client with current client **CS First Boston, Inc.**; and (c) the employer of four individuals who are former Jones Day clients (all closed 2008); <br><br>• Affiliate company Merrill Lynch Pierce Fenner & Smith is the principal employer of two individuals who are current Jones Day clients (both opened 2007); <br><br>• Affiliate company Merrill Lynch Credit Products LLC is a member of former client Bi-Lo Ad Hoc Committee (closed 2009); and <br><br>• Affiliate companies BA Capital Advisors Limited and Merrill Lynch International (Australia) Limited are former clients (both closed 2007). |
| *The Flintkote Corporation* | Affiliate of Debtor's Officers and Directors | • *The Flintkote Corporation* is a current client. |
| *Morgan, Lewis & Bockius LLP* | Debtor's Professional and/or Service Provider | • *Morgan, Lewis & Bockius* is a current client. |

BENVENUTTI DECLARATION IN
SUPPORT OF RETENTION OF JONES DAY

- 4 -

| INTERESTED PARTY | RELATIONSHIP TO THE DEBTORS | CLIENTS AND THEIR AFFILIATES |
|---|---|---|
| National Indemnity Company | Insurer, Insurance Broker and/or Third Party Administrator | • Parent company Berkshire Hathaway, Inc. is: (a) the parent of current clients *Netjets, Inc.* and *The Scott Fetzer Company*; (b) a stockholder of current client *USG Corporation*; (c) the ultimate parent of current client *Kölnische Rückversicherungs*; and (d) the ultimate parent of former client Johns Manville International, Inc. (closed 2008). |
| The Owens Corning Fibreboard Asbestos Personal Injury Trust | Other Adverse Party | • Related company *Owens Corning* is a current client. |
| *R. J. Reynolds Tobacco Company* | Co-Defendant with the Debtor in Asbestos Litigation | • *R. J. Reynolds Tobacco Company*, parent company *Reynolds American, Inc.* (a trade style for Honeywell International, Inc.) and affiliate companies *R. J. Reynolds Tobacco Holdings, Inc.* and *RJ Holdings Limited* are current clients. |
| *Textron, Inc.* (together with Honeywell, North Safety Products, Inc., Siebe North, Inc., and Welsh, collectively "Textron") | Co-Defendant with the Debtor in Asbestos Litigation | • *Textron, Inc.* and affiliated company *Acument Global Technologies, Inc.* are current clients. |

BENVENUTTI DECLARATION IN
SUPPORT OF RETENTION OF JONES DAY

- 5 -

## EXHIBIT 4

### NONEXCLUSIVE LIST OF CERTAIN
### JONES DAY PROFESSIONALS AND THEIR HOURLY RATES

| NAME | LOCATION | POSITION | BILLING RATE |
|------|----------|----------|--------------|
| Peter Benvenutti | San Francisco | Partner | $775.00 |
| Tobias S. Keller | San Francisco | Partner | $750.00 |
| Brad B. Erens | Chicago | Partner | $725.00 |
| Shawn Hanson | San Francisco | Partner | $700.00 |
| Lora Blum | San Francisco | Partner | $600.00 |
| Michaeline Correa | San Francisco | Associate | $525.00 |
| Noel Rodriguez | San Francisco | Associate | $500.00 |
| Jason R. Schendel | Silicon Valley | Associate | $500.00 |
| Timothy Hoffmann | Chicago | Associate | $475.00 |
| Zana Bugaighis | San Francisco | Associate | $325.00 |
| Nobuyo Breen | San Francisco | Senior Paralegal | $275.00 |

### BILLING POLICIES

**Computer Research Services.** The actual charges to the Firm from Lexis, Westlaw, and other on-line computer research services for research done in connection with specific client matters are billed to the client.

**Copying.** Copying charged to the client includes documents, exhibits, and other papers that are filed with a court or administrative agency; documents produced for the client at its request and/or convenience; and documents produced as may be required by other parties in relation to litigation or transactions. Clients are billed $.20 per page for non-color photocopying and $1.00 per page for color photocopying done at the Firm. The actual charges to the Firm for outside, third-party duplication services used for specific client matters are billed to the client. Documents required for the Firm's use only are charged to the Firm.

BENVENUTTI DECLARATION IN
SUPPORT OF RETENTION OF JONES DAY

-1-

**Courier Services.** The Firm utilizes an overnight "pouch" service among its offices, both foreign and domestic; clients are not charged for deliveries through the pouch service. Courier services such as Federal Express are used when the circumstances of specific client matters dictate the need for such service. Clients are billed for the actual charges to the Firm for any such courier service.

