Peter J. Benvenutti (Bar No. 60566)
Tobias S. Keller (Bar No. 151445)
Michaeline H. Correa (Bar No. 215215)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
Email: pjbenvenutti@jonesday.com
tkeller@jonesday.com
mcorrea@jonesday.com

Proposed Attorneys for Debtor and Debtor in
Possession PLANT INSULATION COMPANY

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PLANT INSULATION COMPANY, a California corporation,<br><br>Debtor. | Case No. 09-31347 TC<br><br>Chapter 11<br><br>**DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY AND RETAIN MORGAN, LEWIS & BOCKIUS LLP AS SPECIAL INSURANCE COUNSEL** *NUNC PRO TUNC* **TO THE PETITION DATE**<br><br>**Hearing**<br>Date: June 8, 2009<br>Time: 10:30 a.m.<br>Place: U.S. Bankruptcy Court<br>235 Pine Street, 23rd Floor<br>San Francisco, CA<br>Judge: Honorable Thomas E. Carlson |

**TO THE HONORABLE THOMAS E. CARLSON, UNITED STATES BANKRUPTCY JUDGE AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

Plant Insulation Company (the "Debtor" or "Plant"), debtor and debtor in possession herein, applies (the "Application") for an order, pursuant to sections 327(e) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the employment and retention of the law firm of Morgan, Lewis & Bockius LLP (the "Firm" or "Morgan Lewis") as its special insurance litigation counsel, effective *nunc pro tunc* to May 20, 2009. The Declaration of Jeffrey

DEBTOR'S APPLICATION TO EMPLOY
MORGAN LEWIS; Case No. 09-31347

- 1 -

S. Raskin (the "Raskin Declaration") filed concurrently herewith supports this Application. In further support of the Application, the Debtor respectfully represents as follows:

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. FACTUAL BACKGROUND[1]

### A. The Chapter 11 Case

On May 20, 2009 (the "Petition Date"), Plant filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor remains in possession of its property and continues to operate and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committee of unsecured creditors, trustee or examiner has been appointed in this case.

### B. Summary History of the Debtor

The Debtor, formerly known as both Plant Asbestos Company and Asbestos Company of California, was incorporated in California on March 23, 1937.[2] Plant was formed to engage in the business of selling, installing and repairing asbestos, brick, cement, concrete, stone and all other types of fire proofing and insulating materials. Plant was an insulation contractor; its work regularly involved installing and removing asbestos products during a wide range of years.

As a result of Plant's sale and installation of asbestos-containing products dating back to the 1930s, Plant has been embroiled in asbestos-related litigation for many years. From early 1978 and continuing through the Petition Date, Plant had been subjected to thousands of asbestos bodily injury, wrongful death and loss of consortium claims and lawsuits for damages allegedly

---

[1] Several of the facts contained herein have been adduced from the declarations of David Gordon and James Miller filed in this case on May 20, 2009.

[2] Thorpe Insulation Company ("Thorpe") was formed in 1948 and was formerly known as Plant Insulation Company. Thorpe is a debtor and debtor in possession in Chapter 11 Case No. 07-19271, currently pending in the Bankruptcy Court for the Central District of California, Los Angeles Division. Thorpe is completely unrelated to Plant. Both Thorpe and Plant are also unrelated to the family of companies known as J.T. Thorpe, Inc., Thorpe Technologies, Inc., Thorpe Holding Co., Inc, and Dissolved Thorpe, Thorpe Corp., Thorpe Insulation Texas or Thorpe USA, Inc. Persons with claims against such entities should not file claims against Plant premised upon their claims against these unrelated entities.

caused in whole or in part by exposure to asbestos-containing materials installed or supplied by Plant dating back to the 1930s (collectively, the "Asbestos Cases"). As of the Petition Date, thousands of Asbestos Cases were pending against Plant in California, primarily in Alameda and San Francisco counties. Prior to the Petition Date, approximately 40 new complaints were being filed against Plant each month, and Plant anticipates that numerous additional asbestos related claims will be asserted against it for many years to come. The potential liabilities represented by present and anticipated future asbestos related claims against Plant far exceed the value of Plant's assets. Plant believes that its historical comprehensive general insurance assets provide coverage for many of the present and future liabilities although, as discussed in further detail below, Plant's insurers dispute their liability in the Asbestos Cases.

