Peter J. Benvenutti (Bar No. 60566)
Tobias S. Keller (Bar No. 151445)
Michaeline H. Correa (Bar No. 215215)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:	(415) 626-3939
Facsimile:	(415) 875-5700
Email:	pjbenvenutti@jonesday.com
	tkeller@jonesday.com
	mcorrea@jonesday.com

Proposed Attorneys for Debtor and Debtor in Possession PLANT INSULATION COMPANY

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PLANT INSULATION COMPANY, a California corporation,<br><br>       Debtor. | Case No. 09-31347 TC<br><br>Chapter 11<br><br>**DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY AND RETAIN SNYDER MILLER & ORTON, LLP SPECIAL INSURANCE COUNSEL,** *NUNC PRO TUNC* **TO THE PETITION DATE**<br><br>**Hearing**<br>Date: June 8, 2009<br>Time: 10:30 a.m.<br>Place: U.S. Bankruptcy Court, 23rd Floor<br>    235 Pine Street<br>    San Francisco, CA<br>Judge: Honorable Thomas E. Carlson |

**TO THE HONORABLE THOMAS E. CARLSON, UNITED STATES BANKRUPTCY JUDGE AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

    Plant Insulation Company (the "Debtor" or "Plant"), as debtor and debtor in possession, hereby applies (the "Application") for an order, pursuant to sections 327(e) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the employment and retention of the law firm of Snyder Miller & Orton, LLP (the "Firm" or "SMO") as its special insurance litigation

DEBTOR'S APPLICATION TO EMPLOY
SNYDER MILLER & ORTON, LLP
- 1 -
Case: 09-31347 Doc# 42 Filed: 05/22/09 Entered: 05/22/09 19:01:25 Page 1 of 10

counsel, effective *nunc pro tunc* to May 20, 2009. The Declaration of James L. Miller (the "Miller Declaration") filed concurrently herewith supports this Application. In further support of the Application, the Debtor respectfully represents as follows:

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. FACTUAL BACKGROUND[1]

### A. The Chapter 11 Case

On May 20, 2009 (the "Petition Date"), Plant filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor remains in possession of its property and continues to operate and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committee of unsecured creditors, trustee or examiner has been appointed in this case.

### B. Summary History of the Debtor

The Debtor, formerly known as both Plant Asbestos Company and Asbestos Company of California, was incorporated in California on March 23, 1937.[2] Plant was formed to engage in the business of selling, installing and repairing asbestos, brick, cement, concrete, stone and all other types of fire proofing and insulating materials. Plant was an insulation contractor; its work regularly involved installing and removing asbestos products during a wide range of years.

As a result of Plant's sale and installation of asbestos-containing products dating back to the 1930s, Plant has been embroiled in asbestos-related litigation for many years. From early 1978 and continuing through the Petition Date, Plant had been subjected to thousands of asbestos

---

[1] Several of the facts contained herein have been adduced from the declarations of David J. Gordon and James L. Miller filed in this case on May 20, 2009.

[2] Thorpe Insulation Company ("Thorpe") was formed in 1948 and was formerly known as Plant Insulation Company. Thorpe is a debtor and debtor in possession in Chapter 11 Case No. 07-19271, currently pending in the Bankruptcy Court for the Central District of California, Los Angeles Division. Thorpe is completely unrelated to Plant. Both Thorpe and Plant are also unrelated to the family of companies known as J.T. Thorpe, Inc., Thorpe Technologies, Inc., Thorpe Holding Co., Inc, and Dissolved Thorpe, Thorpe Corp., Thorpe Insulation Texas or Thorpe USA, Inc. Persons with claims against such entities should not file claims against Plant premised upon their claims against these unrelated entities.

bodily injury, wrongful death and loss of consortium claims and lawsuits for damages allegedly caused in whole or in part by exposure to asbestos-containing materials installed or supplied by Plant dating back to the 1930s (collectively, the "Asbestos Cases"). As of the Petition Date, thousands of Asbestos Cases were pending against Plant in California, primarily in Alameda and San Francisco counties. Prior to the Petition Date, approximately 40 new complaints were being filed against Plant each month, and Plant anticipates that numerous additional asbestos related claims will be asserted against it for many years to come. The potential liabilities represented by present and anticipated future asbestos related claims against Plant far exceed the value of Plant's assets. Plant believes that its historical comprehensive general insurance assets provide coverage for many of the present and future liabilities although, as discussed in further detail below, Plant's insurers dispute their liability in the Asbestos Cases.

