Peter J. Benvenutti (Bar No. 60566)
Tobias S. Keller (Bar No. 151445)
Michaeline H. Correa (Bar No. 215215)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
Email: pjbenvenutti@jonesday.com
tkeller@jonesday.com
mcorrea@jonesday.com

Proposed Attorneys for Debtor and Debtor in
Possession PLANT INSULATION COMPANY

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 09-31347 TC |
| PLANT INSULATION COMPANY, a California corporation, | Chapter 11 |
| Debtor. | **DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY BACHECKI, CROM & CO. LLP AS ACCOUNTANT** |
| | [No Hearing Unless Timely Requested] |
| | **Judge: Honorable Thomas E. Carlson** |

**TO THE HONORABLE THOMAS E. CARLSON, UNITED STATES BANKRUPTCY JUDGE:**

Plant Insulation Company, debtor and debtor in possession in the above-referenced chapter 11 case (the "Debtor"), hereby applies (this "Application") for entry of an order pursuant to sections 327(a) and 328 of Title 11 of the United States Code (as amended from time to time, the "Bankruptcy Code"), and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, authorizing the employment and retention of Bachecki, Crom & Co., LLP, Certified Public Accountants (the "Accountant" or "Bachecki Crom") as the Debtor's general accountants. The Accountant will be paid at its normal hourly rates in effect from time to time and in accordance

DEBTOR'S APP. TO EMPLOY BACHECKI CROM
CASE NO.

with its normal reimbursement policies. The facts supporting the relief sought in this Application are summarized below and are further set forth in the Declaration of Jay D. Crom (the "Crom Declaration"), filed concurrently herewith.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. FACTUAL BACKGROUND[1]

### A. The Chapter 11 Case

On May 20, 2009, Plant filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor remains in possession of its property and continues to operate and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankrupty Code. No official committee of unsecured creditors, trustee or examiner has been appointed in this case.

### B. Summary History of the Debtor

The Debtor, formerly known as both Plant Asbestos Company and Asbestos Company of California, was incorporated in California on March 23, 1937.[2] Plant was formed to engage in the business of selling, installing and repairing asbestos, brick, cement, concrete, stone and all other types of fire proofing and insulating materials. Plant was an insulation contractor; its work regularly involved installing and removing asbestos products during a wide range of years.

As a result of Plant's sale and installation of asbestos-containing products dating back to the 1930s, Plant has been embroiled in asbestos-related litigation for many years. From early

---

[1] Several of the facts contained herein have been adduced from the declarations of David J. Gordon and James Miller filed in this case on May 20, 2009.

[2] Thorpe Insulation Company ("Thorpe") was formed in 1948 and was formerly known as Plant Insulation Company. Thorpe is a debtor and debtor in possession in Chapter 11 Case No. 07-19271, currently pending in the Bankruptcy Court for the Central District of California, Los Angeles Division. Thorpe is completely unrelated to Plant. Both Thorpe and Plant are also unrelated to the family of companies known as J.T. Thorpe, Inc., Thorpe Technologies, Inc., Thorpe Holding Co., Inc, and Dissolved Thorpe, Thorpe Corp., Thorpe Insulation Texas or Thorpe USA, Inc. Persons with claims against such entities should not file claims against Plant premised upon their claims against these unrelated entities.

1978 and continuing through the Petition Date, Plant had been subjected to thousands of asbestos bodily injury, wrongful death and loss of consortium claims and lawsuits for damages allegedly caused in whole or in part by exposure to asbestos-containing materials installed or supplied by Plant dating back to the 1930s (collectively, the "Asbestos Cases"). As of the Petition Date, thousands of Asbestos Cases were pending against Plant in California, primarily in Alameda and San Francisco counties. Prior to the Petition Date, approximately 40 new complaints were being filed against Plant each month, and Plant anticipates that numerous additional asbestos related claims will be asserted against it for many years to come. The potential liabilities represented by present and anticipated future asbestos related claims against Plant far exceed the value of Plant's assets. Plant believes that its historical comprehensive general insurance assets provide coverage for many of the present and future liabilities although, as discussed in further detail below, Plant's insurers dispute their liability in the Asbestos Cases.

### C. Insurance Coverage, Related Litigation, Claims and Settlements

Plant maintained comprehensive general and/or excess liability insurance from various insurers throughout the years during which it sold, handled, and installed the vast majority of the asbestos products that gave rise to the Asbestos Cases. Based on its belief that it has coverage for liabilities arising out of the Asbestos Cases, Plant has tendered thousands of suits to its primary Insurers. Notwithstanding their assertion that the polices were exhausted, the Insurers accepted the tender and continued to process, defend and/or settle numerous asbestos claims, pursuant to their policies, under a full reservation of rights.

