SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
STEVEN B. SACKS, Cal. Bar No. 98875
ORI KATZ, Cal. Bar No. 209561
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4109
Telephone:      415-434-9100
Facsimile:      415-434-3947

Proposed Attorneys for the
Official Committee of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 09-31347 |
| PLANT INSULATION COMPANY, a California corporation, | Chapter 11 |
| Debtor.<br><br>Tax ID: 94-0292481 | **APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF SHEPPARD, MULLIN, RICHTER & HAMPTON LLP AS COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        June 1, 2009<br>Time:        2:00 p.m.<br>Judge:       Hon. Thomas E. Carlson<br>Place:       United States Bankruptcy Court<br>                 235 Pine Street, Courtroom 23<br>                 San Francisco, California |

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE AND THE OFFICE OF THE UNITED STATES TRUSTEE:

The Official Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11 case of Plant Insulation Company ("Plant" or the "Debtor") hereby applies to this Court for entry of an order authorizing the employment of Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin") as counsel to the Committee with compensation at the expense of the Debtor's estate and in such amounts as this Court may allow.

This application (the "Application") is made pursuant to Bankruptcy Code sections 328 and 1103(a), and Federal Rule of Bankruptcy Procedure 2014. This Application is based on the Declarations of Michael H. Ahrens (the "Ahrens Declaration"), Philip Atkins-Patterson ("Atkins-Patterson Declaration"), and Steven Sacks (the "Sacks Declaration") filed concurrently herewith.

In this Application the Committee will set forth a summary of the disclosures of Sheppard Mullin that are contained in the Ahrens, Atkins-Patterson and Sacks Declarations. The full disclosures in those declarations will not be repeated in this Application, but will only be summarized.

This Application will also include a Memorandum of Points and Authorities as to why Sheppard Mullin should be approved as counsel for the Committee. In particular, Sheppard Mullin has represented a pre-petition committee in this Plant matter for over two and one-half years and has specialized and unique knowledge and experienced in issues pertaining to this case. In addition, in the last five years, Sheppard Mullin has represented the Creditors Committees in two of the three asbestos bankruptcy cases on the West Coast. The other counsel is Peter Benvenutti, and he represents the Debtor.

The Declarations demonstrate that Sheppard Mullin is highly qualified to undertake representation of the Committee, that Sheppard Mullin is disinterested and that it does not represent or hold an interest adverse to the interest of the estate with regard to employment on behalf of the Committee. The Declarations contain a full disclosure of the relevant facts and circumstances as to these issues. In particular, the Declarations respond to the contention by one

W02-WEST:FME\401548332.8

APPLICATION FOR EMPLOYMENT OF SHEPPARD MULLIN

of the Debtor's insurers, U.S. Fire Insurance Company ("U.S. Fire"), in pending state court litigation that a prior representation of U.S. Fire in a suit unrelated to this Debtor by a coverage lawyer at Sheppard Mullin should have prevented Sheppard from representing the pre-petition committee in connection with the representation of the Committee in discovery proceedings in the Debtor's state court coverage action. If U.S. Fire chooses to object to the employment of Sheppard in this bankruptcy, such objection should be overruled. Even though it raised this issue in 2007, U.S. Fire has never brought a motion to disqualify Sheppard in the state court matter in which Sheppard appeared. And, U.S. Fire did not bring a motion for a preliminary injunction in the suit they filed against Sheppard until today—May 29, 2009. Moreover, Sheppard Mullin has no impermissible interest preventing its representation of the Committee in this bankruptcy case, which is in no manner substantially related to the action in which U.S. Fire was previously Sheppard Mullin's client. Sheppard Mullin has not represented U.S. Fire since March 2006.

## I.

## BACKGROUND

Plant commenced this case by filing a voluntary petition under Chapter 11 of title 11 of the United States Code on May 20, 2009. The Office of the United States Trustee (the "U.S. Trustee") has yet to appoint the Committee in this case, though an appointment is expected on Monday, June 1, 2009. The members of the Committee include all three members of the Informal Asbestos Creditors' Committee of Plant Insulation Company (the "Pre-Petition Committee"), which was composed of: (a) Alan Brayton of Brayton Purcell; (b) David M. McClain, of Kazan McClain; (c) Jerry Neil Paul of Paul Hanley & Harley. The Committee also includes Matthew P. Bergman of Bergman, Draper & Frockt and Ronald J. Shingler of Simon & Shingler. The Committee seeks to employ Sheppard Mullin as its counsel to advise and represent it in this case.

## II.

## RELIEF REQUESTED

The Committee wishes to retain Sheppard Mullin because its attorneys are skilled bankruptcy and business reorganization counsel and have significant experience in bankruptcy cases involving a plan under Bankruptcy Code Section 524(g). As a consequence of the

foregoing, the Committee believes that the members of Sheppard Mullin are well qualified to represent their interests in the Plant Bankruptcy Case.

