

**Signed and Filed: August 04, 2009**

_____
**THOMAS E. CARLSON
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

```
In re                             )   Case No. 09-31347 TEC
                                  )
PLANT INSULATION COMPANY,         )   Chapter 11
                                  )
                                  )
                                  )
                                  )
                                  )
                 Debtor.          )
_____)
```

**MEMORANDUM RE APPOINTMENT OF COUNSEL FOR
OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

The official committee of unsecured creditors (the Committee) seeks to appoint Sheppard, Mullin, Richter & Hampton (Sheppard) as its counsel. Timely objection was filed by U.S. Fire Insurance Company (U.S. Fire), which issued liability policies to Debtor, and which is a defendant in a pending insurance coverage action brought by Debtor. U.S. Fire contends that Sheppard must be disqualified from representing the Committee, because the Committee will be involved in the pending coverage action, and because that action is substantially related to a previous coverage action in which Sheppard represented U.S. Fire. The court determines that Sheppard should not be disqualified, because the pending coverage action is

MEMORANDUM RE APPOINTMENT OF COUNSEL
FOR COMMITTEE OF UNSECURED CREDITORS     -1-

not substantially related to the action in which Sheppard represented U.S. Fire, and because the Committee is not a party to the pending coverage action. Because it is a close question whether the two coverage actions are substantially related, however, the court appoints Sheppard upon the condition that Sheppard not represent the Committee with respect to any matters directly related to the pending coverage claims against U.S. Fire.

**FACTS**

Plant Insulation Company (Plant) sold, installed, and removed asbestos products. From 1978 through the petition date, Plant was sued by thousands of claimants for bodily injury and wrongful death, and tendered those suits to its primary insurers. The insurers, claiming exhaustion of the policies, accepted tender and defended numerous asbestos claims under a reservation of rights. In January 2006, Plant filed an insurance coverage action entitled *Plant Insulation Co. v. Fireman's Fund Ins. Co., et al.*, S.F. Sup. Ct. No. CGC-06-448618 (the Plant Coverage Action). U.S. Fire is a defendant in the Plant Coverage Action.

Plant filed for chapter 11 bankruptcy relief on May 20, 2009. On May 29, 2009, the United States Trustee appointed Paul McKenzie, Joe Radley, Karen Garner, Linda Seiler, and Richard Parker to the Official Committee of Unsecured Creditors (the Committee). Each member of the Committee asserts an asbestos bodily injury claim against Debtor, and each is represented by counsel.

**1. The Committee's Application to Employ Sheppard**

On May 29, 2009, the Committee filed an application (the Application) to employ Sheppard as its counsel. The Application provides that Sheppard is to perform the following

services for the Committee: (1) advise regarding bankruptcy law; (2) advise with respect to the Committee's powers and duties in Debtor's bankruptcy case; (3) attend Committee meetings; (4) review Debtor's financial information; (5) confer with Debtor; (6) assist in the investigation of Debtor's acts, conduct, assets, liabilities, and financial condition; (7) represent the Committee in all negotiations with Debtor and other parties-in-interest; (8) represent the Committee in proceedings before this court and any other court where Debtor's rights under the Bankruptcy Code may be affected; (9) advise the Committee regarding Bankruptcy Code requirements; and (10) advise the Committee regarding any chapter 11 plan.

The Application discloses that Sheppard: (a) represented both the pre-petition and the official creditors committee in the Western Asbestos chapter 11 bankruptcy cases; (b) represented the official creditors committee in the J.T. Thorpe asbestos bankruptcy case; (c) represented the informal, pre-petition asbestos creditors committee of Plant;[1] (d) represented witnesses in discovery proceedings in the Plant Coverage Action; and (e) represented U.S. Fire in the matter of *Kelly-Moore Paint Co., Inc. v. Continental Ins. Co., et al.*, San Francisco Sup. Ct. No. 325147 (the Kelly Moore Coverage Action).[2]

---

[1] The three members of the pre-petition committee are Alan Brayton of Brayton Purcell, David McClain of Kazan, McClain, Lyons, Greenwood & Harley, P.C., and Jerry Neil Paul, of Paul & Hanley. Opp. of Informal Asbestos Creditors' Committee to Debtor's Emergency Motion to Modify Automatic Stay at 5:17-19.