**Electronic Databases.** Clients are billed actual charges from the external vendor hosting services we use to store and maintain computer databases and electronic versions of such materials as court filings, transcripts, case dockets and calendars, correspondence, discovery materials, and deposition or trial exhibits. The Firm does not maintain such electronic databases internally.

**Food Services.** When food services are required to enhance the efficient handling of specific client matters, clients are billed the actual cost of the food and/or beverages plus the expense of the food service personnel or service providers who serve the food and/or beverages.

**Long Distance Telephone and Facsimile Services.** Clients are not charged for local calls/facsimiles, interoffice calls/facsimiles, or calls/facsimiles costing less than $1.00. Clients are billed for audio and video conference calls.

**Messenger Services.** Clients are billed for messenger services required for specific client matters at the actual rates charged by outside delivery services or the Firm's out-of-pocket expenses for bus fares, cabs, and similar items when Firm personnel are used.

**Postage (U.S. Mail).** Clients are not billed for postage when the amount on a particular mailing is less than $1. Standard rates are charged for all postage over $1 and for large mailings done on behalf of the client even when individual item postage is under $1 as well as for special postal services, *e.g.*, Express Mail, Special Delivery, and Certified and Registered Mail.

**Special Services.** A client and the Firm may agree that certain special services are required, in connection with a specific matter, such as litigation support, extraordinary office supplies, temporary agency paralegals, project assistants or other staffing, video/audio production services/equipment, off-site location, imaging services, off-hour HVAC and related expenses, and document production services requiring trained personnel and specialized equipment. Before the

Case: 09-31347   Doc# 39   Filed: 05/22/09   Entered: 05/22/09 17:22:18   Page 29 of
38

1  client is billed for any such services, the client and Firm must agree on the type, scope, and cost

2  of the services.

3  **Staff Overtime.** Staff overtime costs are billed to clients only when the overtime staff

4  services are for the convenience of the client, rather than the convenience of the Firm. In such

5  circumstances, clients are billed for the Firm's costs of providing the staff overtime, including

6  actual overtime compensation (and a factor for benefits expenses) and necessary meal and

7  transportation costs.

8  **Travel.** Clients are billed for travel charges (including, for U.S. travel, a $40 transaction

9  charge covering a portion of the contracted cost of arranging air travel) incurred by Firm

10  personnel for specific client matters. For domestic travel, we use coach fare only unless the client

11  has authorized first or business class. We expect our lawyers to incur only reasonable meal,

12  lodging, and other travel costs.

13  **Other Charges.** We prefer that third-party charges (*e.g.*, consultants, court reporters, etc.)

14  incurred on behalf of a client be billed directly to the client by the third party. If this is not

15  possible, such charges are passed through at cost.

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 09-31347    Doc# 39    Filed: 05/22/09    Entered: 05/22/09 17:22:18    Page 30 of
38

# EXHIBIT 5

## ATTORNEY BIOGRAPHIES

### I.  PARTNERS

### PETER J. BENVENUTTI

Peter Benvenutti has practiced bankruptcy and creditors' rights law since 1974. In the bankruptcy courts, he has represented secured and unsecured institutional lenders, reorganization trustees, debtors in possession, creditors' committees, real and personal property lessors, asset acquirers, and venture capital investors in reorganization cases as well as parties in litigation. Peter has represented financial institutions and borrowers in workout negotiations involving real estate and commercial loans. He also develops and advises on restructuring strategies and provides transaction and litigation counsel concerning bankruptcy and creditors' rights.

Peter's experience includes a myriad of cases, with an emphasis on complex business reorganizations, and he has negotiated favorable resolutions of litigated disputes with creditors' committees. Peter has often handled restructuring plans in settings in which speed was essential to a settlement. For example, he represented the debtor in possession of a designer and manufacturer of specialty apparel and negotiated and confirmed a successful restructuring plan less than five months after the client's chapter 11 case was filed. Peter's representations also include a major investment bank in highly litigated bankruptcy cases of U.S.-based holding companies owning Polish real estate development companies that involved cross-border issues, extensive contempt proceedings, and numerous appeals. In addition, he represented the chapter 11 trustees of a card club/casino in litigation before an administrative agency and in state court over challenges to gaming ordinance restrictions and a $350 million supply chain management business, including the successful sale of the business through a highly competitive auction.