### C. Insurance Coverage, Related Litigation, Claims and Settlements

Plant maintained comprehensive general and/or excess liability insurance from various insurers throughout the years during which it sold, handled, and installed the vast majority of the asbestos products that gave rise to the Asbestos Cases. Based on its belief that it has coverage for liabilities arising out of the Asbestos Cases, Plant has tendered thousands of suits to its primary Insurers. Notwithstanding their assertion that the polices were exhausted, the Insurers accepted the tender and continued to process, defend and/or settle numerous asbestos claims, pursuant to their policies, under a full reservation of rights.

In an effort to resolve certain coverage disputes with its Insurers[3], on January 17, 2006, Plant filed an action in the California Superior Court for the County of San Francisco, captioned *Plant Insulation Company v. Fireman's Fund Insurance Company, et al.* (No. CGC-06-448618)

---

[3] These insurers include: Fireman's Fund Insurance Company, American Automobile Insurance Company, OneBeacon America Insurance Company, as successor under policies issued to Plant by American Employers Insurance Company, Sompo Japan Insurance Company of America, formerly known as Yasuda Fire & Marine Insurance Company, United States Fidelity and Guaranty Company, Royal Indemnity Company, successor by merger to Globe Indemnity Company, ACE Fire Underwriters Insurance Co., formerly known as CIGNA Fire Underwriters Insurance Co., formerly known as Aetna Fire Underwriters Insurance Company, United National Insurance Company, American Home Assurance Company, Insurance Company of the State of Pennsylvania, Granite State Insurance Company, Insurance Company of the West, ACE Property & Casualty Insurance Company, formerly known as Aetna Insurance Company, Mt. McKinley Insurance Company, formerly known as Gibralter Casualty Company, Safety National Casualty Corporation, Transport Insurance Company, and U.S. Fire Insurance Company, successor-in-interest to primary policies that Plant purchased from Industrial Indemnity between 1958 and 1962 (collectively, the "Insurers").

("Declaratory Relief Action"). The Declaratory Relief Action is designated as complex litigation and is assigned for all purposes to the Honorable John E. Munter, Judge of the Superior Court. The current operative pleading seeking relief on behalf of Plant in the Coverage Litigation is the *Second Amended Complaint*, filed on April 16, 2007 (the "Amended Complaint"). Consistent with this Court's order modifying the automatic stay, Judge Munter will preside over a Phase II trial commencing on Tuesday, May 26, 2009. While the relief sought by Plant in the Declaratory Relief Action would substantially advance the parties' ability to finally resolve coverage issues relating to those Policies, Plant believes that coverage issues relating to the Insurers' policies will survive the Declaratory Relief Action regardless of its outcome.

Plant has settled with two of its insurers for cash payments in excess of the stated limits of liability in their respective policies. Certain primary insurers have also paid cash to asbestos claimants in settlement of lawsuits against Plant. Thus far, in the aggregate, these settlements have resulted or may result in the Debtor receiving up to $27 million from those insurers for the benefit of asbestos claimants. Certain of the settlements are conditioned upon this Court approving those agreements. Also, the insurers' obligation to fund portions of the settlement amount are conditioned upon this Court confirming a plan that provides protection to the settling insurer pursuant to section 524(g) of the Bankruptcy Code. The Debtor anticipates filing motions seeking the required Court approvals of those settlements.

### D. Sale of Plant's Assets and Wind Down of Business Operations

On May 17, 2001, Shahram Ameli, who had been Plant's Vice President and manager of operations for a number of years, formed Bayside Insulation, Inc. ("Bayside"). Pursuant to an agreement as of that same date, Plant sold substantially all of its business assets to Bayside.[4] By 2002, Plant had ceased active insulation operations, but continued to defend itself against claims and lawsuits and to pursue indemnity claims against Fibreboard. Ultimately, all outstanding stock in Plant was transferred to The Plant Insulation Trust, which as a result became, and is now, the owner of 100% of the outstanding shares of Plant. David J. Gordon is the President and Chief Executive Officer of Plant. Plant has no other officers or directors.