### C. Insurance Coverage, Related Litigation, Claims and Settlements

Plant maintained comprehensive general and/or excess liability insurance from various insurers throughout the years during which it sold, handled, and installed the vast majority of the asbestos products that gave rise to the Asbestos Cases. Based on its belief that it has coverage for liabilities arising out of the Asbestos Cases, Plant has tendered thousands of suits to its primary Insurers. Notwithstanding their assertion that the polices were exhausted, the Insurers accepted the tender and continued to process, defend and/or settle numerous asbestos claims, pursuant to their policies, under a full reservation of rights.

In an effort to resolve certain coverage disputes with its Insurers[3], on January 17, 2006, Plant filed an action in the California Superior Court for the County of San Francisco, captioned

---

[3] These insurers include: Fireman's Fund Insurance Company, American Automobile Insurance Company, OneBeacon America Insurance Company, as successor under policies issued to Plant by American Employers Insurance Company, Sompo Japan Insurance Company of America, formerly known as Yasuda Fire & Marine Insurance Company, United States Fidelity and Guaranty Company, Royal Indemnity Company, successor by merger to Globe Indemnity Company, ACE Fire Underwriters Insurance Co., formerly known as CIGNA Fire Underwriters Insurance Co., formerly known as Aetna Fire Underwriters Insurance Company, United National Insurance Company, American Home Assurance Company, Insurance Company of the State of Pennsylvania, Granite State Insurance Company, Insurance Company of the West, ACE Property & Casualty Insurance Company, formerly known as Aetna Insurance Company, Mt. McKinley Insurance Company, formerly known as Gibralter Casualty Company, Safety National Casualty Corporation, Transport Insurance Company, and U.S. Fire Insurance Company, successor-in-interest to primary policies that Plant purchased from Industrial Indemnity between 1958 and 1962 (collectively, the "Insurers").

*Plant Insulation Company v. Fireman's Fund Insurance Company, et al.* (No. CGC-06-448618) ("Declaratory Relief Action"). The Declaratory Relief Action is designated as complex litigation and is assigned for all purposes to the Honorable John E. Munter, Judge of the Superior Court. The current operative pleading seeking relief on behalf of Plant in the Coverage Litigation is the *Second Amended Complaint*, filed on April 16, 2007 (the "Amended Complaint"). Consistent with this Court's order modifying the automatic stay, Judge Munter will preside over a Phase II trial commencing on Tuesday, May 26, 2009. While the relief sought by Plant in the Declaratory Relief Action would substantially advance the parties' ability to finally resolve coverage issues relating to those Policies, Plant believes that coverage issues relating to the Insurers' policies will survive the Declaratory Relief Action regardless of its outcome.

Plant has settled with two of its insurers for cash payments in excess of the stated limits of liability in their respective policies. Certain primary insurers have also paid cash to asbestos claimants in settlement of lawsuits against Plant. Thus far, in the aggregate, these settlements have resulted or may result in the Debtor receiving up to $27 million from those insurers for the benefit of asbestos claimants. Certain of the settlements are conditioned upon this Court approving those agreements. Also, the insurers' obligation to fund portions of the settlement amount are conditioned upon this Court confirming a plan that provides protection to the settling insurer pursuant to section 524(g) of the Bankruptcy Code. The Debtor anticipates filing motions seeking the required Court approvals of those settlements.

### D. Sale of Plant's Assets and Wind Down of Business Operations

On May 17, 2001, Shahram Ameli, who had been Plant's Vice President and manager of operations for a number of years, formed Bayside Insulation, Inc. ("Bayside"). Pursuant to an agreement as of that same date, Plant sold substantially all of its business assets to Bayside.[4] By 2002, Plant had ceased active insulation operations, but continued to defend itself against claims and lawsuits and to pursue indemnity claims against Fibreboard. Ultimately, all outstanding stock in Plant was transferred to The Plant Insulation Trust, which as a result became, and is now, the

---

[4] Other portions of Plant's business assets were purchased by Pacific Insulation Company, which itself is in bankruptcy in the Central District of California (Case No. 07-19271).

DEBTOR'S APPLICATION TO EMPLOY
SNYDER MILLER & ORTON, LLP

- 4 -

owner of 100% of the outstanding shares of Plant. David J. Gordon is the President and Chief Executive Officer of Plant. Plant has no other officers or directors.

At present, Plant has no material liabilities except for liabilities unrelated to asbestos claims. Plant's assets consist principally of cash derived from settlements with certain insurers and claims against the Insurers and the Fibreboard Trust.