In an effort to resolve certain coverage disputes with its Insurers[3], on January 17, 2006,

---

[3] These insurers include: Fireman's Fund Insurance Company, American Automobile Insurance Company, OneBeacon America Insurance Company, as successor under policies issued to Plant by American Employers Insurance Company, Sompo Japan Insurance Company of America, formerly known as Yasuda Fire & Marine Insurance Company, United States Fidelity and Guaranty Company, Royal Indemnity Company, successor by merger to Globe Indemnity Company, ACE Fire Underwriters Insurance Co., formerly known as CIGNA Fire Underwriters Insurance Co., formerly known as Aetna Fire Underwriters Insurance Company, United National Insurance Company, American Home Assurance Company, Insurance Company of the State of Pennsylvania, Granite State Insurance Company, Insurance Company of the West, ACE Property & Casualty Insurance Company, formerly known as Aetna Insurance Company, Mt. McKinley Insurance Company, formerly known as Gibralter Casualty Company, Safety National Casualty Corporation, Transport Insurance Company, and U.S. Fire Insurance Company, successor-in-interest to primary policies that Plant purchased from Industrial Indemnity between 1958 and 1962 (collectively, the "Insurers").

Plant filed an action in the California Superior Court for the County of San Francisco, captioned *Plant Insulation Company v. Fireman's Fund Insurance Company, et al.* (No. CGC-06-448618) ("Declaratory Relief Action"). The Declaratory Relief Action is designated as complex litigation and is assigned for all purposes to the Honorable John E. Munter, Judge of the Superior Court. The current operative pleading seeking relief on behalf of Plant in the Coverage Litigation is the *Second Amended Complaint*, filed on April 16, 2007 (the "Amended Complaint"). Consistent with this Court's order modifying the automatic stay, Judge Munter will preside over a Phase II trial commencing on Tuesday, May 26, 2009. While the relief sought by Plant in the Declaratory Relief Action would substantially advance the parties' ability to finally resolve coverage issues relating to those policies, Plant believes that coverage issues relating to the Insurers' policies will survive the Declaratory Relief Action regardless of its outcome.

Plant has settled with two of its insurers for cash payments in excess of the stated limits of liability in their respective policies. Certain primary insurers have also paid cash to asbestos claimants in settlement of lawsuits against Plant. Thus far, in the aggregate, these settlements have resulted or may result in the Debtor receiving up to $27 million from those insurers for the benefit of asbestos claimants. Certain of the settlements are conditioned upon this Court approving those agreements. Also, the insurers' obligation to fund portions of the settlement amount are conditioned upon this Court confirming a plan that provides protection to the settling insurer pursuant to section 524(g) of the Bankruptcy Code. The Debtor anticipates filing motions seeking the required Court approvals of those settlements.

### D. Sale of Plant's Assets and Wind Down of Business Operations

On May 17, 2001, Shahram Ameli, who had been Plant's Vice President and manager of operations for a number of years, formed Bayside Insulation, Inc. ("Bayside"). Pursuant to an agreement as of that same date, Plant sold substantially all of its business assets to Bayside.[4] By 2002, Plant had ceased active insulation operations, but continued to defend itself against claims and lawsuits and to pursue indemnity claims against Fibreboard. Ultimately, all outstanding stock in Plant was transferred to The Plant Insulation Trust, which as a result became, and is now, the

---

[4] Other portions of Plant's business assets were purchased by Pacific Insulation Company, which itself is in bankruptcy in the Central District of California (Case No. 07-19271).

owner of 100% of the outstanding shares of Plant. David J. Gordon is the President and Chief Executive Officer of Plant. Plant has no other officers or directors.

At present, Plant has no material liabilities except for liabilities related to asbestos claims. Plant's assets consist principally of cash derived from settlements with certain insurers and claims against the Insurers and the Fibreboard Trust.

### E. Plant's Need for Reorganization

Plant is managing thousands of Asbestos Cases in numerous unrelated actions and venues. The *status quo* has numerous inefficiencies: The demand upon the courts is significant and Plant has been unable to consolidate the pending actions in a single or coordinated proceedings; Plant's resources have dwindled to the point that it is challenged in its efforts to fairly respond to plaintiffs' demands for discovery or the needs of counsel and its insurers to properly defend claims; plaintiffs with limited resources lack a streamlined means of submitting claims and having them considered, adjudicated, and paid; and insurers seeking to fully and finally limit their exposure lack the ability to protect themselves against unknown and future claimants that may be entitled to recourse against Plant's policies. In filing this chapter 11 case, the Debtor intends to invoke section 524(g) as a means of resolving the otherwise intractable set of issues associated with thousands of claims now pending against it in various jurisdictions, and the future lawsuits on future claims that would certainly be filed but for this bankruptcy case.