The duties to be performed by Sheppard Mullin with respect to the Committee include:

a. Advising regarding bankruptcy law;

b. Advising with respect to the Committee's powers and duties in the Debtor's bankruptcy case;

c. Attending Committee meetings;

d. Reviewing financial information furnished by the Debtor to the Committee and investigating various potential claims;

e. Conferring with the Debtor and the Chapter 11 Trustee;

f. Assisting in the investigation of the acts, conduct, assets, liabilities and financial condition of the Debtor;

g. Providing aid and assistance in monitoring the progress of the Debtor's administration of this chapter 11 case;

h. Providing representation in all negotiations and proceedings involving the Debtor, the Committee, and other parties-in-interest;

i. Representing the Committee in any proceedings or hearings before this Court and in any action in any other court where the Debtor's rights under the Bankruptcy Code may be litigated or affected;

j. Conducting examinations of witnesses, claimants, or adverse parties and preparing and assisting in the preparation of reports, accounts, and pleadings related to this bankruptcy case;

k. Advising the Committee concerning the requirements of the Bankruptcy Code and applicable rules as they may affect the Committee in this bankruptcy case and any related adversary proceeding;

l. Assisting the Committee and working with the Debtor with regard to any sales of the Debtor's assets;

APPLICATION FOR EMPLOYMENT OF SHEPPARD MULLIN

| | |
|---|---|
| 1 | m. Advising the Committee and working with the Debtor with regard to the formulation, negotiation, confirmation, and implementation of any Chapter 11 plan; |
| 4 | n. Advising and assisting the Committee with respect to any matters involving the U.S. Trustee; |
| 6 | o. Making court appearances on behalf of the Committee; and |
| 7 | p. Representing the Committee in all other legal aspects of this chapter 11 case and taking any other action and performing any other services as the Committee may require of Sheppard Mullin in connection with this chapter 11 case. |

## III.

## CONNECTIONS WITH THE DEBTOR AND OTHER PARTIES

Sheppard Mullin has made disclosures concerning the following: (a) the representation of the Pre-petition and Official Committee by Sheppard Mullin in the Western Asbestos and related Chapter 11 bankruptcy cases filed in the Northern District of California, Oakland Division, presided over by the Hon. Leslie Tchaikovsky; (b) the representation of the Official Creditors Committee in the J.T.Thorpe Chapter 11 filed in the Central District of California before the Hon. Sheri Bluebond; (c) Sheppard's representation of certain parties in connection with Thorpe Insulation; (d) the formation of the "Informal Asbestos Creditors' Committee of Plant Insulation, Inc." ("Pre-Petition Committee ") and the representation of such committee by Sheppard Mullin; (e) the insurance coverage action filed by the Debtor entitled *Plant Insulation v. Fireman's Fund Insurance Company et al.*, S.F. Superior Court No CGC-06-448618 ("Plant Coverage Action") and Sheppard's representation of witnesses in discovery proceedings in the Plant Coverage Action; (f) Sheppard Mullin's review of any connections to the parties to the Plant Coverage Action; (g) the contentions of U.S. Fire Insurance Company ("U.S. Fire") in the Plant Coverage Action regarding Sheppard Mullin; (h) the Superior Court action entitled *United States Fire Insurance Company v. Sheppard, Mullin, Richter & Hampton LLP*,

S.F. Superior Court No. CGC-07-466772; (i) the need to retain Sheppard Mullin to represent the Plant Committee; and (j) other miscellaneous matters.

A.      **Sheppard's Representation of the Pre-Petition Committee and Official Committee in Western Asbestos Chapter 11**

Sheppard Mullin represented the Official Committee in the bankruptcy cases of Western Asbestos Company, Western MacArthur Company, and MacArthur Company (collectively, "Western"), filed before the Honorable Leslie Tchaikovsky in the Oakland Division of the United States Bankruptcy Court, Northern District of California. Prior to the representation of the Official Committee in Western, Sheppard Mullin represented a pre-petition unofficial Western asbestos claimants committee for a few months.

The Western Bankruptcy Cases were filed in November 2002 and the bankruptcy court confirmed a plan of reorganization in early 2004. From the first week of the bankruptcy filing, virtually every motion filed by the Debtors, the Committee or the Futures Representative was objected to by those insurers who had not settled. While an insurer, United States Fidelity & Guaranty ("USF&G"), had settled before the bankruptcy case and supported confirmation of a plan of reorganization in order to obtain the protections of a Section 524(g) injunction, the Debtor's other insurers who had not settled opposed that relief and objected to the plan. Throughout intensive and fast-paced litigation in the Western Bankruptcy Case, Sheppard Mullin directed the Committee's participation in the bankruptcy case.

Bankruptcy Judge Leslie Tchaikovsky presided over a 19-day trial concerning confirmation of the plan of reorganization in the Western Bankruptcy Case in which Sheppard Mullin played an integral role on behalf of the Western Committee. The Bankruptcy Court confirmed the Plan of Reorganization, and its confirmation order was affirmed by the U.S. District Court, the Honorable Martin Jenkins, in April 2004. Such affirmation is a unique procedure required under Section 524(g)(3)(A) for asbestos bankruptcies, whereby a District Court must issue or affirm any confirmation order approving a bankruptcy reorganization plan that provides injunctive relief under Section 524(g).

APPLICATION FOR EMPLOYMENT OF
SHEPPARD MULLIN

Eventually, all of the objecting insurers settled with the Western debtors and agreed to make contributions to the settlement trust so that they could be treated as settling insurers under the Plan and receive the benefit of the Section 524(g) injunctions. Including the initial settlement with USF&G, the total settlement amounts obtained in the Western Bankruptcy Case from insurers amounted to over $2.2 Billion at the time the Plan became effective. Under the Plan, the Western Asbestos Settlement Trust ("Western Trust") was established for the purpose of receiving and resolving claims against the Western debtors for asbestos-related injuries and deaths. The Trust Agreement provides for creation of a Trust Advisory Committee ("TAC") to advise the trustees of the Western Trust. Sheppard Mullin has represented the TAC since its creation in 2004.