[2] In June 2003, Sheppard learned that U.S. Fire was one of the insurers objecting to confirmation of the plan filed in the Western Asbestos bankruptcy cases. Philip Atkins-Pattenson, who led the Sheppard team in the Kelly Moore Coverage Action, disclosed the firm's representation in the Western bankruptcy case to U.S. Fire,

**MEMORANDUM RE APPOINTMENT OF COUNSEL**
**FOR COMMITTEE OF UNSECURED CREDITORS** -3-

The Application states that Sheppard does not presently represent any of the insurers who are defendants in the Plant Coverage Action. Michael Ahrens, a partner at Sheppard who specializes in bankruptcy law,[3] would serve as lead counsel for the Committee. Supp. Ahrens Decl., ¶ 5. Sheppard expressly agrees that the court may approve the Application subject to the condition that Sheppard not advise the Committee on any matters of insurance coverage. Id.

**2. U.S. Fire's Objection to the Retention of Sheppard as Committee Counsel**

On June 1, 2009, U.S. Fire filed an objection to the Application.[4] U.S. Fire contends that Sheppard has a disqualifying conflict of interest under California law arising out of Sheppard's former representation of U.S. Fire in the Kelly Moore Coverage Action.

**a. The Kelly Moore Coverage Action**

U.S. Fire issued two primary liability policies to Kelly Moore covering January 15, 1971 to January 15, 1973, and a primary policy binder (the Binder) covering January 15, 1973 to February 15, 1973. Supp. Tabb Decl., ¶ 12. Each of the primary policies

---

and was advised that U.S. Fire had no objection to Sheppard's continued representation of the Western Committee or Sheppard's continued representation of U.S. Fire in the Kelly Moore Coverage Action. In June 2003, Sheppard established an ethical wall so that Sheppard counsel working on the Kelly Moore Coverage Action would not work on the Western bankruptcy case or have any access to files or confidential information in that case, and vice versa. (Application at 7:1-15).

[3] Mr. Ahrens does not have any experience advising clients on questions of insurance law. Supp. Ahrens Decl., ¶ 5.

[4] The objection is supported by the declaration of Lawrence A. Tabb, partner in the law firm of Musick, Peeler & Garrett, LLP. The Musick firm represents U.S. Fire in the Plant bankruptcy case.

**MEMORANDUM RE APPOINTMENT OF COUNSEL
FOR COMMITTEE OF UNSECURED CREDITORS** -4-

has a limit of $500,000 for each bodily injury claim arising under the products hazard clause. 1st Atkins Decl., ¶ 12(a).[5]

In October 2001, Kelly Moore, a former manufacturer of products containing asbestos, sued U.S. Fire and other insurers. The issues involved in that action include: whether U.S. Fire properly exhausted the limits of the Binder; whether the Binder was a validly issued contract; whether the Binder had a limit of liability separate from the $500,000 per-occurrence limit under the primary policy; the amount of defense expenses owed by U.S. Fire to Kelly Moore for the period covered by the Binder; whether a settlement agreement between Kelly Moore and U.S. Fire from the mid-1970s concerning "Kel-Tex" claims had released all coverage under the Binder and the two primary policies; and allocation of defense costs among Kelly Moore's primary and excess insurance policies. Goodwin Decl., ¶ 16.

Sonnenschein, Nath & Rosenthal and Luce, Forward, Hamilton & Scripps initially represented U.S. Fire in the Kelly Moore Coverage Action. 1st Atkins Decl., ¶ 6. Riverstone Claims Management, LLC (Riverstone) served as a third party administrator for U.S. Fire with respect to the claims involved in the Kelly Moore Coverage Action. Id., ¶ 5. In late May 2003, Riverstone asked Sheppared to take over as counsel for U.S. Fire. Id., ¶ 4. Sheppard served as lead counsel for U.S. Fire until it was replaced in March 2006. Id., ¶ 6. Philip Atkins-Pattenson served as lead counsel for Sheppard.

---

[5] Neither party introduced the primary policies into evidence. The one-page Binder is attached as Exhibit 1 to the 1st Tabb Decl. (docket no. 94).