Peter has given numerous talks and panel presentations on bankruptcy and financing issues. He is a Fellow of the American College of Bankruptcy. He is a member of the State Bar of California, the American Bar Association (Business Law Section and Business Bankruptcy Committee), the Bar Association of San Francisco (arbitrator, Attorney Fee Dispute Committee, 1985-present), the California Bankruptcy Forum (director, 1991-1995 and president, 1993-1994),

Case: 09-31347    Doc# 39    Filed: 05/22/09    Entered: 05/22/09 17:22:18    Page 31 of 38

the Bay Area Bankruptcy Forum (director, 1991-1994 and president, 1991-1992), and the
American Bankruptcy Institute (Committee on Professional Compensation). He was a lawyer
representative of the Ninth Circuit Judicial Conference, 1994-1997 (chair of North District of
California Delegation, 1995-1997 and member, Conference Executive Committee, 1997-2000)
and board member of the Ninth Circuit Advisory, 2001-2003.

Honors and Distinctions

Listed in: The Best Lawyers in America since 1987, Chambers USA's Client's Guide to
America's Leading Lawyers for Business, and Practicing Law Company's Global Counsel
Handbook: Restructuring and Insolvency; has been recognized by San Francisco Magazine as a
Northern California "Top 100 Super Lawyer" and by The Recorder legal newspaper as one of the
"go-to" bankruptcy lawyers in Northern California

Admitted: California

Education: University of California, Berkeley, Boalt Hall School of Law (J.D. 1974;
Order of the Coif); Harvard University (B.A. cum laude 1971)

**TOBIAS S. KELLER**

Tobias Keller has a diverse corporate practice emphasizing counseling for companies in
transition. He regularly works with clients in a variety of industries that are dealing with
fundamental dislocations arising from financing challenges, uncontrolled litigation, or
unanticipated employee or vendor problems and the governance questions that often arise in
connection with those challenges.

In the general corporate context, Tobias typically advises boards and senior managers or
principals in addressing critical financial and operating problems. Among other things, he
analyzes and counsels investors and borrowers regarding complex financing structures and
negotiations, assists investors in devising strategies to maximize returns and/or recoveries in
special situations, assists companies in restructuring their asset and real estate lease portfolios,
and advises investment bankers in their representation of clients in transition.

Tobias also oversees the Firm's West Coast restructuring practice. His experience in
chapter 11 cases includes representation of the debtors in Performance Transportation Services,

the second-largest auto hauler in the United States; Integrated Telecom Express, a semiconductor manufacturer; Track 'n Trail, a footwear retailer with approximately 150 stores; Quokka Sports, an Internet sports broadcaster that covered, among other things, the 2000 Sydney Olympics; Kestrel Solutions, a manufacturer of multiplexers; and Proxim Corporation, a maker of wireless communications equipment. Other significant chapter 11 representations include the creditors' committees for Key3Media Group, which operated a portfolio of technology-related trade shows including COMDEX, and FiNet.com, a publicly traded, Internet-based mortgage retailer; purchasers of assets in chapter 11 cases; and various other firm clients seeking advice in their dealings with distressed companies and debtors in bankruptcy.

Tobias lectures regularly on corporate and commercial law topics for many organizations, including the American Bar Association, Stanford Law School, the American Bankruptcy Institute, and bar organizations. He served as chair of the Commercial Law and Bankruptcy Section of The Bar Association of San Francisco from 1999 to 2000, is a past director of the Bay Area Bankruptcy Forum, and is currently a member of the Insolvency Law Committee of the State Bar of California. He is also a member of the board of trustees of Grace Cathedral (Episcopal) in San Francisco.

Admitted: California

Education: Harvard University (B.A. magna cum laude 1985); Stanford University (J.D. 1990)

Clerkship: Law Clerk to Associate Justice Allen E. Broussard, California Supreme Court (1990-1991)

**BRAD B. ERENS**

Brad Erens oversees the business restructuring and reorganization practice in Jones Day's Chicago Office. His practice focuses on corporate restructuring and refinancing, workout, and bankruptcy matters. He has substantial experience in representing companies, bank groups, other secured and unsecured creditors, committees, asset purchasers, securitization lenders, and other interested parties in a wide variety of matters.

Engagements include:

BENVENUTTI DECLARATION IN
SUPPORT OF RETENTION OF JONES DAY

- 3 -

1  • Amfac Hawaii (company)

2  • Borden Chemicals and Plastics (company)

3  • Boscov's Department Store (company)

4  • Boston Chicken (bank group)

5  • FLYi/Independence Air (company representation)

6  • Michigan Health Care Corporation (company)

7  • USG Corporation (company).