---

[4] Other portions of Plant's business assets were purchased by Pacific Insulation Company, which itself is in bankruptcy in the Central District of California (Case No. 07-19271).

At present, Plant has no material liabilities except for liabilities unrelated to asbestos claims. Plant's assets consist principally of cash derived from settlements with certain insurers and claims against the Insurers and the Fibreboard Trust.

### E. Plant's Need for Reorganization

As discussed in detail above, Plant is managing thousands of Asbestos Cases in numerous unrelated actions and venues. The *status quo* has numerous inefficiencies: The demand upon the courts is significant and Plant has been unable to consolidate the pending actions in a single or coordinated proceedings; Plant's resources have dwindled to the point that it is challenged in its efforts to fairly respond to plaintiffs' demands for discovery or the needs of counsel and its insurers to properly defend claims; plaintiffs with limited resources lack a streamlined means of submitting claims and having them considered, adjudicated, and paid; and insurers seeking to fully and finally limit their exposure lack the ability to protect themselves against unknown and future claimants that may be entitled to recourse against Plant's policies. In filing this chapter 11 case, the Debtor intends to invoke section 524(g) as a means of resolving the otherwise intractable set of issues associated with thousands of claims now pending against it in various jurisdictions, and the future lawsuits on future claims that would certainly be filed but for this bankruptcy case.

## III. RELIEF REQUESTED

By this Application, the Debtor seeks an order authorizing the retention and employment of Morgan Lewis as its special insurance counsel, effective as of the Petition Date, at the expense of the Debtor's estate, pursuant to the terms of this Application and those set forth in the prepetition fee agreement between the Debtor and Morgan Lewis dated May 19, 2009 (the "Fee Agreement"),[5] a copy of which is attached to the Raskin Declaration as Exhibit A.

---

[5] Any references to, or summaries of, the Fee Agreement herein are qualified by the express terms of the Fee Agreement, which shall govern if there is any conflict between the Fee Agreement and the summaries provided herein.

DEBTOR'S APPLICATION TO EMPLOY MORGAN LEWIS; Case No. 09-31347 - 5 -

A.  **Legal Services To Be Provided by Morgan Lewis**

The Debtor requires the assistance of Morgan Lewis to represent it in connection with the Declaratory Relief Action and related matters. In this regard, as more fully set forth in the Fee Agreement, Morgan Lewis anticipates that it will render the following types of professional services to the Debtor:

(i) advice and assistance in seeking and obtaining insurance coverage for the asbestos-related suits and claims, including reconstruction of historical insurance or so-called "insurance archaeology";

(ii) analysis of potentially responsive coverage;

(iii) advice and assistance in seeking insurance recoveries, through negotiation, litigation or other dispute resolution mechanisms, to pay for past, present and future asbestos suits; and

(iv) advice and representation in other insurance coverage-related matters within the scope of representation outlined in the Fee Agreement.

Morgan Lewis has extensive experience in advising and representing debtors in chapter 11 cases involving asbestos-related claims and Bankruptcy Code section 524(g) insurance-related issues, and will take the lead role in advising the Debtor on such insurance matters. The Debtor further expects that Morgan Lewis will coordinate with Snyder Miller & Orton, LLP ("SMO") and with any other professionals the Debtor may hereafter employ, to avoid duplication of services and increase efficiency by providing services within the scope of their respective employment by addressing and allocating primary responsibility for different matters, in consultation with the Debtor or its counsel, on a matter by matter basis as matters arise. The Debtor also believes that the employment of Morgan Lewis will enhance and will not duplicate the efforts of the law firm of Jones Day, the Debtor's proposed general bankruptcy counsel.