### E. Plant's Need for Reorganization

As discussed in detail above, Plant is managing thousands of Asbestos Cases in numerous unrelated actions and venues. The *status quo* has numerous inefficiencies: The demand upon the courts is significant and Plant has been unable to consolidate the pending actions in a single or coordinated proceedings; Plant's resources have dwindled to the point that it is challenged in its efforts to fairly respond to plaintiffs' demands for discovery or the needs of counsel and its insurers to properly defend claims; plaintiffs with limited resources lack a streamlined means of submitting claims and having them considered, adjudicated, and paid; and insurers seeking to fully and finally limit their exposure lack the ability to protect themselves against unknown and future claimants that may be entitled to recourse against Plant's policies. In filing this chapter 11 case, the Debtor intends to invoke section 524(g) as a means of resolving the otherwise intractable set of issues associated with thousands of claims now pending against it in various jurisdictions, and the future lawsuits on future claims that would certainly be filed but for this bankruptcy case.

## III. RELIEF REQUESTED

By this Application, the Debtor seeks an order authorizing the retention and employment of SMO as special insurance litigation counsel, effective as of the Petition Date, at the expense of the Debtor's estate and on the terms set forth in this Application and the Fee Agreement dated May 19, 2009 between Plant and SMO (the "Fee Agreement"), a copy of which is attached to the Miller Declaration as Exhibit A.[5]

---

[5] Any references herein to, or summaries of, the Fee Agreement are qualified by the express terms of the Fee Agreement, which shall govern if there is any conflict between the Fee Agreement and the summaries provided herein.

DEBTOR'S APPLICATION TO EMPLOY
SNYDER MILLER & ORTON, LLP

- 5 -

### A. Legal Services To Be Provided by SMO

The Debtor requires SMO's legal services to maximize the value of the insurance available to cover the Debtor's liabilities. As more fully detailed in the Fee Agreement, SMO has served, and wishes to continue to serve as special counsel to the Debtor, while working in conjunction with Morgan, Lewis & Bockius LLP ("Morgan Lewis"), to provide legal advice and representation in the management and resolution of the Debtor's asbestos-related litigation, including but not limited to the Declaratory Relief Action. SMO's involvement is intended to provide the Declaratory Relief Action team with enhanced knowledge of pertinent asbestos litigation facts and history and more effective coordination with asbestos creditors, leading to more efficient management of the litigation and a better overall result.

### B. The Firm's Qualifications

The Debtor requires knowledgeable counsel to render the foregoing essential professional services. As described below and in the Miller Declaration, SMO has substantial experience in handling insurance matters and is qualified to continue performing insurance advice and representation to the Debtor. SMO lawyers, especially Stephen M. Snyder and James L. Miller, have extensive experience in various aspects of asbestos personal injury litigation and related insurance coverage matters. Moreover, because SMO has represented the Debtor since 2006, it has accumulated substantial knowledge regarding the Debtor's history and insurance coverage issues. It is uniquely qualified to continue working in conjunction with, and to complement the experience of, the Morgan Lewis lawyers also involved in the Declaratory Relief Action, as it has assisted other clients seeking relief under chapter 11 of the Bankruptcy Code and clients confirming plans of reorganization under Bankruptcy Code section 524(g), such as in *Thorpe Insulation Company* and *Pacific Insulation Company* (Bankr. C.D. Cal. Case No. 07-19271 (Jt. Admin.)). Copies of the biographies of the attorneys who are currently expected to represent the Debtor's estate in these matters are appended as <u>Exhibit B</u> to Miller Declaration.

Notwithstanding the Debtor's expectation that SMO and Morgan Lewis will collaborate in the Declaratory Relief Action, the services to be rendered by SMO in this matter will not be duplicative of the services rendered by the Morgan Lewis. Nor will SMO's services be

duplicative of those rendered by Jones Day, the Debtor's proposed general bankruptcy counsel, or any other professionals employed or to be employed by the Debtor.

### C. SMO's Compensation Structure

Subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Guidelines for Employment and Compensation of Professional Persons (the "Fee Guidelines") issued by the Office of the United States Trustee, the Debtor proposes to pay SMO contingent fees, plus reimbursement of expenses, as further detailed in the Fee Agreement. Because the Debtor retained SMO as special counsel prior to the Petition Date to work in conjunction with Morgan Lewis on the Declaratory Relief Action after a contingency fee agreement had already been entered between Morgan Lewis and the Debtor (which proposed to pay Morgan Lewis's fees from the proceeds of any insurance settlements obtained on behalf of the Debtor), SMO's Fee Agreement provides that SMO is to be compensated a portion of the contingency fee payable to Morgan Lewis. As a result, the Debtor's retention of SMO will not result in an increase in the overall fees that will be paid by the Debtor for the Declaratory Relief Action. Both Morgan Lewis and SMO will be paid directly by the Debtor from the recoveries received by the Debtor.

SMO's standard policy is to charge its clients for all costs and expenses incurred in connection with its clients' cases. As delineated in the Fee Agreement, SMO will bill the Debtor for these costs and expenses in a manner and at rates consistent with charges made generally to SMO's other clients, but in all cases subject to the Fee Guidelines applicable to such costs.