### III. RELIEF REQUESTED AND THE BASIS THEREFOR

By this Application, the Debtor seeks to retain Bachecki Crom to perform accounting and tax services on the terms and conditions set forth in the prepetition Engagement Letter dated May 19, 2009 between Plant and the Accountant. A copy of the Engagement Letter is attached to the Crom Declaration as Exhibit "A". Specifically, Plant requires the services of an accountant and tax advisor to prepare and file tax returns, prepare schedules and financials statements and monthly operating reports, perform tax analysis, and consult with Plant's bankruptcy counsel with regard to such matters. More specifically, Plant requests that the Accountant be empowered to act, through its officers and employees, for an on behalf of Plant and its estate, to represent Plant

before any taxing authority including the Internal Revenue Service and the California Franchise Tax Board, to receive confidential information, to make written or oral presentations of fact or argument, and to perform any and all acts on behalf of Plant and its estate which Plant is by law permitted, regarding any tax matter which may arise during the administration of the estate. Plant desires to employ the Accountant in this case because of the Accountant's extensive experience and knowledge in general accounting, bankruptcy and tax matters.

Pursuant to section 327(a) of the Bankruptcy Code, the Debtor, "with the court's approval, may employ one or more . . . accountants . . . or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title." 11 U.S.C. § 327(a); *see also* Fed. R. Bankr. Proc. 2014.

The Accountant has agreed to provide all services required by Plant in connection with the Debtor's bankruptcy case as generally referred to herein.

## **COMPENSATION**

The Debtor proposes that the Accountant be compensated on an hourly basis, based on the Accountant's customary hourly fees, plus reimbursement of actual, necessary expenses and other charges reasonably incurred by the Accountant, in accordance with the United States Trustee's Guidelines, a copy of which has been provided to Accountant.

Mr. Crom's hourly rate is $410.00. The normal billing rates for the other members of the firm who may perform services for the Trustee are as follows:

|  |  |
|---|---|
| Partners | $340 – 410/hour |
| Senior Accountant | $260 – 310/hour |
| Junior Accountant | $120 – 180/hour |

The Accountant agrees to maintain detailed time records, bill in one-tenth hour increments, submit its bills to the Debtor on a monthly basis, and otherwise comply with this Court's applicable orders and guidelines, including the filing of fee applications as required by the Bankruptcy Code and orders of this Court. The Accountant further agrees that no compensation for services rendered to the Trustee, nor reimbursement of reasonable costs and

expenses shall be paid by the Trustee to Accountant, except as provided for by order of this Court.

## **DISINTERESTEDNESS**

On behalf of the Accountant, Jay D. Crom reviewed lists of the Debtor's 20 largest creditors, as well a list of names of entities who may be parties in interest to this chapter 11 case, in each case as provided by the Debtor, and determined, to the best of his knowledge, that the Accountant and its members:

(a) are "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code;

(b) have no connection with the Debtor, its creditors, or any other parties in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee, and does not employ any person who is related to a Judge of this Court;

(c) do not hold or represent any interest adverse to the Debtor or its estate in the matters upon which the Accountant is to be engaged; notwithstanding the foregoing, the Accountant has performed, may currently be performing and may in the future perform, tax and accounting services for creditors of the Debtor in connection with matters unrelated to the Debtor and this bankruptcy case;

(d) do not hold any claims against the Debtor's bankruptcy estate; and

(e) neither the Accountant, nor any of its members have ever been, and are not now, an equity security holder, an insider, a director, an officer, an employee, or an investment banker of the Debtor, or a director, officer, employee, or attorney for any such investment banker.

As set forth in the Crom Declaration, the Accountant has not agreed to share compensation for the representation of the Debtor with any other person or entity.

## **CONCLUSION**

The Debtor believes and represents that the appointment of the Accountant as general accountant with compensation of fees and reimbursement of expenses to be at the expense of the

estate, as set forth herein and in the Engagement Letter, is in the best interest of the Debtor's estate and its creditors.

WHEREFORE, the Debtor requests that this Court authorize the employment of the Accountant as counsel for Plant, pursuant to Bankruptcy Code section 327(a), on the terms and conditions stated in this Application.

Dated: May 27, 2009

PLANT INSULATION COMPANY

By: /s/
David J. Gordon,
Its Chief Executive Officer

**APPROVED AS TO FORM:**

Dated: May 27, 2009

JONES DAY

By: /s/ Michaeline H. Correa
Michaeline H. Correa
Attorneys for Debtor and Debtor in Possession,
PLANT INSULATION COMPANY

SFI-603365v1