Various counsel for parties in the Western Bankruptcy Case are also serving as counsel or proposed as counsel in this case. Steven M. Snyder of Snyder, Miller & Orton was co-counsel for the Debtor in Western and presently serves as managing trustee of the Western Trust. Mr. Snyder and his firm are co-counsel for Plant in the Plant Coverage Action. The Morgan, Lewis & Bockius firm was co-counsel for the Debtor in the Western Bankruptcy Case and is co-counsel for Plant in the Plant Coverage Action. The Futures Representative in Western, the Hon. Charles Renfrew, and his counsel, Gary S. Fergus, have been proposed to serve in the same capacity in this case. More than one counsel for members of the Committee in Western are also serving on the Committee in this case—Alan Brayton, David McClain, and perhaps others, depending on the final appointments.

Sheppard Mullin filed a declaration in December 2002 in the Western Bankruptcy Case that disclosed any relationships that the firm was aware of with parties in interest or the insurers of Western. After the filing of that declaration, the employment of Sheppard Mullin was approved. At that time, Sheppard was not aware that U.S. Fire was an insurance company that might be an insurer of Western, or was involved in the Western Bankruptcy Case. In June 2003, Sheppard learned that U.S. Fire was one of the insurers objecting to confirmation of the proposed plan.

Shortly before it learned of U.S. Fire's involvement in Western, Sheppard Mullin was retained to represent U.S. Fire in the matter of *Kelly-Moore Paint Company, Inc. v. Continental Insurance Company, et al.*, San Francisco Superior Court, No. 325147 (the "Kelly-Moore Case"). The issues involved in the Kelly-Moore Case were unrelated to any of the issues involved between the Western Debtors and U.S. Fire. Philip Atkins-Pattenson, who led Sheppard Mullin's team in the Kelly-Moore Case, disclosed the Firm's representation in the Western Bankruptcy Case to U.S. Fire and was advised that U.S. Fire had no objection to Sheppard Mullin's continued representation of the Western Committee or Sheppard Mullin's continued representation of U.S. Fire in the Kelly-Moore Case. The Western Committee was informed of Sheppard Mullin's representation of U.S. Fire in the Kelly-Moore Case and also had no objection. And, while the Firm did not believe it necessary, Sheppard Mullin established an ethical wall so that the Sheppard Mullin counsel working on the Kelly-Moore Case would not work on the Western Bankruptcy Case or have access to any files, documents or confidential information in that case, and vice versa. On June 13, 2003, Sheppard filed in the Western Bankruptcy Case a Supplemental Declaration giving notice of the U.S. Fire matters. *See* Ahrens Declaration, Exh. A.

**B.      Sheppard's Representation of the Official Committee in J.T. Thorpe Chapter 11**

Sheppard Mullin was employed as counsel to the Official Committee in the bankruptcy case of J.T. Thorpe ("J.T. Thorpe Bankruptcy Case") in the Bankruptcy Court in the Central District of California before the Honorable Sheri Bluebond. The J.T. Thorpe Bankruptcy Case was similar to the Western Bankruptcy Case in that the debtor sought confirmation of a plan under Section 524(g) and the issuance of injunctions channeling claims to a settlement trust. Sheppard Mullin's representation in the J.T. Thorpe Bankruptcy Case was on matters of bankruptcy law. There was a pending insurance coverage action entitled *J.T. Thorpe, Inc., et al. v. Federal Insurance Company, et al.,* Adv. Pro. No. 04-1438-BB, United States Bankruptcy Court for the Central District of California (the "Thorpe Coverage Action"). In the Thorpe Coverage Action, the Morgan Lewis and Snyder Miller firms represented the debtor in all coverage disputes. Sheppard Mullin did not represent the J.T. Thorpe Committee in that Thorpe Coverage Action and did not give coverage advice to the J.T. Thorpe Committee. After confirmation, the objecting

1   insurers attempted to stay implementation of the J.T. Thorpe Plan.  They took their argument all

2   the way to the United States Supreme Court.  When the United States Supreme Court denied two

3   separate motions for a stay of the J.T. Thorpe Plan, each of the objecting insurers that had not

4   already settled with Thorpe then made settlements with Thorpe and withdrew their bankruptcy

5   objections.  The insurers in Thorpe paid a total of Two Hundred Fifty-Two Million Nine Hundred

6   Fifty Thousand Dollars ($252,950,000) in settlements by the time the plan became effective.

7                   Various counsel for parties in the J.T. Thorpe Bankruptcy Case are also serving as

8   counsel or proposed as counsel in this case.  Steven M. Snyder of Snyder, Miller & Orton was co-

9   counsel for the Debtor in J.T. Thorpe and presently serves as managing trustee of the J.T. Thorpe

10  Trust.  Mr. Snyder and his firm are co-counsel for Plant in the Plant Coverage Action.  The

11  Morgan, Lewis & Bockius firm was co-counsel for the Debtor in the J.T. Thorpe Bankruptcy Case

12  and is co-counsel for Plant in the Plant Coverage Action.  The Futures Representative in J.T.

13  Thorpe, the Hon. Charles Renfrew, and his counsel, Gary S. Fergus, have been proposed to serve

14  in the same capacity in this case.  More than one counsel for members of the Committee in J.T.

15  Thorpe are also serving on the Committee in this case—Alan Brayton, David McClain and

16  perhaps others, depending on the final appointments.