**MEMORANDUM RE APPOINTMENT OF COUNSEL**
**FOR COMMITTEE OF UNSECURED CREDITORS** -5-

Patricia Noll, presently the Vice President of Claims for U.S. Fire, states that Sheppard: (a) directed U.S. Fire's defense of the Kelly Moore Coverage Action; (b) analyzed insurance coverage issues in the context of asbestos-related bodily injury claims; (c) consulted with U.S. Fire personnel; (d) reviewed U.S. Fire's internal documents; (e) prepared and represented current and former U.S. Fire employees in connection with depositions; (f) drafted discovery responses and dispositive motions; and (g) prepared liability and settlement evaluations concerning U.S. Fire's alleged asbestos-related coverage obligations. Noll Decl., ¶ 21. Ms. Noll also states that Mr. Atkins-Pattenson represented U.S. Fire at a mediation in May 2004, which was attended by "the Senior Vice President of Riverstone, the Vice President of Claims and the individual responsible for the day-to-day handling of the *Kelly-Moore* matter."[6] Id., ¶ 21(h). Ms. Noll also states more generally:

> U.S. Fire entrusted to Sheppard its confidential information consisting of, among other things, U.S. Fire's litigation strategies, its policies and procedures concerning interpretation of insurance policy terms relevant to asbestos related bodily injury claims and lawsuits, its settlement negotiation policies and strategies, and the identity of key U.S. Fire decision makers.

Noll Decl., ¶ 4.

Mr. Atkins-Pattenson paints a different picture of Sheppard's representation of U.S. Fire, and of the nature of the information Sheppard obtained. He states that he did not discuss general litigation strategies, policies, or procedures with anyone at Riverstone or U.S. Fire. Supp. Atkins Decl., ¶ 5. The information

---

[6] Ms. Noll does not state whether the Vice President of Claims and the individual responsible for the day-to-day handling of the Kelly Moore Coverage Action were Riverstone or U.S. Fire employees.

**MEMORANDUM RE APPOINTMENT OF COUNSEL**
**FOR COMMITTEE OF UNSECURED CREDITORS**   -6-

and guidance he received were limited to the discrete issues presented in the Kelly Moore Coverage Action, primarily whether the Binder was a valid insurance contract. Supp. Atkins Decl., ¶¶ 5-6. Mr. Atkins-Pattenson worked with Riverstone employees, not U.S. Fire employees, in the crafting of U.S. Fire's settlement position, and the representatives attending the mediation on behalf of U.S. Fire were Riverstone employees. Id., ¶ 7. The Riverstone personnel with whom Mr. Atkins-Pattenson worked have no role in the Plant Coverage Action, because Riverstone has been replaced as claims administrator by Crum & Forster. Id., ¶ 6. Mr. Atkins-Pattenson dealt primarily with Riverstone and had very little contact with U.S. Fire employees. The only occasion on which he recalls meeting with a U.S. Fire executive was one brief meeting with Ms. Noll, at which there was no discussion of U.S. Fire's general litigation strategies, policies or procedures, or the identity of the key U.S. Fire decision makers. Id., ¶ 9.

Sheppard was paid in excess of $2.9 million in the Kelly Moore Coverage Action. Noll Decl., ¶ 21. When Sheppard substituted out of that case in 2006, it turned over to successor counsel 260 boxes of documents that it had generated or received in connection with the litigation. Goodman Decl., ¶ 6.

**b. The Plant Coverage Action**

Industrial Indemnity issued to Plant primary liability insurance policies for four consecutive one-year periods starting on January 1, 1958. Those policies were assumed by U.S. Fire in 1994. Goodwin Decl., ¶ 2.

In January 2006, Plant filed the Plant Coverage Action, in which it sought declaratory relief against U.S. Fire and other

insurers.  The claims and defenses between Plant and U.S. Fire in that action principally concern whether Plant's asbestos liabilities are operations risks that are subject to a "per occurrence" liability limit under the Industrial Indemnity policies, and whether Plant lost coverage under theories of waiver, estoppel, laches, and unclean hands.  Goodwin Decl., ¶¶ 17, 23.

### c. Injunction Action Against Sheppard

In August 2007, U.S. Fire filed a complaint against Sheppard in San Francisco Superior Court to enjoin Sheppard from representing the informal committee of asbestos creditors of Plant. *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton,* Case No. CGC-07-466772 (the Injunction Action).

Sheppard filed a motion to strike the complaint under the California anti-SLAPP statute.  The trial court found that the Injunction Action interfered with Sheppard's right to petition, but denied the motion to strike on the basis that U.S. Fire showed a probability of success on the merits of its claim.  The California Court of Appeal held that the Injunction Action did not involve protected activity, and expressly declined to address whether U.S. Fire had showed a likelihood of prevailing on the merits of its claim.  <u>U.S. Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton</u>, 171 Cal. App. 4th 1617 (2009).