8  Brad is an adjunct professor at the DePaul University College of Law and the Chicago-

9  Kent College of Law in Chicago where he teaches corporate reorganizations. He is a member of

10  the American Bankruptcy Institute. Brad is featured in Illinois Super Lawyers for 2006 through

11  2008 and was rated as one of the best bankruptcy lawyers in Chicago in 2006 and 2007 by the

12  PLC Cross-border Restructuring and Insolvency Handbook. Prior to joining Jones Day, he

13  practiced at the law firm of Sidley & Austin in Chicago and also served as general counsel and

14  director of business development for Delray Farms, a specialty food retailer in Chicago.

15  Admitted: Illinois and United States District Court for the Northern District of Illinois

16  Education: The University of Chicago (J.D. 1991; Order of the Coif); Yale University

17  (B.A. summa cum laude 1988)

18  **SHAWN HANSON**

19  Shawn Hanson is a commercial litigator who also has extensive experience in insurance,

20  insurance regulation, ERISA, labor and employment, managed health care, and real estate

21  litigation. In addition, he regularly handles commercial disputes, including those involving

22  Articles 2, 4, and 7 of the Uniform Commercial Code.

23  Shawn's trial experience includes: Ticor Title Insurance Company v. Employers Insurance

24  of Wausau, Santa Clara County Superior Court (February 1994) (represented policyholder in bad

25  faith insurance coverage dispute in which the jury awarded client $5 million); Pentastar v. Elder,

26  Eastern District of Virginia (November 1990) (represented plaintiff franchisor in franchise

27  dispute); Chicago Title Insurance Company v. California Canadian Bank, San Mateo County

28  Superior Court (April 1989) (co-tried claim for fraud and the late return of over $17 million of

BENVENUTTI DECLARATION IN
SUPPORT OF RETENTION OF JONES DAY
- 4 -

1   kited checks resulting in an award of $33 million, reported at 1 Cal.App.4th 798 (1992); and Hart

2   v. Vance, San Francisco County Superior Court (2001 real estate dispute).

3        He has also represented clients in class actions with respect to investigations by the United

4   States Department of Labor and with individually underwritten products and the ADA (Goldman

5   v. Standard Insurance Company, No. C-98-1013-VRW (N.D. Cal.) (summary judgment for

6   defendant) and Barbier, et al. v. California Public Employees' Retirement System, No. C-98-1497

7   CW (N.D. Cal.)).

8        Furthermore, Shawn regularly counsels health maintenance organizations and other health

9   care service providers in commercial disputes and regulatory matters involving insurers. He was

10  counsel of record for the California Farm Bureau Federation in the C-F Insurance Insolvency

11  (Sacramento County Superior Ct. No. CV328346). Most recently, he advised parties involved in

12  the Superior National Insurance Group Insolvency (Los Angeles County Superior Ct. No.

13  BS061974).

14       Shawn has lectured at seminars on ERISA litigation and on the use of demonstrative

15  evidence and has participated in law firm programs co-sponsored by the National Institute for

16  Trial Advocacy. He is a member of the State Bar of California and is admitted to practice in all

17  federal district courts in California and the Eastern and Western Districts of Michigan as well as

18  in the U.S. Court of Appeals for the Ninth and Eleventh Circuits.

19       Admitted:  California

20       Education:  Santa Clara University (Phi Beta Kappa; B.S. in Psychology 1980);

21  University of California, Hastings College of the Law (J.D. 1983)

22  **LORA D. BLUM**

23       Lora Blum practices corporate and securities law, and her practice is focused on capital

24  markets transactions. She represents issuers, underwriters, and agents in public and private

25  offerings, including initial public offerings, follow-on and secondary offerings, private

26  investments in public equity, 144A offerings, and registered direct offerings. In addition, she

27  counsels investment banks on issues relating to federal securities laws and the Financial Industry

28  Regulatory Authority and advises on underwriting agreement forms. Lora also works on M&A

BENVENUTTI DECLARATION IN
SUPPORT OF RETENTION OF JONES DAY          - 5 -

transactions, representing buyers, sellers, and investment banks as financial advisors and advises company clients on general corporate legal and business issues.

Examples of Lora's experience include representation of Obagi Medical Products in its initial public offering and follow-on secondary offering, Morgan Stanley and Merrill Lynch in the initial public offering of Map Pharmaceuticals, Merrill Lynch in the initial public offerings of Thermage and Cadence Pharmaceuticals, Deutsche Bank Securities in follow-on offerings for Stereotaxis and ThermoGenesis Corp., Cell Therapeutics, Inc. in multiple registered direct transactions, Banc of America Securities in numerous PIPE and registered direct transactions, and Macrovision Corporation and NuVasive, Inc. in 144A offerings.