B.  **The Firm's Qualifications**

Morgan Lewis is highly qualified to represent the Debtor as its special insurance counsel and render the foregoing services. Morgan Lewis is a large, multi-office law firm, with more that 1,400 lawyers practicing in 22 offices worldwide, including over 200 lawyers practicing in its

California offices, which are located in Los Angeles, San Francisco, Irvine and Palo Alto, and other California-admitted practitioners located in other firm offices. In order better to serve the interests of its clients, Morgan Lewis has a worldwide integrated insurance practice, consisting of approximately 40 lawyers, including approximately 23 based in the firm's California offices, and additional such California-admitted insurance lawyers located in other offices. As described in the Raskin Declaration, the lawyers comprising the Morgan Lewis insurance recovery practice have been responsible for obtaining billions of dollars in recoveries, including for clients seeking relief under chapter 11 of the Bankruptcy Code and clients confirming plans of reorganization under Bankruptcy Code section 524(g). Additional information regarding Morgan Lewis and its insurance practice is available on Morgan Lewis's website at www.morganlewis.com. Biographies of the attorneys Morgan Lewis anticipates will render services to the Debtor in this matter are attached to the Raskin Declaration as <u>Exhibit B</u>.

In addition to its overall expertise and qualification, Morgan Lewis has been advising the Debtor with respect to its rights under its insurance policies since on or about October 28, 2005, and with respect to the Declaratory Relief Action since its commencement in January 2006.[6] Since the filing of the Declaratory Relief Action, Morgan Lewis, among other things, has prosecuted and defended various motions and negotiated settlements with certain insurers on behalf of the Debtor. As a result, Morgan Lewis is intimately familiar with the facts and legal issues being litigated in the Declaratory Relief Action. Given Morgan Lewis's expertise in insurance-related matters and its prior representation of the Debtor, the Debtor believes that its employment of Morgan Lewis as special insurance counsel on the terms set forth in the Fee Agreement is in the best interests of the Debtor and its estate.

On or about February 2006, the Debtor determined to retain the law firm of Snyder, Miller & Orton L.L.P. ("SMO") to assist Morgan Lewis with matters pertaining to the Declaratory Relief Action. As described in the Fee Agreement, and in the engagement letter between Plant

---

[6] Morgan Lewis previously worked under a contingency fee agreement signed originally by Plant in December 2005. That agreement was replaced and superseded by the Fee Agreement. The Fee Agreement was executed, in part, "[t]o conform our written agreement to the legal services that have actually been provided and that will be provided" to Plant. It was also executed to eliminate "any fee calculated by reference to certain Recoveries" while "increasing the percentage fee payable upon certain levels of Recoveries." *See* Raskin Decl., Exhibit A.

and SMO, a copy of which is attached to the Declaration of James L. Miller filed May 22, 2009, Plant asked Morgan Lewis to work with SMO at no increased fee to Plant so that Plant would benefit from SMO's experience. Morgan Lewis agreed, at a reduction in Morgan Lewis's fees.

Since its initial engagement by the Debtor, Morgan Lewis, among other things, has conducted six-week trial in the Declaratory Relief Action, and has prepared for a second trial in the Declaratory Relief Action, which is scheduled to begin on May 26, 2009. Morgan Lewis also prosecuted and defended various motions and hearings (including several motions for summary adjudication), attended various depositions, and negotiated settlements with certain insurers on behalf of the Debtor. As a result, the Morgan Lewis attorneys responsible for representation of Plant are intimately familiar with the facts and legal issues being litigated in the Declaratory Relief Action.

C.  **Morgan Lewis's Compensation Structure**

Subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Guidelines for Employment and Compensation of Professional Persons (the "Fee Guidelines") issued by the Office of the United States Trustee (the "U.S. Trustee"), the Debtor proposes to pay Morgan Lewis on a contingency fee basis, plus reimbursement of expenses, on the terms and conditions set forth in the Fee Agreement. A summary of the proposed compensation structure for services that will be rendered by Morgan Lewis to the Debtor, subject to Bankruptcy Court approval, is described in detail in the Fee Agreement. In addition to payment of its fees, Morgan Lewis will charge the Debtor for any expenditures that it may make, and any costs it may incur, on the Debtor's behalf. These may include, but are not limited to, filing fees, transcript costs, deposition costs, computerized legal research costs, the copying costs, long distance telephone charges, parking and travel costs, and other expenses which Morgan Lewis may incur while its professionals are away from their offices performing services for the Debtor.

Although Morgan Lewis's fees are to be paid on a contingency fee basis, Morgan Lewis's professionals have recorded and will in the future record their time in accordance with the applicable rules and guidelines of the Bankruptcy Court and the U.S. Trustee.