SMO understands and agrees to be bound by the provisions of sections 327, 328, 330 and 331 of the Bankruptcy Code. It further agrees that payment of its fees and reimbursement of expenses incurred are subject to review and approval by the Bankruptcy Court and that it may not receive any fees or expense reimbursement except as authorized by order of the Bankruptcy Court. SMO further understands and agrees that, pursuant to section 328(a) of the Bankruptcy Code, notwithstanding the terms and conditions set forth in the Fee Agreement, the Bankruptcy Court may allow compensation different from the compensation provided under such terms and

DEBTOR'S APPLICATION TO EMPLOY
SNYDER MILLER & ORTON, LLP - 7 -
Case: 09-31347   Doc# 42   Filed: 05/22/09   Entered: 05/22/09 19:01:25   Page 7 of 10

conditions after the conclusion of SMO's employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions. In seeking approval and payment of its fees and reimbursement of its expenses, SMO understands that no compensation will be paid except upon application to and approval by this Court after notice and a hearing in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Fee Guidelines. SMO also contemplates seeking interim compensation during these cases as permitted by sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016

SMO has not received a retainer in connection with its employment in this matter and has not received any payments during this case. During the one year prior to the Petition Date, the Debtor paid $375,000 in fees and $31,908.31 in expenses to SMO for services rendered to Debtor.

Except as disclosed in the Miller Declaration, SMO has no agreement with any other entity to share any compensation received in connection with these cases, nor will any be made, except as permitted under 11 U.S.C. § 504(b)(1).

### D. Disinterestedness of the Firm

To the best of the Debtor's knowledge and based upon the Miller Declaration neither the Firm nor any of its partners, of counsel, or associates has any connection with the Debtor, any creditors of the estate, any party in interest, their respective attorneys or accountants, the United States Trustee, or any person employed in the Office of the United States Trustee, except as set forth in the Miller Declaration.

To the best of the Debtor's knowledge and based upon the Miller Declaration, neither the Firm nor any of its partners, of counsel, or associates is a creditor, equity security holder, or an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.

To the best of the Debtor's knowledge and based upon the Miller Declaration, neither the Firm nor any of its partners, of counsel, or associates is or was, within two years before the Petition Date, a director, officer, or employee of the Debtor.

DEBTOR'S APPLICATION TO EMPLOY
SNYDER MILLER & ORTON, LLP                - 8 -

Case: 09-31347   Doc# 42   Filed: 05/22/09   Entered: 05/22/09 19:01:25   Page 8 of 10

To the best of the Debtor's knowledge and based upon the Miller Declaration, neither the Firm nor any of its partners, of counsel, or associates represent or hold any interest adverse to the Debtor or to the estate with respect to the matter on which the Firm is to be employed.

### E. Request for *Nunc Pro Tunc* Retention

*Nunc pro tunc* retention is appropriate here because this Application was filed shortly after the Petition Date, and SMO anticipates that it will provide necessary services to the Debtor during the period between the Petition Date and the date the Court enters an order on this Application, as well as thereafter.

## IV. NOTICE

A copy of this Application has been provided to the United State Trustee. Notice of this Application and the hearing date thereon have been provided to the United State Trustee, counsel for the informal committee of unsecured creditors, the Office of the U.S. Trustee, the 20 largest creditors in this case, and any party who has filed a request for special notice as of the date of service of the Notice.

## V. CONCLUSION

SMO is highly qualified to render the services needed by the Debtor as set forth herein, and the Debtor believes that SMO's employment, on the terms stated in the Fee Agreement, is in the best interest of the creditors of this estate. Based upon the foregoing, the Debtor requests that this Court enter an order: (i) authorizing the employment and retention Snyder Miller & Orton LLP as special insurance litigation counsel, effective *nunc pro tunc* to the Petition Date, to render services as described above, on the terms and conditions set forth herein and as more fully set forth in the Fee Agreement, with compensation to be paid by the estate as an administrative expense in such amounts as this Court may hereafter determine and allow, and (ii) providing such other and further relief as this Court deems just and proper.

Dated: May 22, 2009

PLANT INSULATION COMPANY

By: David J. Gordon, Its Chief Executive Officer

APPROVED AS TO FORM:

DATED: May 22, 2009

JONES DAY

By: /s/ Tobias S. Keller
Tobias S. Keller
Proposed Attorneys for Debtor and Debtor in
Possession, Plant Insulation Company

SFI-603947v3

Case: 09-31347    Doc# 42    Filed: 05/22/09    Entered: 05/22/09 19:01:25    Page 10 of 10