17  **C.      Sheppard's Representation of Parties in Connection with Thorpe Insulation**

18                  From approximately July through October of 2004, Sheppard Mullin provided legal

19  services concerning bankruptcy related issues to an informal committee of plaintiff's counsel who

20  represented asbestos claimants in suits against Thorpe Insulation Company ("Thorpe Insulation"),

21  which is unrelated to J.T. Thorpe.  Sheppard provided advice with regard to Thorpe Insulation's

22  potential filing of a Chapter 11 case and had discussions with counsel for Thorpe Insulation during

23  that time period.  As the Ahrens Declaration discloses, Sheppard decided that due to a potential

24  conflict, it would not be able to represent the pre-petition committee.

25  **D.      Formation of the Pre-Petition Committee of Plant**

26                  On or about September 11, 2006, attorneys for asbestos creditors of the Debtor

27  formed the Pre-Petition Committee in the Plant Coverage Action and hired Sheppard Mullin as its

28  counsel.  Pursuant to an engagement letter with Sheppard Mullin, the Committee agreed that

1  Sheppard Mullin would only represent the Pre-Petition Committee and not represent individual

2  members of the Committee with regard to the Debtor unless needed in connection with Committee

3  matters.  The example set forth in the engagement letter was that Sheppard Mullin may be

4  required to appear on behalf of the Kazan and Brayton firms in the Plant Coverage Action with

5  regard to subpoenas issued to those firms seeking documents pertaining to matters in which the

6  Committee has an interest.  In fact, as set forth herein, the Committee did authorize Sheppard to

7  appear in such Plant Coverage Action to represent these firms as to the subpoenas served on them

8  since such representation impacted the matters in which the Committee had an interest.

9  **E.     The Plant Coverage Action and Sheppard's Representation**

10         **of Witnesses in the Coverage Litigation**

11         In the Plant Coverage Action that commenced in January 2006, Plant sued its

12  insurers for declaratory relief concerning Plant's rights to coverage for asbestos-related claims and

13  the insurers cross-complained against Plant.  Sheppard appeared on behalf of two law firms in

14  discovery disputes in the Plant Coverage Action on matters in which the Pre-petition Plant

15  Committee had an interest and has since represented members of the Committee and other counsel

16  for claimants at their depositions on these matters.

17         Sheppard Mullin's representation of the law firms commenced after the Brayton

18  Purcell and Kazan McClain law firms were served in the late summer of 2006 with subpoenas

19  *duces tecum* by Mt. McKinley Insurance Company, a defendant insurer in the Plant Coverage

20  Action.  Sheppard Mullin had represented the Western Committee in a similar discovery dispute in

21  the Western Bankruptcy Case where a common interest privilege issue was argued.  This issue

22  between the Committee and the Insurers was also addressed in J.T. Thorpe.  Also, in the event that

23  Plant would file a bankruptcy case, it was believed to be helpful for the Pre-petition Plant

24  Committee to have counsel.  Sheppard Mullin's involvement in the Plant Coverage Action was

25  limited to these discovery issues and did not encompass advice regarding insurance coverage

26  matters.

27  **F.     Sheppard's Review of Connections to any Parties to the Coverage Litigation**

28

W02-WEST:FME1\401548332.8

APPLICATION FOR EMPLOYMENT OF
SHEPPARD MULLIN

Sheppard Mullin does not presently represent any of the Insurers who are defendants in the Plant Coverage Action. Sheppard Mullin previously obtained the consent of U.S. Fire to Sheppard Mullin's representation of U.S. Fire in the Kelly-Moore matter while it continued to represent the Western Committee in the Western Bankruptcy Case. Sheppard's representation of U.S. Fire terminated in March 2006.

**G.    Claims Made by U.S. Fire in the Plant Coverage Action Regarding Sheppard Mullin**

In 2007, U.S. Fire asserted that Sheppard was not entitled to represent the Pre-petition Plant Committee because of a prior representation on behalf of U.S. Fire in the Kelly-Moore Paint matter. Sheppard Mullin responded and pointed out in response that U.S. Fire admitted that Sheppard did not presently represent U.S. Fire and that the representation by Sheppard of witnesses in the Plant Coverage Action did not bear a substantial relationship to the Kelly-Moore action in which Sheppard Mullin acted as counsel for U.S. Fire. Nor does Sheppard Mullin have any confidential information of U.S. Fire pertinent to the Plant Coverage Action or to any insurance coverage provided by U.S. Fire to Plant.[1] In addition, any confidential information obtained from U.S. Fire was obtained pursuant to its waiver in the Kelly-Moore matter agreeing that Sheppard Mullin could represent the asbestos claimants in the Western Bankruptcy Case. That confidential information was obtained only by counsel who were working on the Kelly-Moore matter and never provided to anyone working on the Western Bankruptcy Case or who has since worked on matters relating to Plant.

**H.    Superior Court Complaint Filed by U.S. Fire Against Sheppard Mullin**

Despite U.S. Fire's long-standing knowledge that this firm was representing the law firms served with subpoenas in the Plant Coverage Action, U.S. Fire did not take any action with regard to its objection to that representation until it filed a separate action against Sheppard Mullin

---

[1] Sheppard Mullin has been informed by Plant's counsel that the U.S. Fire policies at issue in the Plant Coverage Action were actually issued by a different company, Industrial Indemnity, and were assumed by U.S. Fire pursuant to a novation entered into by Plant some years after the coverage had been obtained.

-10-

on August 30, 2007, some ten months after Sheppard Mullin had agreed that all insurers were deemed to have served the subpoenas on our law firm clients and at least eight months after U.S. Fire itself raised the question of whether Sheppard Mullin had a conflict in its representation of the Pre-Petition Plant Committee and the law firms. This filing came long after Sheppard Mullin had spent hundreds of hours of work on the matter.