### 3. Hearings on Sheppard's Application for Employment

This court held two hearings regarding the Sheppard Application.  At the first hearing, held on June 1, 2009, the court denied the Application on an interim basis, noting that the question presented was a very close one, noting that the court had insufficient time to study the matter, and noting that Sheppard had

little time to reply to U.S. Fire's objection to the Application. The court stated in substance, "I cannot grant the Application at this time." The court granted Sheppard's request for permission to file a supplemental reply to U.S. Fire's objection, but stated that it intended to style Sheppard's supplemental papers as a motion for reconsideration, and that the court would not require U.S. Fire to respond to Sheppard's supplemental papers if those papers did not cause the court to question its interim decision. At a status conference on June 15, 2009, the court directed U.S. Fire to respond to Sheppard's supplemental papers, and stated that the court would consider the propriety of Sheppard's appointment *de novo* at a second hearing.

**GOVERNING LAW**

An attorney may not, "without the informed written consent of the . . . former client, accept employment adverse to the . . . former client where, by reason of the representation of the . . . former client, the member has obtained confidential information material to the employment." Cal. R. Prof. Conduct 3-310(E).

In a successive-representation situation, a client may disqualify its former counsel from the current representation if the client demonstrates a "substantial relationship" between the prior representation and the current representation. Jessen v. Hartford Cas. Ins. Co., 111 Cal. App. 4th 698, 705 (2003). The party seeking disqualification bears the burden of proving grounds for disqualification. Faughn v. Perez, 145 Cal. App. 4th 592, 596 (2006).

Under California law, the second representation is considered to be "substantially related to the prior representation"

> when the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues.

Jessen, 111 Cal. App. 4th at 712-13. This definition tracks that of the Restatement (Third) of Law Governing Lawyers, which provides that the current representation is "substantially related" to the prior representation if

> (1) the present representation 'involves the work the lawyer performed' during the prior representation, or (2) 'there is a substantial risk that [the present representation] will involve the use of confidential information acquired in the course of [the prior representation], unless that information has become generally known.'

Farris v. Fireman's Fund Ins. Co., 119 Cal. App. 4th 671, 680 (2004) (brackets and quotes in original).

There exists a "substantial risk" that the present representation will involve the use of information obtained in the prior representation "where it is reasonable to conclude that it would materially advance the [present] client's position in the subsequent matter to use confidential information obtained in the prior representation." Farris, 119 Cal. App. 4th at 681 (quoting Rest. 3d, Law Governing Lawyers, § 132, cmt. d(iii))(brackets in original).

When the prior client demonstrates a substantial relationship between prior and current representations, it is presumed that the attorney had access to confidential information during the first representation, and disqualification of the attorney from the second representation is mandatory. Jessen, 111 Cal. App. 4th at 706. When an attorney is disqualified from representing a party,

the attorney's entire firm must be disqualified, regardless of the firm's efforts to erect an ethical wall. <u>Hitachi, Ltd. v. Tatung Co.</u>, 419 F.Supp. 2d 1158, 1161-64 (N.D. Cal. 2006).

**APPLICATION OF LAW TO FACTS OF THE CASE**

The court determines that U.S. Fire has not met its burden of proving that there is a substantial relationship between Sheppard's representation of U.S. Fire in the Kelly Moore Coverage Action and its representation of the Committee in the Plant bankruptcy case. U.S. Fire has established that the Kelly Moore Coverage Action and the Plant Coverage Action involve the same general subject matter, *i.e.* insurance coverage disputes arising out of asbestos bodily injury claims. This factor, standing alone, is insufficient to require disqualification. <u>Faughn</u>, 145 Cal. App. 4th at 609-11. Consideration of the following four factors indicates that U.S. Fire has not established that there is a substantial risk that confidential information Sheppard obtained in the Kelly Moore Coverage Action could be used against it in the Plant Coverage Action or in the Plant chapter 11 case.

First, U.S. Fire failed to show that the same policy language was at issue in both the Kelly Moore and Plant Coverage Actions. U.S. Fire acknowledges that the policies involved in the two coverage actions were issued by different insurance carriers: Industrial Indemnity issued the Plant policies; U.S. Fire issued the Kelly Moore policies. Neither party introduced the relevant policies into evidence.