Lora is a member of the State Bar of California and the American Bar Association. She is a coauthor and/or contributor to chapters 24, 30, and 32 of Venture Capital & Public Offering Negotiation, Third Edition, Aspen Law & Business.

Admitted:  California

Education:  University of California, Los Angeles (J.D. 1999); University of California, Berkeley (B.A. in History with high distinction 1996)

## II.     ASSOCIATES

### MICHAELINE CORREA

Miki Correa represents debtors in possession, chapter 11 and chapter 7 trustees, official creditors' committees, secured lenders, and unsecured creditors in all aspects of complex corporate workouts, bankruptcy liquidations, and reorganizations. She also has an active pro bono practice, emphasizing nonprofit incorporation/tax exemption matters.

Miki is a member of the State Bar of California, the American Bar Association, the San Francisco Bar Association, and the Bay Area Bankruptcy Forum.

Admitted:  California, U.S. Court of Appeals for the Ninth Circuit, and U.S. District Courts for the Northern, Central, and Eastern Districts of California

Education:  Santa Clara University (J.D. 2001); San Jose State University (B.A. in Organizational Psychology *cum laude* 1995)

## NOEL RODRIGUEZ

Noel Rodriguez specializes in complex civil litigation and antitrust litigation. She has experience with all aspects of discovery and law and motion practice in federal and state courts. Her recent litigation experience includes defending against claims of Medicaid fraud under the False Claims Act and defending against tort and unfair business practice claims under the Alien Tort Statute, the Torture Victim Protection Act, and the California Business & Professions Code Section 17200. Noel has counseled clients on assessing and minimizing exposure to litigation and on responding to investigations by the U.S. Department of Justice and other branches of the U.S. government. She is also a member of the Jones Day San Francisco recruiting committee.

Admitted  California

Education  Harvard University (B.A. magna cum laude 1999); Stanford University (Moot Court; Order of the Coif; J.D. with distinction 2003)

## JASON R. SCHENDEL

Jason Schendel's practice is focused on mergers and acquisitions, securities, private equity, and general corporate work. He has represented financial and strategic buyers and sellers in mergers and acquisitions, including acquisitions by private equity firms and technology companies of companies in the media, biotech, and networking industries and target companies in the pharmaceutical, networking, and technology industries. Jason also has represented issuers and underwriters in public and private securities offerings, including the underwriters of the IPOs of companies in the Internet, pharmaceutical, and medical device industries as well as initial purchasers and issuers in connection with 144A offerings. In addition, Jason has represented private equity funds in fund formation and other general fund operating matters and public and private companies in general corporate and compliance matters.

Admitted  California

Education:  Columbia University (J.D. 2002; Harlan Fiske Stone Scholar); University of Minnesota (B.S.B. in Accounting 1996; Dean's List)

## TIMOTHY HOFFMANN

Tim Hoffmann's practice focuses primarily on bankruptcy and insolvency-related matters.

He has represented debtors, secured lenders, and various other parties in financially distressed situations, including both in-court and out-of-court restructurings.

Tim played a considerable role in Jones Day's representations of Performance Transportation Services and Independence Air in their respective chapter 11 cases. In addition, Tim was substantially involved in Jones Day's representation of Wachovia Bank, N.A., the administrative agent to the pre- and postpetition secured lenders of Chicago H&S Properties, LLC, a chapter 11 debtor.

Admitted: Illinois and Ohio

Education: Miami University (Bachelor of Science in Accounting and Bachelor of Arts in History 2000); University of Dayton (J.D. cum laude 2003; Articles Editor University of Dayton Law Review)

Clerkship: Law Clerk to the Honorable Burton Perlman, U.S. Bankruptcy Court, Southern District of Ohio (2003-2006)

**ZANA Z. BUGAIGHIS**

Admitted: California

Education: University of Washington (J.D. 2008; Associate Editor-in-Chief, Pacific Rim Law and Policy Journal); Dartmouth College (B.A. 2005)

## III. PARALEGALS

**NOBUYO BREEN**

Nobuyo is a senior paralegal and head paralegal in the San Francisco Office.

SFI-604160v7

Case: 09-31347    Doc# 39    Filed: 05/22/09    Entered: 05/22/09 17:22:18    Page 38 of 38