The Morgan Lewis fees are to be paid as recoveries are received, subject to approval by, and any "holdback" required by, the Bankruptcy Court.

Morgan Lewis understands the provisions of Bankruptcy Code sections 327, 328, 330 and 331, and agrees that payment of its fees and reimbursement of expenses incurred are subject to review and approval by the Bankruptcy Court and that it may not receive any fees or expense reimbursement except as authorized by order of the Bankruptcy Court.

Morgan Lewis further understands and agrees that, pursuant to section 328(a) of the Bankruptcy Code, notwithstanding the terms and conditions set forth in the Fee Agreement, the Bankruptcy Court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of Morgan Lewis's employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions. In seeking approval and payment of its fees and reimbursement of its expenses, Morgan Lewis will comply with the procedures set forth in the Fee Guidelines for compensation and reimbursement of expenses and any other rules, laws and guidelines applicable to this bankruptcy case.

Within the one year prior to the Petition Date, Morgan Lewis received $1,500,000 in fees from insurance recoveries for legal services rendered on behalf of the Debtor, and reimbursement of $359,903.90 in costs advanced on behalf of the Debtor. In addition, within the one year prior to the Petition Date, Morgan Lewis performed services and advanced costs on behalf of the Debtor for which Morgan Lewis has not yet been paid, including with respect to recoveries that are or will be subject to this Court's approval. Morgan Lewis has not received a retainer in this case.

Morgan Lewis has not shared nor agreed to share any compensation paid or payable by the Debtor with any other entity.

D. **Disinterestedness of the Firm**

To the best of the Debtor's knowledge and based upon the Raskin Declaration, neither the Firm nor any of its partners, of counsel, or associates has any connection with the Debtor, any creditors of the estate, any party in interest, their respective attorneys or accountants, the U.S.

Trustee, or any person employed in the Office of the U.S. Trustee, except as set forth in the Raskin Declaration.

To the best of the Debtor's knowledge and based upon the Raskin Declaration, neither the Firm nor any of its partners, of counsel, or associates is a creditor, equity security holder, or an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.

To the best of the Debtor's knowledge and based upon the Raskin Declaration, neither the Firm nor any of its partners, of counsel, or associates is or was, within two years before the Petition Date, a director, officer, or employee of the Debtor.

To the best of the Debtor's knowledge, and based upon the Raskin Declaration, Morgan Lewis does not represent or hold any interest adverse to the Debtor or to its estate with respect to the matter on which Morgan Lewis is to be employed in this bankruptcy case within the meaning of Bankruptcy Code section 327(e).

### E. Request for *Nunc Pro Tunc* Retention

*Nunc pro tunc* retention is appropriate here because this Application was filed shortly after the Petition Date and Morgan Lewis anticipates that it will provide necessary services to the Debtor during the period between the Petition Date and the date the Court enters an order on this Application, as well as thereafter.

## IV. NOTICE

A copy of this Application has been provided to the United State Trustee. Notice of this Application and the hearing date thereon have been provided to the United State Trustee, counsel for the informal committee of unsecured creditors, the Office of the U.S. Trustee, the 20 largest creditors in this case, and any party who has filed a request for special notice as of the date of service of the Notice.

## V. CONCLUSION

Based on the foregoing, the Debtor believes that the retention of Morgan Lewis to represent the Debtor in connection with the Declaratory Relief Action and related matters is in the best interests of the Debtor and its estate.

WHEREFORE, the Debtor requests that this Court enter an order: (i) authorizing the employment and retention Morgan Lewis as special insurance litigation counsel, effective *nunc pro tunc* to the Petition Date, to render services as described above, on the terms and conditions set forth herein and as more fully set forth in the Fee Agreement, with compensation to be paid by the estate as an administrative expense in such amounts as this Court may hereafter determine and allow, and (ii) providing such other and further relief as this Court deems just and proper.

Dated: May 22, 2009

PLANT INSULATION COMPANY

By: David J. Gordon, Its Chief Executive Officer

APPROVED AS TO FORM:

DATED: May 22, 2009

JONES DAY

By: /s/ Tobias S. Keller
Tobias S. Keller
Proposed Attorneys for Debtor and Debtor in Possession, Plant Insulation Company

SFI-603671v5