On August 30, 2007, U.S. Fire filed a Complaint for Preliminary and Permanent Injunctions and Damages against Sheppard Mullin. Even though U.S. Fire entitled the complaint one for a Preliminary Injunction it did not file a Motion for a Preliminary Injunction with its complaint. Only today, May 29, 2009, did it file a motion for a preliminary injunction and set a hearing on that motion for June 25, 2009. At no time has U.S. Fire made any motion in the Plant Coverage Action to disqualify Sheppard Mullin. Since the 2007 filing of the complaint against Sheppard Mullin, Sheppard has continued to represent various witnesses in the Plant Coverage Action, and it and U.S. Fire's counsel have appeared at depositions of the Pre-Petition Plant Committee's members without any action taken by U.S. Fire in that litigation as to Sheppard Mullin's representation of these witnesses.

## I. Bayside and Successor Liability Claims

The Declarations contain disclosures regarding claims that may be made that an operating company who spun off assets from Plant in 2001 is the successor in interest to Plant and is responsible for their asbestos claims.

## J. Other Matters

Sheppard Mullin has represented certain counsel for members of the Committee in connection with matters unrelated to this Debtor. In particular, Sheppard Mullin has represented Brayton Purcell in three matters. One was a subpoena matter in the Bankruptcy Court for the Eastern District of California. One was an adversary proceeding in the Montgomery Ward bankruptcy case in which a client of Brayton Purcell sought to bring a claim for asbestos-related injuries against Montgomery Ward, with recovery limited to insurance proceeds. The final Brayton Purcell matter concerns a Brayton Purcell client's claims unrelated to asbestos which were asserted in a bankruptcy proceeding filed in the Central District of California (this matter

1  remains open at this time).  Sheppard Mullin also represented the firm presently known as Paul &

2  Hanley in connection with Paul & Hanley clients' claims to obtain relief from an injunction

3  preventing litigation of claims against Pfizer, Inc. that was issued in the Quigley, Inc. bankruptcy

4  case pending in the Southern District of New York.  Sheppard Mullin thereafter represented the

5  Clapper & Patti firm in a similar request for relief from the injunction in the Quigley case.

6          Finally, some years ago, one of Sheppard Mullin's partners, while a partner at

7  another law firm, represented David J. Gordon (the responsible individual of the Debtor in this

8  case) in negotiations with his employer, Flintkote, over his employment agreement.  That

9  engagement ended in 2005 before that partner came to Sheppard Mullin.

10         Other than as set forth herein and in the Application, based on the foregoing and

11  the Application, Sheppard Mullin believes that it:  (a) does not have an interest adverse to the

12  Debtor or its estate as defined in 11 U.S.C. section 1103(b) or represent any other entity having an

13  adverse interest in connection with the case as defined in 11 U.S.C. section 1103(b); (b) is a

14  disinterested person within the meaning of 11 U.S.C. section 101(14); and (c) does not have any

15  connection with the Debtor, the Debtor's estate, the Debtor's creditors, the Office of the United

16  States Trustee, or any other party in interest in this case or with their respective attorneys or

17  accountants.  Sheppard Mullin is not aware of any conflicts of interest with respect to the

18  Committee's retention of Sheppard Mullin.  Sheppard Mullin is unaware of any other

19  circumstances which would give rise to any actual conflicts, but will notify the Committee and the

20  Court immediately if such matters arise.

21                                      **IV.**

22                    **Basis of Sheppard Mullin's Compensation**

23         Subject to this Court's approval, Sheppard Mullin will be employed on an hourly

24  basis, with compensation for services and reimbursement of expenses to be paid from the Debtor's

25  estate pursuant to 11 U.S.C. sections 330, 331, 503 and 507.  The following schedule sets forth the

26  current normal and customary hourly rates of the Sheppard Mullin attorneys most likely to render

27  services in this case, which rates are subject to periodic increase:

28

APPLICATION FOR EMPLOYMENT OF
SHEPPARD MULLIN

W02-WEST:FME\401548332.8

| | | | |
|---|---|---|---|
| 1 | Michael H. Ahrens, Esq. | Partner | $755.00 |
| 2 | Steven B. Sacks, Esq. | Partner | $615.00 |
| 3 | Ori Katz, Esq. | Partner | $495.00 |
| 4 | Michael M. Lauter, Esq. | Associate | $350.00 |

The Committee and Sheppard Mullin understand and agree that the proposed compensation arrangement will be subject to Bankruptcy Code section 328, which authorizes this Court to allow compensation different from that which is provided herein if the original fee arrangement appears, in retrospect, to have been improvident in light of developments unanticipated at the outset. Sheppard Mullin understands and agrees that if aggregate interim payments exceed the amount which is ultimately allowed by the Court, Sheppard Mullin will be required to, and will, promptly repay the difference.

The amount of payments to Sheppard by the Pre-petition Plant Committee, and the level of the retainer is contained in the Declarations.[2]

In conformity with Bankruptcy Code sections 330 and 331, Sheppard Mullin intends to file interim applications for allowance of fees and reimbursement of costs advanced as and when appropriate, approximately every 120 days. Sheppard Mullin reserves the right to file a motion requesting monthly payments as authorized in *United States Trustee v. Knudsen Corp. (In Re Knudsen),* 84 B.R. 668 (Bankr. 9th Cir. 1988).

Sheppard Mullin may also seek approval from the Court for its billing categories and caps per category, which may deviate from the caps set forth in the U.S. Trustee Guidelines.

At the conclusion of the case, Sheppard Mullin will file an appropriate application seeking final allowance of all fees and costs, regardless of whether interim compensation has been paid. Upon allowance of such fees and costs, the Debtor will cause to be paid to Sheppard Mullin the difference between the amounts allowed and any interim compensation paid.