Second, the legal and factual issues involved in the Kelly Moore Coverage Action are different from the issues involved in the Plant Coverage Action. The Kelly Moore coverage dispute concerned

the effect of a Binder, the effect of a prior settlement agreement, exhaustion of policy limits, and allocation of defense costs among various policies. The Plant Coverage Action raises no significant issues concerning an insurance binder. The Plant Coverage Action does involve a settlement agreement, but U.S. Fire failed to show that the circumstances or language of the settlement agreements involved in the two coverage cases are similar. The exhaustion-of-coverage issues are clearly different in the two coverage actions, because the two actions concern different types of insureds. Kelly Moore was a manufacturer of asbestos products; Plant was an installer of asbestos products. U.S. Fire did not dispute Sheppard's assertion that under the governing insurance policies, the policy limits applicable to manufacturers are different from the policy limits applicable to distributors and installers.

Third, U.S. Fire has not established that Sheppard was exposed to U.S. Fire's "playbook" of policies and strategies regarding claims-handling, litigation, and settlement. Sheppard represented U.S. Fire in a single action, and during that representation, Sheppard attorneys dealt primarily with employees of Riverstone. Riverstone has since been replaced as U.S. Fire's third-party claims manager by Crum and Foster, with whom Sheppard attorneys have had no contact. The facts of the present case are quite different from the Farris case, in which the disqualified counsel had acted as coverage counsel for the insurer in 226 matters over a thirteen-year period, gave coverage and claims-handling advice to the insurer's decision-making employees, presented educational seminars to the insurer's employees regarding coverage disputes and bad-faith actions, and then sought to represent an insured in a

bad-faith action against the insurer.  <u>Farris</u>, 119 Cal. App. 4th at 620-22.

Fourth, even if the Kelly Moore Coverage Action were substantially related to the Plant Coverage Action, Sheppard does not represent any party in the Plant Coverage Action.  Debtor Plant is the plaintiff in that action; the Creditors Committee is not a party.  Debtor is represented in that action by Morgan, Lewis & Bockius and by Snyder, Miller & Orton.  The Plant Coverage Action is pending in state court, not in the bankruptcy court.

That the Committee is not a party to the Plant Coverage Action does not mean that the Committee could never have any role in that action.  Because Plant has filed a chapter 11 case, any proposed settlement of the coverage action would be subject to review by creditors.  11 U.S.C. § 363(b); Fed. R. Bankr. P. 9019.  The Committee would play a central role in reviewing any settlement recommended by the coverage counsel retained by Debtor.  If Sheppard were to represent the Committee in reviewing a settlement offer from U.S. Fire, such representation would be adverse to U.S. Fire, because the interest of the Committee is to secure the largest possible payment from U.S. Fire.  Because it is a close question whether the Plant Coverage Action is substantially related to the Kelly Moore Coverage Action, prudence dictates that Sheppard not be involved in the prosecution *or settlement* of the pending coverage claims against U.S. Fire.

Sheppard has suggested that they would be kept sufficiently separate from the Plant Coverage Action by agreeing not to advise the Committee regarding insurance matters.  This proposed limitation is not broad enough.  Sheppard must be barred from

**MEMORANDUM RE APPOINTMENT OF COUNSEL
FOR COMMITTEE OF UNSECURED CREDITORS** -13-

participating in all Committee proceedings concerning the coverage claims against U.S. Fire. To this end, Sheppard may not advise or represent the Committee in any activities and deliberations directly related to the pending coverage claims against U.S. Fire. Sheppard shall be excluded from all Committee deliberations regarding those claims, and Sheppard shall have no discussions regarding those claims with, or otherwise provide any information regarding those claims to, members of the Committee or their counsel, any separate counsel for the Committee, or any other party or their counsel in the Plant Coverage Action or this chapter 11 case.

The court determines that the limitation just described is the remedy most appropriate to the facts presented here, and is sufficient to keep Sheppard separate from the Plant Coverage Action and to ensure that there is no substantial risk that any confidential information Sheppard obtained in the Kelly Moore Coverage Action could be used to the detriment of U.S. Fire in the Plant Coverage Action or in the Plant chapter 11 case. See UMG Recordings, Inc. v. Myspace, Inc., 526 F.Supp. 2d 1046, 1061-65 (C.D.Cal. 2007) (disqualification not required where counsel agrees not to pursue "substantially related" claims against former client).

Other services that Sheppard might perform regarding the Plant Coverage Action present no possibility of the use of confidential information against U.S. Fire. Two types of disputes could arise. First, following settlement of the coverage claims against U.S. Fire, other insurers might object to confirmation of a Committee-supported plan containing a channeling injunction protecting U.S.