---

[2] Sheppard has agreed with the Debtor that the retainer it received for post-petition services will be kept in Sheppard's Trust Account until further order of the Court. It further agreed that if Sheppard was not approved as Committee counsel the Retainer would be made available to other counsel or as the Court orders.

W02-WEST:FME\401548332.8

APPLICATION FOR EMPLOYMENT OF
SHEPPARD MULLIN

1    Sheppard Mullin will render services to the Committee at Sheppard Mullin's

2    standard rates and fees, as it customarily charges to its non-bankruptcy clients, which rates and

3    fees are subject to regular, periodic increase.

4

5                                            **V.**

6    **NEED TO RETAIN SHEPPARD MULLIN TO REPRESENT NEXT COMMITTEE**

7           The Plant Committee believes that it is crucial that Sheppard Mullin be employed

8    to represent the Plant Committee in this case.  Sheppard Mullin has been paid over $10 million in

9    fees and expenses in the two cases that resulted in a confirmed plan:  Western and J.T. Thorpe.

10   Sheppard has built an expertise in two of the most successful asbestos bankruptcy cases.  It would

11   prejudice the Plant Committee if that expertise could not be used in this case.

12                                           **VI.**

13             **U.S. FIRE'S POTENTIAL OBJECTIONS HAVE NO MERIT**

14          Sheppard Mullin anticipates U.S. Fire will object to this Application on the grounds

15   that Sheppard Mullin cannot represent the Committee, adverse to U.S. Fire, because Sheppard

16   Mullin represented U.S. Fire in insurance coverage litigation several years ago.  U.S. Fire may try

17   to argue that rulings by a state court in litigation U.S. Fire filed in 2007 against Sheppard Mullin

18   haves effectively decided this conflicts issue in U.S. Fire's favor.  As more fully set forth in the

19   declarations supporting this Application, U.S. Fire is wrong on both counts.

20          First, Sheppard Mullin would not have a conflict in representing the Committee

21   because, as a matter of law, there is no "substantial relationship" between the insurance coverage

22   work Sheppard Mullin did for U.S. Fire in the past and the bankruptcy work Sheppard Mullin now

23   proposes to do for the Committee.  Second, there is no prior ruling by a state court in U.S. Fire's

24   pending case against Sheppard Mullin that binds or affects the decision of this Court.  The trial

25   court's ruling that U.S. Fire had demonstrated a "probability" of prevailing in connection with its

26   denial of Sheppard Mullin's anti-SLAPP motion is not a determination that Sheppard Mullin did

27   in fact have a conflict.  Nor is it even admissible.  And, the Court of Appeal did not address the

28

W02-WEST:FME1\401548332.8
APPLICATION FOR EMPLOYMENT OF
SHEPPARD MULLIN

merits of U.S. Fire's conflicts claim. This Court, therefore, can and should reach its own conclusion.

Third, in making its independent determination, this Court should keep in mind that in seeking to retain Sheppard Mullin the Committee has sought counsel with unique and specialized knowledge in asbestos bankruptcies. In determining whether a disqualifying conflict exists, courts must balance the risk of exposure of a former client's confidential information against "the current client's right to counsel of its own choosing." (City and County of San Francisco v. Cobra Solutions, Inc. (2006) 38 Cal.4th 839.) That rule applies with special force in the present case because Sheppard Mullin was only exposed to U.S. Fire's confidences as the result of U.S. Fire's waiver of any conflict in connection with a different asbestos bankruptcy case and all parties agreed that the confidential information would not be shared with counsel working for the other client.

Fourth, when Sheppard discovered that U.S. Fire was adverse in the Western case in 2002, U.S. Fire waived any conflicts to allow Sheppard to represent the Committee of Western Asbestos and simultaneously represent U.S. Fire in a coverage action with different counsel representing each party. U.S. Fire did not have a problem with such waiver then, which proves that there was not then and is not now any substantial relationship between the two matters.

A.      **Sheppard Mullin Would Not Have a Conflict in Representing the Committee**

U.S. Fire will likely object to Sheppard Mullin doing bankruptcy work for the Committee because it formerly represented U.S. Fire in insurance coverage litigation, several years ago, in the "Kelly-Moore" case. Kelly-Moore manufactured paint and related products that were alleged to contain asbestos. In 2001, it filed suit against numerous insurers seeking to establish coverage for its alleged asbestos liabilities. In May 2003, U.S. Fire's claims administrator, RiverStone Claims Management LLC retained Sheppard Mullin partner Philip Atkins-Pattenson to represent U.S. Fire in an insurance coverage breach of contract action in San Francisco Superior Court entitled, *Kelly-Moore Paint Company v. Continental Insurance Company, et al.*, Case No. 325147.

APPLICATION FOR EMPLOYMENT OF
SHEPPARD MULLIN

By the time U.S. Fire retained Sheppard Mullin, the superior court had narrowed the major insurance coverage issues pertaining to U.S. Fire to one: whether a one-page "binder" document Kelly-Moore's broker issued on behalf of U.S. Fire provided a separate $500,000 indemnity limit and duty to defend against Kelly-Moore's asbestos claims. As to this narrow issue, the superior court already had rendered two significant summary adjudication rulings. Thus, in undertaking this representation, Sheppard Mullin mainly defended positions U.S. Fire had already staked out in the litigation. The issues included:

a. Whether the binder document had been "cancelled flat," i.e. from the date of issuance;

b. Whether payments made under the binder document (pursuant to a reservation of rights) exhausted the binder document's indemnity limit, and, if so, as of what date; and

c. The proper measure of damages associated with Kelly-Moore's claims for unreimbursed defense costs under the binder document.