Fire. See 11 U.S.C. § 524(g). In such a dispute, Sheppard would be supporting the settlement sought by U.S. Fire and would therefore not be adverse to U.S. Fire. Second, U.S. Fire might object to settlement of coverage claims against other insurers or confirmation of a plan containing a channeling injunction protecting other insurers. In such a dispute, Sheppard would be adverse to U.S. Fire, but there would be no possibility that confidential information of U.S. Fire would be material to the dispute, because the propriety of the settlement or the channeling injunction protecting other insurers would turn upon whether the settlement paid by those other insurers was commensurate with the likely exposure of those other insurers.

**CONCLUSION**

The court determines that the Kelly Moore Coverage Action, in which Sheppard previously represented U.S. Fire, is not substantially related to the Plant Coverage Action. Because that determination presents such a close question, however, the court will appoint Sheppard to represent the Committee only upon the condition that Sheppard not represent the Committee on matters directly related to the resolution of the Plant coverage claims against U.S. Fire, including Committee deliberations concerning approval of any proposed settlement of those claims.[7]

**\*\*END OF MEMORANDUM\*\***

---

[7] The limitations to be imposed on Sheppard's scope of representation are set forth in more detail in the proposed order attached as Exhibit A. The court will not enter that order unless and until both the Committee and Shepard file statements stating that they wish to proceed with the appointment of Sheppard as counsel for the Committee under the terms provided in the proposed order. This memorandum should not be considered an order resolving the U.S. Fire objection. The court will enter a separate order after Sheppard and the Committee accept, or decline to accept, the conditions described in the attached proposed order.

**MEMORANDUM RE APPOINTMENT OF COUNSEL**
**FOR COMMITTEE OF UNSECURED CREDITORS**  -15-

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re | ) Case No. 09-31347 TEC |
| PLANT INSULATION COMPANY, | ) Chapter 11 |
| Debtor. | ) |

**[PROPOSED] ORDER APPOINTING COUNSEL FOR CREDITORS COMMITTEE**

Upon due consideration, and for the reasons stated in the accompanying memorandum decision, the court hereby approves the application of Sheppard, Mullin, Richter & Hampton LLP (Sheppard) to serve as counsel for the official committee of unsecured creditors (the Committee) on the terms and conditions specified in the application, except as provided in paragraphs (1)-(3) below.

(1) To the extent the Application sought such relief, the court does not at this time approve any hourly rates under 11 U.S.C. § 328.

(2) To the extent the Application sought such relief, the court does not at this time approve monthly payments to Sheppard under

-16-

<u>U.S. Trustee v. Knudsen Corp. (In re Knudsen Corp.)</u>, 84 B.R. 668 (9th Cir. BAP 1988).

(3) Sheppard's scope of employment as counsel for the Committee is limited as follows:

> (a) Sheppard shall not represent the Committee with respect to the claims asserted against U.S. Fire Insurance Company (U.S. Fire) in *Plant Insulation Co. v. Fireman's Fund Ins. Co. et al.*, S.F. Sup. Ct. No. CGC-06-448618 (the Coverage Claims), and shall not participate in any discussion with the Committee or the parties to that action or their counsel regarding the merits or settlement of the Coverage Claims.
>
> (b) Notwithstanding subparagraph (a), above, Sheppard may represent the Committee on all matters that may affect U.S. Fire, but that are not directly related to the resolution of the Coverage Claims.

**\*\*END OF [PROPOSED] ORDER\*\***

| | |
|---|---|
| 1 | **Court Service List** |
| 2 | |
| 3 | Pamela Phillips, Esq. |
|   | Howard Rice Nemerovski Canady Falk & Rabkin, P.C. |
| 4 | Three Embarcadero Center, 7th Floor |
|   | San Francisco, CA 9411-4024 |
| 5 | |
|   | Michael H. Ahrens, Esq. |
| 6 | Sheppard, Mullin, Richter and Hampton |
|   | 4 Embarcadero Center, 17th Floor |
| 7 | San Francisco, CA 94111 |
| 8 | Lawrence A. Tabb, Esq. |
|   | Musick, Peeler & Garrett LLP |
| 9 | One Wilshire Blvd., Suite 2000 |
|   | Los Angeles, CA 90017-3383 |
| 10 | |
|    | Minnie Loo, Esq. |
| 11 | Office of the U.S. Trustee |
|    | 235 Pine Street, 7th Floor |
| 12 | San Francisco, CA 94104-3484 |