In September 2005, Crum & Forster, the parent of U.S. Fire, assumed responsibility for the litigation and associated in the firm of Squire Sanders LLP to serve as co-counsel with Sheppard Mullin. In March 2006, Sheppard Mullin substituted out of the litigation altogether and has not represented U.S. Fire since then.[3]

Sheppard Mullin's insurance coverage work for U.S. Fire had nothing to do with bankruptcy law. In turn, the work Sheppard Mullin proposes to do for the Committee would have

---

[3] In late 2006, after Sheppard Mullin had been substituted out as counsel for U.S. Fire in the Kelly-Moore Action, it was retained by an entity known as RiverStone to represent RiverStone employees in connection with their depositions in Phase II of the Kelly-Moore Action. Prior to that time, Sheppard Mullin had not represented RiverStone or its employees. U.S. Fire consented to Sheppard Mullin's representation of RiverStone and its employees in connection with their depositions in Phase II of the Kelly-Moore Action, and on that basis Sheppard Mullin undertook this representation. While this representation occurred during a brief portion of the time that Sheppard Mullin was representing the Pre-Petition Committee, the representation did not involve U.S. Fire (and Riverstone was not U.S. Fire's agent at the time of this representation) and thus was not a concurrent representation of adverse clients.

APPLICATION FOR EMPLOYMENT OF
SHEPPARD MULLIN

1   nothing to do with insurance coverage issues.  Specifically, such work will include the matters

2   listed above in Section II.

3          To belabor the obvious, the work Sheppard Mullin proposes to do for the

4   Committee is bankruptcy work, not insurance coverage litigation.  In deciding whether Sheppard

5   Mullin has a disqualifying conflict of interest, this distinction makes all the difference.  That

6   Sheppard Mullin's representation of the Committee could be "adverse" to U.S. Fire makes no

7   difference.  Attorneys in California are permitted to represent clients that are adverse to former

8   clients, unless the matters are "substantially related."  (See, e.g., *City and Country of San*

9   *Francisco v. Cobra Solutions, Inc.*, *supra*, 38 Cal.4th at 847.)  Because Sheppard Mullin's work

10  for the Committee has nothing to do with insurance coverage issues (and even the coverage issues

11  in the Plant Coverage Action have nothing to do with those at issue in Kelly-Moore), the two

12  engagements are not, as a matter of law, substantially related.  Thus, Sheppard Mullin may

13  appropriately undertake the engagement referenced in this Application.

14  **B.      The State Court Did Not Rule Otherwise**

15         In August 2007, U.S. Fire filed a lawsuit against Sheppard Mullin in San Francisco

16  Superior Court seeking to enjoin the Firm, on grounds of a purported conflict arising out of the

17  Firm's former representation of U.S. Fire, "from representing the committee of asbestos creditors,

18  their counsel, or any related persons or entities" in the insurance coverage litigation Plant

19  Insulation filed against several insurance carriers (including U.S. Fire) in state court.  In response,

20  Sheppard Mullin filed a motion under California's so-called "anti-SLAPP" statute (Code Civ.

21  Proc., § 425.16 et seq.) to dismiss U.S. Fire's action.  The trial court denied the motion.  Although

22  it concluded Sheppard Mullin had carried its burden of showing the anti-SLAPP statute applied to

23  U.S. Fire's lawsuit, it determined that U.S. Fire had carried its burden of demonstrating a

24  "probability" of prevailing on the merits of its claim.  (*See*, Atkins-Pattenson Decl., Ex. B.)

25         On March 12, 2009, the First District Court of Appeal affirmed the denial of

26  Sheppard Mullin's motion, but on the ground the anti-SLAPP action did not apply.  (*See*, Atkins-

27  Pattenson Decl., Ex. C.)  Significantly, the Court of Appeal did not reach the issue of whether U.S.

28  Fire had, in fact, demonstrated a probability of prevailing.

APPLICATION FOR EMPLOYMENT OF
SHEPPARD MULLIN

1   Neither of these rulings represents a final determination of the merits of U.S. Fire's

2   claim.  And neither ties this Court's hands in ruling on Sheppard Mullin's Application in this

3   bankruptcy proceeding.  The trial court's ruling was a preliminary ruling that, for purposes of a

4   specialized motion under California state law, U.S. Fire had established a "probability" it might

5   prevail.  Obviously, this ruling is not binding upon this Court.  Nor even is it admissible "at any

6   later stage of the case, or in any subsequent action," including the present case.  (Cal. Civ. Proc.,

7   § 425.16(b)(3), italics added.)

8   Likewise, although the Court of Appeal affirmed the denial of Sheppard Mullin's

9   motion, it did so on technical grounds having nothing to do with the merits of U.S. Fire's

10  "conflicts" claim.  That issue remains open for this Court's determination without regard to the

11  state court proceeding.  And, in the end, the dispositive fact remains the same:  the bankruptcy

12  work Sheppard Mullin proposes to do for the Committee is in no sense "substantially related" to

13  the insurance work it did for U.S. Fire more than three years ago.

14  **C.      The Committee Is Seeking Counsel With Specialized Knowledge**

15  Finally, in considering U.S. Fire's objection, the Court should keep in mind that in

16  seeking to retain Sheppard Mullin, the Committee is seeking counsel with unique and specialized

17  knowledge.  Among other things, the Court must balance the risk of exposure of confidential

18  information against "the current client's right to counsel of its choosing."  (*Cobra Solutions, Inc.,*

19  *supra*, 38 Cal.4th at p. 846.)  "[D]isqualification imposes a substantial hardship on the disqualified

20  attorney's innocent client, who must bear the monetary and other costs of finding a replacement.

21  A client deprived of the attorney of his choice suffers a particularly heavy penalty where . . . his

22  attorney is highly skilled in the relevant area of the law.  (*Gregori v. Bank of America* (1989) 207

23  Cal.App.3d 291, 300; see also *Manning v. Waring*, *Cox, James, Sklar & Allen* (6th Cir. 1988)

24  849 F.2d 222, 224 ("Unquestionably, the ability to deny one's opponent the services of capable

25  counsel, is a potent weapon.").)

26  By objecting to this Application, U.S. Fire seeks to prevent the Committee from

27  retaining specialist counsel.  As elaborated in the declarations accompanying this Application,

28  Sheppard Mullin has been creditors committee counsel in two of the most successful asbestos

-18-

W02-WEST:FME\401548332.8

APPLICATION FOR EMPLOYMENT OF
SHEPPARD MULLIN

Case: 09-31347   Doc# 87   Filed: 05/29/09   Entered: 05/29/09 19:51:44   Page 19 of
22

bankruptcy cases on the West Coast. Indeed, it is the only available law firm in California with substantial experience representing creditors committees in complex asbestos bankruptcy cases. Sheppard Mullin has been very successful in working with two official committees in working out settlements in the context of a Section 524(g) Plan of Reorganization. There are no other such experienced counsel on the West Coast other than Mr. Benvenutti, who represents the Committee in Thorpe Insulation, and has been hired by the Debtor.

In addition to experience in former cases, Sheppard has had over two years of experience in the Plant matter. A Pre-Petition Committee was formed in 2006 and Sheppard was hired as its counsel. Sheppard has represented the Pre-Petition Committee giving it advice on bankruptcy matters and discovery matters that come up in Bankruptcy cases. This is all set forth in the Ahrens declaration. U.S. Fire has never made a motion to disqualify Sheppard from representing the witnesses in the case, nor have they filed a motion for a preliminary injunction to enjoin Sheppard's representation for over two years. They have not objected at depositions when Sheppard represented witnesses. To now say that new counsel must be hired by the Official Committee when Sheppard has over two and a half years of experience in the Plant case, and while the insurers retain their experienced counsel, would be extremely prejudicial.

Thus, the relief U.S. Fire seeks – preventing Sheppard Mullin from representing the Committee – would unquestionably "impose[] a substantial hardship on the disqualified attorney's innocent client." (*Gregori, supra*, 207 Cal.App.3d at p. 300) This Court must balance the supposed risk of disclosing confidential information against "the current client's right to counsel of its choosing." (*Cobra Solutions, Inc., supra*, 38 Cal.4th at p. 846.)

**D. U.S. Fire Waived Any Conflicts In Western, Demonstrating that there is no Substantial Relationship Between Bankruptcy Representation and Coverage Representation in Another Case**

As the Ahrens Declaration sets forth, Sheppard was hired to represent the Official Committee in Western Asbestos at a time when it was not known that U.S. Fire was involved in Western. When it was discovered that U.S. Fire was involved in Western, Sheppard sought a waiver from the Committee, and also from U.S. Fire. U.S. Fire and the Committee both waived so

W02-WEST:FME1\401548332.8

| | |
|---|---|
| 1 | that bankruptcy lawyers represented the Committee in Western, and insurance coverage lawyers at |
| 2 | Sheppard represented U. S. Fire in a non-bankruptcy state court coverage suit. If U.S. Fire felt |
| 3 | that the two matters were so related, and that there was a concern about confidential information, |
| 4 | they would not have given that waiver in 2002. In fact, there is no substantial relationship. |
| 5 | **E. U.S. Fire Belatedly Seeks Injunction in State Court** |
| 6 | While in court today Sheppard Mullin received in the matter of *United States Fire* |
| 7 | *Insurance Company v. Sheppard Mullin* a "Notice of Motion and Motion by Plaintiff United States |
| 8 | Fire Insurance Company for Preliminary Injunction against Defendant Sheppard Mullin, Richter |
| 9 | & Hampton" in which U.S. Fire seeks an injunction against Sheppard's representation of the |
| 10 | Committee in this bankruptcy case. Sheppard has reviewed the Memorandum of Points and |
| 11 | Authorities in support of such motion and believes that the points asserted therein are without |
| 12 | merit. Moreover, it is obviously up to this Court, not a state court, to determine whether Sheppard |
| 13 | is disinterested within the meaning of the Bankruptcy Code so that it can serve as counsel to the |
| 14 | Committee. |
| 15 | |
| 16 | WHEREFORE, the Committee prays that this Court enter an order authorizing the |
| 17 | employment of Sheppard Mullin as counsel to the Committee in this Bankruptcy Case. |
| 18 | Dated: May 29, 2009 |
| 19 | THE OFFICIAL COMMITTEE OF UNSECURED |
| 20 | CREDITORS |
| 21 | |
| 22 | By _____  */s/ Alan R. Brayton*  Alan R. Brayton |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

-20-

W02-WEST:EME\401548332.8

SUBMITTED BY:

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____ /s/ Michael H. Ahrens
                                MICHAEL H. AHRENS

Proposed Attorneys for Official
Committee of Unsecured Creditors

W02-WEST:FME401548332.8

APPLICATION FOR EMPLOYMENT OF
SHEPPARD MULLIN