1 | Michael H. Ahrens (CA Bar No. 44766)
Steven B. Sacks (CA Bar No. 98875)
2 | Michael M. Lauter (CA Bar No. 246048)
**SHEPPARD, MULLIN, RICHTER &**
3 | **HAMPTON LLP**
Four Embarcadero Center, 17th Floor
4 | San Francisco, California 94111
mahrens@sheppardmullin.com
5 | ssacks@sheppardmullin.com
Telephone: (415) 434-9100
6 | Facsimile: (415) 434-3947
**Counsel to Official Committee of Unsecured**
7 | **Creditors, Proponent of the Plan**

Peter J. Benvenutti (CA Bar No. 60566)
Ryan T. Routh (admitted *pro hac vice*)
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
pjbenvenutti@jonesday.com
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
**Counsel to Plant Insulation Company,**
**Debtor, Proponent of the Plan**

8 | Gary S. Fergus (CA Bar No. 95318)
**FERGUS, A LAW OFFICE**
9 | 595 Market St., Suite 2430
San Francisco, California 94105
10 | gfergus@ferguslegal.com
Telephone: (415) 537-9030
11 | Facsimile: (415) 537-9038
**Counsel to Futures Representative,**
12 | **Proponent of the Plan**

Peter Van N. Lockwood (DC Bar No. 086447)
**CAPLIN & DRYSDALE, CHARTERED**
1 Thomas Circle N.W.
Washington, D.C. 20005
pvnl@capdale.com
Telephone: (202) 862-5000
Facsimile: (202) 429-3301
**Counsel to Official Committee of Unsecured**
**Creditors, Proponent of the Plan**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re** | **CASE NO. 09-31347 TC** |
| **PLANT INSULATION COMPANY, a California corporation,** | **Chapter 11** |
| **Debtor.** | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CERTAIN INSURERS' MOTION FOR SUMMARY JUDGMENT (CONTRIBUTION ISSUES)** |
| **Tax ID: 94-0292481** | **Hearing**<br>Time: July 15, 2011<br>Date: 9:30 a.m. PDT<br>Place: 235 Pine St., 23rd Floor<br>San Francisco, CA<br>Judge: Honorable Thomas E. Carlson |

No. 09-31347-TC

OPPOSITION TO INSURERS' MTN
FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.   Introduction ................................................................................................. 1

II.  Legal and Factual Background ...................................................................... 3

     A.   The Elements of a California Equitable Contribution Cause of Action ................ 3

     B.   No Insurer Has a Final Judgment Establishing Contribution Rights; Their
          Contribution Causes of Action Are Unvested, Inchoate and Speculative ............. 5

     C.   The Plan Would Enjoin the Prosecution of Contribution Claims Against
          Settling Asbestos Insurers ...................................................................... 6

     D.   Plant Has Operated Throughout This Case Under the Oversight of the
          Bankruptcy Court and With the Participation of the Moving Insurers .................. 7

III. Argument ..................................................................................................... 8

     A.   Section 524(g) Authorizes the Injunction of Contribution Claims of Non-
          Settling Asbestos Insurers ...................................................................... 8

          1.   Statutory Analysis Makes Clear that the Settling Asbestos Insurer
               Injunction Proposed in the Plan is Appropriate ....................................... 8

               (a)   Section 524(g)(1)(B) ................................................................. 8

               (b)   Section 524(g)(4)(A)(ii) ............................................................ 10

               (c)   The Moving Insurers' Interpretation Would Render
                     Statutory Language Meaningless ................................................ 10

          2.   Case Law Supports the Conclusion That Section 524(g) Authorizes
               Injunctions Barring Contribution Actions ............................................. 12

          3.   The Moving Insurers Misstate Section 524(g)'s Standards ....................... 14

     B.   The Fifth Amendment's Takings Clause Does Not Prohibit Enjoining the
          Contribution Claims of Non-Settling Asbestos Insurers .................................. 16

          1.   The Settling Asbestos Insurer Injunction Does Not Violate the
               Takings Clause .............................................................................. 16

               (a)   Causes of Action, Like the Contribution Claims Here, are
                     Not Protectable Property Interests Under Takings Clause
                     Jurisprudence ....................................................................... 17

               (b)   Neither the Takings Clause nor Section 524(g) Requires
                     "Full" (or Any Other) Compensation to the Moving
                     Insurers, and the Injunctive Relief Authorized by Section
                     524(g) is Just ........................................................................ 22

          2.   The System Envisioned by the Plan is Constitutional .............................. 24

IV.  CONCLUSION .............................................................................................. 26

# <u>TABLE OF AUTHORITIES</u>

**Page**

**CASES**

*Aerojet Gen. Corp. v. Transport Indem. Co.*,
   948 P.2d 909 (Cal. 1997) ........................................................................ 3

*Am. Auto. Ins. Co. v. Seaboard Sur. Co.*,
   318 P.2d 84 (Cal. 1957) .......................................................................... 3

*Am. Pelagic Fishing Co., L.P. v. United States*,
   379 F.3d 1363 (Fed. Cir. 2004) ............................................................ 17

*Armstrong World Indus., Inc. v. Aetna Cas. & Surety Co.*,
   52 Cal. Rptr. 2d 690 (Cal. Ct. App. 1996) ........................................... 23

*Azarte v. Ashcroft*,
   394 F.3d 1278 (9th Cir. 2005) ............................................................... 10

*Bailey v. United States*,
   53 Fed. Cl. 251 (Fed. Cl. 2002) ............................................................ 17

*Bair v. United States*,
   515 F.3d 1323 (Fed. Cir. 2008) ............................................................ 17

*Branch v. U.S.*,
   69 F.3d 1571 (Fed. Cir. 1995) .............................................................. 18

*Burns v. Pa. Dep't of Corr.*,
   544 F.3d 279 (3d Cir. 2008) ........................................................... 17, 18

*Burton v. Am. Cyanamid Co.*,
   -- F. Supp. 2d --, 2011 WL 1238905 (E.D. Wis. Apr. 5, 2011) ........... 25

*Cahill v. San Diego Gas & Electric Co.*,
   124 Cal. Rptr. 3d 78 (Cal. Ct. App. 2011) ........................................... 24

*Centennial Ins. Co. v. United States Fire Ins. Co.*,
   105 Cal. Rptr. 2d 559 (Cal. Ct. App. 2001) ........................................... 4

*City of Emeryville v. Robinson*,
   621 F.3d 1251 (9th Cir. 2010) ............................................................... 25

*City of Los Angeles v. U.S. Dep't of Commerce*,
   307 F.3d 859 (9th Cir. 2002) .......................................................... 11, 12

*Dames & Moore v. Regan*,
   453 U.S. 654 (1981) .............................................................................. 17

Case: 09-31347   Doc# 1282   Filed: 07/01/11   Entered: 07/01/11 14:33:57   Page 3 of
32

*E. Enters. v. Apfel*,
    524 U.S. 498 (1998) ........................................................................... 18

*Fireman's Fund Ins. Co. v. Md. Cas. Co.*,
    77 Cal. Rptr. 2d 296 (Cal. Ct. App. 1998) ...................................... 4, 9

*Gackstetter v. Frawley*,
    38 Cal. Rptr. 3d 333 (Cal. Ct. App. 2006) ........................................ 24

*Gospel Missions of Am. v. City of L.A.*,
    328 F.3d 548 (9th Cir. 2003) ............................................................... 3

*Grimesy v. Huff*,
    876 F.2d 738 (9th Cir. 1989) ............................................................. 18

*Hammond v. United States*,
    786 F.2d 8 (1st Cir. 1986) ................................................................. 18

*Hartford Accident & Indem. Co. v. Superior Court*,
    34 Cal. Rptr. 2d 520 (Cal. Ct. App. 1994) .......................................... 3

*Hartford Cas. Ins. Co. v. Travelers Indem. Co.*,
    2 Cal. Rptr. 3d 18 (Cal. Ct. App. 2003) ............................................ 11

*Ileto v. Glock, Inc.*,
    565 F.3d 1126 (9th Cir. 2009) ........................................................... 19

*In re A.H. Robins Co.*,
    880 F.2d 694 (4th Cir. 1989) ............................................................. 21

*In re ABC-Naco, Inc.*,
    331 B.R. 773 (Bankr. N.D. Ill. 2005) ................................................ 18

*In re Aircrash in Bali, Indonesia on April 22, 1974*,
    674 F.2d 1301 (9th Cir. 1982) ........................................................... 19

*In re Consolidated U.S. Atmospheric Testing Litigation*,
    820 F.2d 982 (9th Cir. 1987) ............................................................. 18

*In re Continental Airlines*,
    203 F.3d 203 ...................................................................................... 21

*In re Dow Corning Corp.*,
    280 F.3d 648 (6th Cir. 2002) ............................................................. 21

*In re Nat'l Sec. Telecomm. Records Litig.*,
    No. 06-1791, 2009 WL 2245693 (N.D. Cal. Jul. 27, 2009) ................ 18

*In re Western Asbestos Co.*,
    313 B.R. 832 (Bankr. N.D. Cal. 2003) ........................................ passim

OPPOSITION TO INSURERS'
MTN FOR SUMMARY JUDGMENT

*In re Weyerhaeuser Timber Co.,*
332 P.2d 947 (Wash. 1958)............................................................................. 11

*Int'l Milling Co. v. United States,*
27 F. Supp. 592 (Ct. Cl. 1939)........................................................................ 11

*Kokoszka v. Belford,*
417 U.S. 642 (1974)........................................................................................ 10

*Louisville Joint Stock Land Bank v. Radford,*
295 U.S. 555 (1935)........................................................................................ 20

*McCullough v. Virginia,*
172 U.S. 102 (1898).................................................................................. 17, 18

*Md. Cas. Co. v. Nationwide Mut. Ins. Co.,*
97 Cal. Rptr. 2d 374 (Cal. Ct. App. 2000)....................................................... 4

*Montrose Chem. Corp. v. Admiral Ins. Co.,*
913 P.2d 878 (Cal. 1995)................................................................................. 3

*Phoenix Leasing Inc. v. Sure Broad., Inc.*
843 F. Supp. 1379 (D. Nev. 1994).................................................................. 11

*Reliance Nat'l Indem. Co. v. Gen. Star Indem. Co.*
85 Cal. Rptr. 2d 627 (Cal. Ct. App. 1999)........................................................ 4

*S.D. Meyers, Inc. v. City of San Francisco,*
336 F.2d 1174 (9th Cir. 2003)........................................................................ 13

*Safeco Ins. Co. of Am. v. Superior Court,*
44 Cal. Rptr. 3d 841 (Cal. Ct. App. 2006)..................................................... 3, 4

*Scottsdale Ins. Co. v. Century Sur. Co.,*
105 Cal. Rptr. 3d 896 (Cal. Ct. App. 2010)...................................................... 4

*Signal Cos., Inc. v. Harbor Ins. Co.,*
612 P.2d 889 (Cal. 1980)................................................................................. 3

*Sowell v. Am. Cyanamid Co.,*
888 F.2d 802 (11th Cir. 1989)........................................................................ 18

*Troyer v. Adams,*
77 P.3d 83 (Haw. 2003).................................................................................. 25

*TRW Inc. v. Andrews,*
534 U.S. 19 (2001).......................................................................................... 12

OPPOSITION TO INSURERS'
MTN FOR SUMMARY JUDGMENT

Case: 09-31347   Doc# 1282   Filed: 07/01/11   Entered: 07/01/11 14:33:57   Page 5 of
32

**STATUTES**

11 U.S.C. § 524(g) ................................................................................................. passim

11 U.S.C. § 105(a) ........................................................................................................ 16

§ 1129(a)(7) of the Bankruptcy Code ........................................................................... 16

CAL. INS. CODE § 11580(b)(1) ...................................................................................... 23

California Civil Code §§ 877 and 877.6 ........................................................................ 24

**OTHER AUTHORITIES**

HON. H. WALTER CROSKEY ET AL., CALIFORNIA PRACTICE GUIDE: INSURANCE LITIGATION
(hereafter "CROSKEY"), Chapter 8-B ¶ 8:66.................................................... passim

United States Constitution, Fifth Amendment ...................................................... passim

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    Introduction[1]

The Insurer Motion should be denied because the assertions made by the Moving Insurers are not supported either by the text of the relevant statute nor by settled constitutional jurisprudence.  This Court should therefore conclude, as a matter of law, that:

(1)    Section 524(g) authorizes the Court to enjoin existing or future actions ("Contribution Actions") asserting equitable contribution claims by Non-Settling Asbestos Insurers against Settling Asbestos Insurers ("Contribution Claims") without providing compensation to the enjoined insurers; and

(2)    Such an injunction does not violate the Fifth Amendment's Takings Clause.

First, as the Moving Insurers admit, the plain language of § 524(g) authorizes the issuance of injunctions prohibiting insurers that choose to litigate rather than settle from pursuing Contribution Claims against insurers that choose to settle.  Contrary to the Moving Insurers' position, the statute does not require Contribution Claims nonetheless to be paid or satisfied.  The statutory language demonstrates instead that Congress intended that certain enumerated categories of parties, expressly including a debtor's settling insurers, be afforded the fullest protection known to the law, in exchange for the settling parties' participation in the funding of the debtor's § 524(g) trust.  And the only court to have directly considered this issue has concurred that contribution claims against settling insurers can be enjoined without compensation under the express language of the statute.[2]  By contrast, the Moving Insurers' interpretation of the statute violates canons of statutory construction in that it would render the statute internally inconsistent and would make meaningless important portions of subsection 524(g)(1)(B).

Second, the Settling Asbestos Insurer Injunction raises no constitutional issues because Fifth Amendment Takings Clause protections do not protect a mere cause of action until it is reduced to a final, unreviewable judgment.  Recent and unambiguous Ninth Circuit precedent confirms this point.  The Moving Insurers admit that they do not have any final judgments

---

[1] Capitalized terms not defined herein have the meaning given to them in the Plan Proponents' Opposition to Certain Insurers' Motion for Summary Judgment (Contribution Issues).  To the extent otherwise undefined, the terms have the meanings given to them in the Second Amended Plan of Reorganization of Plant Insulation Company (Docket No. 1155) (filed May 2, 2011).

[2] *In re Western Asbestos Co.*, 313 B.R. 832 (Bankr. N.D. Cal. 2003) (hereafter "*Western*").

OPPOSITION TO INSURERS'
MTN FOR SUMMARY JUDGMENT
No. 09-31347-TC

1  entitling them to contribution. They have, or claim to have, only causes of action, some of which

2  have been sued upon and some of which have not. The Moving Insurers will need to go to trial in

3  state court to prove those claims before they can be reduced to judgment. At this time, a

4  significant number of essential factual elements that the Moving Insurers must establish to obtain

5  such judgments are unproven — some are even <u>denied</u> by them.

6      The Moving Insurers ignore the special circumstances that led to the enactment of § 524(g)

7  — and the special rights it affords debtors seeking the creation of a § 524(g) trust and the

8  issuance of a related injunction. In enacting § 524(g), Congress sought to achieve a number of

9  goals, including providing a non-litigious means to settle asbestos personal injury claims (thereby

10  alleviating some of the burdens on the tort system) and a means to marshal a debtor's assets —

11  including insurance assets — to address needs of injured plaintiffs.

12      Through § 524(g), Congress provided federal courts with an explicit statutory basis for the

13  issuance of injunctions to prevent claims from being asserted by one non-debtor against another

14  that would otherwise threaten the debtor's ability to resolve its asbestos liabilities and the ability

15  of claimants to receive just compensation for their asbestos injuries. The availability of such

16  injunctions was expected to be highly attractive to insurers and other third parties named in the

17  statute, thus promoting settlement. Bankruptcy courts monitor and ensure the fairness of

18  settlements entered into by the debtor and its asbestos creditors, through consideration of

19  settlement agreement approval or assumption motions brought during the case or in connection

20  with the confirmation of a plan. It is fair and appropriate to afford injunctions under § 524(g) to

21  insurers who settle; indeed, such protection is analogous to "good faith settlement" regimens in

22  place under state laws that – without creating Constitutional concerns – extinguish contribution

23  claims among joint tortfeasors when one reasonably settles with a tort victim.

24      In sum, the Moving Insurers have failed to establish that their proposed parsing of § 524(g)

25  is plausible in light of the far superior alternative construction proposed herein and have failed to

26  offer proof (because there is none) that their Contribution Actions have matured into judgments

27  that constitute a protectable property interest under the Takings Clause.

28      The issues presented by the Motion are legal in nature. No relevant issue of material fact

Case: 09-31347   Doc# 1282   Filed: 07/01/11   Entered: 07/01/11 14:33:57   Page 8 of
32

is in dispute.  Accordingly, the Proponents submit that both the statutory and constitutional issues are ripe for decision in favor of the Proponents now, so as to limit the issues that need to be addressed by the Court at the Confirmation Hearing.[3]

## II. Legal and Factual Background

### A. The Elements of a California Equitable Contribution Cause of Action

Under California law, contribution claims among insurers are not created by statute or contract but are judge-made and based upon equitable considerations (and thus denominated claims for "equitable contribution").  An equitable contribution cause of action arises when an insured's liability is covered by two or more insurance policies.[4]  In that situation, an insurer that believes it paid more than its share in defense costs or indemnity expenses can sue other responsible insurers to seek an adjudication of the equitable allocation of the insurers' relative responsibility for the loss, even if the other responsible insurers have settled in good faith with the insured.[5]  Claims between insurers are equitable and not contractual because the contracts (*i.e.*, the insurance policies) are between the insured and each insurer, not between insurers.[6]

Equitable contribution rights are enforced by litigation among insurers.  An insurer that pays to settle a covered claim "may seek equitable contribution from co-insurers sharing the same level of liability on the same risk as to the same insured, who refused to settle or defend the claim."[7]  The requirement that an insurer seeking equitable contribution from another insurer

---

[3] *See Gospel Missions of Am. v. City of Los Angeles,* 328 F.3d 548, 553 (9th Cir. 2003) (in the absence of a cross-motion, "a district court may enter summary judgment sua sponte against a moving party if the losing party has had a full and fair opportunity to ventilate the issues involved in the matter") (quotations omitted).

[4] *See Montrose Chem. Corp. v. Admiral Ins. Co.*, 913 P.2d 878, 902 (Cal. 1995).

[5] *Safeco Ins. Co. of Am. v. Superior Court*, 44 Cal. Rptr. 3d 841, 844 (Cal. Ct. App. 2006); *Hartford Accident & Indem. Co. v. Superior Court*, 34 Cal. Rptr. 2d 520, 522-23 (Cal. Ct. App. 1994) (protective cloak of § 877.6 does not protect settling insurers against contribution claims against other insurers).

[6] *Aerojet Gen. Corp. v. Transport Indem. Co.*, 948 P.2d 909, 930 (Cal. 1997) ("Equitable contribution applies *only* between insurers and only in the absence of contract . . .") (citations omitted); *Signal Cos., Inc. v. Harbor Ins. Co.*, 612 P.2d 889, 895 (Cal. 1980) ("The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other. . . .") (quoting *Am. Auto. Ins. Co. v. Seaboard Sur. Co.*, 318 P.2d 84, 86 (Cal. 1957)).

[7] HON. H. WALTER CROSKEY ET AL., CALIFORNIA PRACTICE GUIDE: INSURANCE LITIGATION

Case: 09-31347   Doc# 1282   Filed: 07/01/11   Entered: 07/01/11 14:33:57   Page 9 of 32

must share the "same level of liability" means that primary insurers can only obtain contribution from other primary insurers and excess insurers can only obtain contribution from other excess insurers at the same excess level of coverage.[8]  Equitable contribution exists only in favor of an insurer when its policy <u>actually covers</u> a risk and another insurer's policy also <u>actually covers</u> that same risk.[9]  The absence of coverage, or a valid coverage defense against the insured, is a defense against a co-insurer in an equitable contribution action: if there is no right to coverage, the nonpaying insurer is not liable and there is no right to contribution.[10,11]

When a right to equitable contribution is established, the court's award is not determined by a mechanically-applied formula.  Instead, the court may consider a broad range of factors, including the policy limits of each insurer, each insurer's "time on the risk" and other factors.[12]  Unless it is judicially determined that an insurer has paid more than its "fair share" as an equitable matter, that insurer has no right to contribution.[13]

_____

(continued…)

(hereafter "CROSKEY"), Ch. 8-B ¶ 8:66 (citing *Md. Cas. Co. v. Nationwide Mut. Ins. Co.*, 97 Cal. Rptr. 2d 374, 377-78 (Cal. Ct. App. 2000); *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 77 Cal. Rptr. 2d 296, 303-04 (Cal. Ct. App. 1998)).

[8] *Reliance Nat'l Indem. Co. v. Gen. Star Indem. Co.* 85 Cal. Rptr. 2d 627, 634-36 (Cal. Ct. App. 1999) ("there is no contribution between a primary and an excess carrier"); *Fireman's Fund*, 77 Cal. Rptr. at 307 ("contribution is only available in cases where there are coinsurers who share the same level of obligation on the same risk").

[9] *See Safeco*, 44 Cal. Rptr. at 843-46 (nonsettling insurer not required to contribute if it can establish that there was no coverage under its policy).

[10] *Id.*; *see also* CROSKEY ¶ 8:72 ("Absence of actual coverage under the nonsettling coinsurer's policy is clearly an affirmative defense to equitable contribution.") (citing *Safeco*).

[11] Insurers who have in fact exhausted the limits of their policy, or whose policies do not cover a particular lawsuit, are not required to defend a lawsuit or pay indemnity on account of it. Sometimes insurers choose to defend and settle claims, even where the insurers assert there is no coverage, asserting a reservation of rights to try to recoup some payments from the insured if and when the coverage obligation is later determined in their favor.  This is what the Moving Insurers are trying to do here.  *See, e.g.,* Proof of Claim No. 49 filed by Fireman's Fund Insurance Company and American Automobile Insurance Company (the "<u>FF Claim</u>") (filed Oct. 13, 2009), ¶ 7 and Exhibit F (asserting reservation of rights and attaching reservation of rights letters).

[12] CROSKEY ¶ 8:67; *Centennial Ins. Co. v. U.S. Fire Ins. Co.*, 105 Cal. Rptr. 2d 559, 561-62 (Cal. Ct. App. 2001) (affirming allocation of insurer contributions based on their respective time on the risk).

[13] *Scottsdale Ins. Co. v. Century Sur. Co.*, 105 Cal. Rptr. 3d 896, 906 (Cal. Ct. App. 2010) ("An insurer can recover equitable contribution only when that insurer has paid more than its fair share"); *see also* CROSKEY ¶ 8:67.19.

OPPOSITION TO INSURERS'
MTN FOR SUMMARY JUDGMENT

In short, an insurer seeking to prevail against another insurer bears a significant burden of proof on a number of discrete elements, including: that the insurer paid on a claim, that its policy actually covered the claim on which it paid, that another insurer's policy actually covered the same claim, that the other insurer did not pay, that both insurers were at the same level and that equitable factors make an award of contribution appropriate.

**B.    No Insurer Has a Final Judgment Establishing Contribution Rights; Their Contribution Causes of Action Are Unvested, Inchoate and Speculative.**

No Moving Insurer holds a judgment that establishes an entitlement to a Contribution Claim. There is, of course, a <u>potential</u> that a Moving Insurer will be able, in the distant future, to meet its substantial burdens to obtain a judgment for contribution against a Settling Asbestos Insurer. At present, however, this is a mere possibility, as none of the Moving Insurers have proven sufficient facts to give rise to a judgment on a Contribution Claim.[14]

In January 2006, Plant commenced the Declaratory Relief Action in the Superior Court and tendered several thousand asbestos claims to its insurers for defense and indemnity.[15] Plant tendered other asbestos claims thereafter as they were filed, up to May 2009 when Plant filed its chapter 11 case and the automatic stay prevented further claims. Plant's primary insurers provided defense and indemnity under reservation of rights; they assert contribution rights with respect to payments they have made since the January 2006 tender and that they might make in

---

[14] The cross-complaints the Moving Insurers have filed demonstrate that they believe that a "determination is necessary" regarding "their respective rights and duties under their respective policies" before their Contribution Claims can be determined, and that they only seek a declaration that they have Contribution Claims "if it is determined that [the Moving Insurer] owes any defense or indemnity." *See* Declaration of Phillip A. O'Connell, Jr. In Support of OneBeacon Insurance Company's Joinder [Dkt. No. 1266], Ex. A ¶¶ 28, 29, 34, 25; Declaration of Paul A. Sheldon [Dkt. No. 1219], Ex. A ¶¶ 28, 29, 34, 35. While Plant is confident that it will be able to establish coverage rights under these policies, each of the Moving Insurers has consistently <u>denied</u> the existence of coverage, thus negating a key element that each insurer must establish to have any right of contribution. *See* FF Claim ¶ 6; Proof of Claim No. 50 filed by United States Fidelity and Guaranty Company ¶ 4 (filed Oct. 13, 2009); Proof of Claim No. 51 filed by OneBeacon Insurance Company ¶ 5-6 (filed on Oct. 13, 2009); Proof of Claim No. 56 filed by ACE Fire Underwriters Insurance Company ¶ 4 (filed Oct. 13, 2009); Proof of Claim No. 57 filed by ACE Property & Casualty Insurance Company ¶ 4 (filed Oct. 13, 2009); Proof of Claim No. 53 filed by United States Fire Insurance Company ¶4 (filed Oct. 13, 2009).

[15] The factual assertions in this Memorandum should be presumed to relate to activities since the 2006 tender unless otherwise expressly stated.

Case: 09-31347    Doc# 1282    Filed: 07/01/11    Entered: 07/01/11 14:33:57    Page 11 of 32

the future.[16]

There is no judgment in the Declaratory Relief Action establishing an obligation to Plant on the part of any insurer of Plant under the relevant policies. Contribution Actions have been asserted by cross-complaints against Sompo and UNIC. No judgment has been entered on those claims. No litigation has commenced on any of those claims. No Contribution Action has been commenced by any Moving Insurer against Arrowood. The trial in Phase III of the Declaratory Relief Action is scheduled to begin on April 23, 2012. Phase III does not involve inter-insurer issues, but rather questions of contract interpretation between Plant and the insurers, particularly when asbestos "bodily injury" begins under the policies, and the scope of the "products hazard" and "completed operations hazard" in the policies. A final decision from the Phase III trial likely will not be issued until the fourth quarter of 2012. Phase IV will begin sometime in 2012 or 2013 after the final Phase III decision is issued. Phase IV is unlikely to involve inter-insurer issues but instead will address other contract interpretation disputes between Plant and the insurers. The scope of Phase IV has not been determined, but some of the insurers have identified the "number of occurrences" and "drop down" issues as being questions they want answered in future phases of the Declaratory Relief Action. The "number of occurrences" issue is factually intensive. Litigation on that issue alone could last at least two years, taking the disputes between Plant and the insurers into 2014 or 2015. The litigation of contribution issues between Plant's insurers will not occur until all of the disputes between Plant and the insurers are resolved.[17]

### C. The Plan Would Enjoin the Prosecution of Contribution Claims Against Settling Asbestos Insurers.

There is no material dispute regarding the impact that the Plan will have on Contribution Claims against Settling Asbestos Insurers. The Settling Asbestos Insurer Injunction[18] would

---

[16] To the best of Plant's knowledge, no insurer asserts contribution rights for payments it made at any time before January 2006.

[17] *See* Raskin Declaration ¶¶ 4-8.

[18] *See* Plan § 5.3 ("On the Effective Date, the Injunctions shall be deemed issued, entered, valid and enforceable according to their terms."). The term "Injunctions" is defined to include the Settling Asbestos Insurer Injunction. *Id.* § 1.60. The Settling Asbestos Insurer Injunction is Exhibit B to the Plan. *See* Exhibits to Second Amended Joint Plan of Reorganization of Plant Insulation Company (filed May 2, 2011) [Dkt. No. 1156] (hereinafter "Plan Exhibits"), Ex. B.

Case: 09-31347   Doc# 1282   Filed: 07/01/11   Entered: 07/01/11 14:33:57   Page 12 of 32

enjoin entities that hold Asbestos Insurance Policy Claims from pursuing such claims and from

taking certain other actions against Settling Asbestos Insurers.  The term "Asbestos Insurance

Policy Claims" expressly includes "[a]ny claim against any Asbestos Insurer . . . for . . .

(e) contribution, reimbursement, indemnity or subrogation related to any Asbestos Insurance

Policy."[19]  Accordingly, the effect of the Plan is that Contribution Actions brought by a Non-

Settling Asbestos Insurer against a Settling Asbestos Insurer would be enjoined.  Nor does the

Plan provide for the Trust to pay the holders of alleged Contribution Claims.  Rather, the Plan, as

described below, recognizes that Asbestos Insurers may be entitled to credits or offsets on

account of monies paid by the Trust or others to claimants.

> **D.**     **Plant Has Operated Throughout This Case Under the Oversight of the Bankruptcy Court and With the Participation of the Moving Insurers.**

Since this case was commenced, the Court has supervised, and creditors have had an

opportunity to be heard regarding, all actions taken outside of the ordinary course of Plant's

business.  The actions taken to date, and the notice provided to parties in interest (including the

Moving Insurers) throughout, are evidenced by the docket of this case.  Certain notable items

include the following:

- The Moving Insurers have been heavily involved in the plan confirmation process, including (but not limited to) proposing numerous Disclosure Statement changes (including their own 13-page informational insert to the Disclosure Statement),[20] negotiating and agreeing upon a stipulation resolving certain plan confirmation issues[21] and propounding significant amounts of discovery to the Proponents.

- The Asbestos Insurers have been afforded standing as to all matters considered throughout this bankruptcy case.

- To date, the Court has approved three settlements (the "Existing Insurance Settlements") between Plant and its Asbestos Insurers: (a) prepetition, in September 2007, with Sompo Japan Insurance Company of America ("Sompo"), providing for $12 million in total payments; (b) prepetition, in January 2009, with United National Insurance Company ("UNIC"), providing for $15.5 million in total payments; and (c) postpetition, in February 2011, with Arrowood Indemnity Company f/k/a Royal Indemnity Company (successor-in-interest to Globe Indemnity Company)

---

[19] *See* Plan § 1.13.

[20] *See* Disclosure Statement Article X.

[21] *See* Stipulation Between Insurers and Plan Proponents re Plan Amendments and Confirmation Objections (filed April 28, 2011) [Dkt. No. 1153] (hereinafter, the "Confirmation Stipulation").

OPPOSITION TO INSURERS'
MTN FOR SUMMARY JUDGMENT

- 7 -

("Arrowood"), providing for $30 million in total payments. Each of the three Existing Insurance Settlements was presented to the Court for approval by motion and on notice to all parties in interest.[22] The Court approved the assumption of the Existing Insurance Settlements with Sompo and UNIC after certain of the Moving Insurers objected and after a hearing on such objections, and approved the Existing Insurance Settlement with Arrowood as "fair, reasonable and equitable" and "in the best interests of the Debtor, the Debtors' estate and the creditors" as part of an agreed form of order negotiated with the Non-Settling Asbestos Insurers.[23]

The Moving Insurers have had ample notice and opportunity to be heard on matters of concern to them, including the operation of § 524(g) and the fairness of the Existing Insurance Settlements.

## III.     Argument

### A.     Section 524(g) Authorizes the Injunction of Contribution Claims of Non-Settling Asbestos Insurers.

#### 1.     Statutory Analysis Makes Clear that the Settling Asbestos Insurer Injunction Proposed in the Plan is Appropriate.

##### (a)     Section 524(g)(1)(B)

The language of § 524(g)(1)(B) permits the issuance of the Settling Asbestos Insurer Injunction to enjoin the prosecution of Contribution Claims. The Moving Insurers agree that Contribution Claims can be enjoined. The dispute arises here because they contend that the injunction must be accompanied by some kind of compensation — either channeling Contribution Claims to the Trust or reducing judgments obtained by claimants in the tort system. But the statute that authorizes the injunction does not require channeling or other compensation. Because the Moving Insurers cannot refute either that simple truth, or that a Contribution Action brought

---

[22] See Debtor's Motion for Order Approving the Assumption of Executory Settlement Agreement with Sompo Japan Insurance Company of America (the "Sompo Motion") (July 24, 2009) [Dkt. No. 269]; Debtor's Motion for Order Approving the Assumption of Executory Settlement Agreement with United National Insurance Company (the "UNIC Motion") (July 24, 2009) [Dkt. No. 270]; Debtor's Motion for an Order Approving (A) Settlement Agreement with Arrowood Indemnity Company and (B) The Sale of Insurance Policies Free and Clear of Pending Asbestos Claims (the "Arrowood Motion") (Feb. 16, 2011) [Dkt. No. 1022]. Notices of Hearing and Certificates of Services for these motions can be found at Docket Numbers 271, 712, 713, 714, 1023 and 1029. The Proponents do not argue in this Memorandum that Court approval of the above settlements is preclusive evidence of their fairness or reasonableness. The Proponents acknowledge and are fully aware of the provisions of the orders granting these motions that reserve certain rights and arguments in favor of the Moving Insurers.

[23] See Order Granting Sompo Motion (Aug. 13, 2010) [Dkt. No. 792]; Order Granting UNIC Motion (Aug. 13, 2010) [Dkt. No. 793]; Order Approving Arrowood Motion (Mar. 30, 2011) [Dkt. No. 1107].

OPPOSITION TO INSURERS'
MTN FOR SUMMARY JUDGMENT

by one insurer against another would be an action to "indirectly recover or receive payment" "relating to an asbestos injury claim," their statutory construction argument collapses.

Section 524(g)(1)(B) of the Bankruptcy Code is one of <u>two</u> provisions[24] that define the scope of injunctions that may be issued under § 524(g); it provides, in relevant part:

> An injunction may be issued under subparagraph (A) to enjoin entities from taking legal action for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery with respect to any claim or demand that, under a plan of reorganization, is to be paid in whole or in part by a trust described in paragraph 2(B)(i) . . . .

The Plan here proposes to create a Trust that would assume "all liability for Asbestos Related Claims."[25] The term "Asbestos Related Claims" is defined to include both asbestos injury claims and future demands.[26] Accordingly, "Asbestos Related Claims" are equivalent to "any claim or demand that, under a plan of reorganization, is to be paid in whole or in part by a trust described in paragraph 2(B)(i)."[27] Furthermore, the Non-Settling Asbestos Insurers here are undeniably "entities." Accordingly, after substituting equivalent phrases and removing excess words, § 524(g)(1)(B) could be restated as follows:

> An injunction may be issued . . . to enjoin [Non-Settling Asbestos Insurers] from taking legal action for the purpose of . . . indirectly . . . recovering, or receiving payment or recovery with respect to any . . . [Asbestos Related Claims] . . . .

The above language describing what may be enjoined <u>precisely</u> describes a Contribution Action. California courts have held that contribution is the "right to <u>recover</u>, not from the party primarily liable for the loss [*i.e.,* directly], but from a co-obligor who shares such liability with the party seeking contribution [*i.e.,* indirectly]." (emphasis and bracketed language added).[28] Under the circumstances present here, a Contribution Action is an action brought after a judgment or settlement was reached in an asbestos personal injury action, so that the insurer required to pay on

---

[24] The other is § 524(g)(4)(A)(ii), as discussed immediately following in section III.A.1(b).

[25] *See* Plan § 5.2.3.

[26] *See* Plan § 1.19 ("Asbestos Related Claim" means "Any Asbestos Injury Claim, Asbestos Injury Demand or Asbestos Indirect Claim").

[27] The Moving Insurers are not — at least at this time — challenging whether the Trust satisfies the standards of § 524(g)(2)(B)(i) of the Bankruptcy Code. Accordingly, the Proponents are not by this Memorandum seeking to establish whether those standards have been met.

[28] *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 77 Cal. Rptr. 2d 296, 303-04 (Cal. Ct. App. 1998).

OPPOSITION TO INSURERS'
MTN FOR SUMMARY JUDGMENT

the judgment or settlement could <u>indirectly recover</u> amounts it had paid relating to the asbestos personal injury claim. Thus, the plain language of subsection 524(g)(1)(B) provides that Contribution Actions may be enjoined, with no requirement that compensation be provided.

(b) *Section 524(g)(4)(A)(ii)*

Subsection 524(g)(1)(B) must be read within the context of the entire statute, particularly other subsections of section 524(g).[29] And subsection 524(g)(1)(B) is not the only subsection that defines the scope of available injunctions under section 524(g). The scope of permitted injunctions is also defined by subsection 524(g)(4)(A)(ii), which provides in relevant part:

> [A]n injunction may bar <u>any action</u> directed against a third party who is identifiable . . . and is alleged to be <u>directly or indirectly</u> liable for the conduct of, claims against, or demands on the debtor to the extent such alleged liability of such third party arises by reason of — . . . (III) the third party's underline{provision of insurance} to the debtor or a related party . . . .

(emphasis added). This provision thus permits the Court to enjoin any actions directed against parties that are in the enumerated categories of § 524(g)(4)(A) — specifically including insurers of entities with asbestos liability. This provision explicitly expresses the Congressional intent to afford insurers that make payments to a § 524(g) trust <u>full protection</u> from claims of any kind upon making such payments. In order to properly interpret § 524(g)(1)(B), the Court should consider all plainly relevant provisions of the statute, such as § 524(g)(4)(A)(ii) quoted above.

(c) *The Moving Insurers' Interpretation Would Render Statutory Language Meaningless.*

Contrary to the Moving Insurers' argument, the provisions of § 524(g) nowhere require that the enjoined party receive compensation. The Moving Insurers selectively quote from § 524(g)(1)(B) and then leap to the conclusion that "claims may be enjoined <u>only if they are channeled</u> to be paid in whole or in part by a 524(g) trust."[30] In fact, the statute does not provide

---

[29] "When interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature . . ." *Kokoszka v. Belford*, 417 U.S. 642, 650 (1974) (citation omitted); *Azarte v. Ashcroft*, 394 F.3d 1278, 1287 (9th Cir. 2005) ("It is an established canon of construction that, when interpreting statutes, courts are generally obligated to look at the statute as a whole.").

[30] Insurer Brief at 13:23-24 (emphasis added).

that only claims being channeled to a trust can be enjoined. Instead, the statute provides that an action may be enjoined if it is an attempt to "<u>directly or indirectly</u>" recover "<u>with respect to</u>" a claim being channeled to a trust. To reach their unfounded and incorrect conclusion, the Moving Insurers have effectively eliminated these two underlined statutory phrases — phrases that broaden the universe of permissible injunctions that protect enumerated parties, including insurers.

Thus, the Moving Insurers would give no meaning to the statutory phrase "directly or indirectly." A Contribution Action is an <u>indirect</u> action — it is brought after the direct action of the asbestos plaintiff against the debtor or the insurer — that falls within the scope of the statute. The Moving Insurers may not legitimately interpret the statute as if this phrase did not exist.[31]

The Moving Insurers would also give no meaning to the phrase "with respect to" before "any claim or demand." Grammatically, the phrase "with respect to" is often used to express just about any relationship to a thing or concept.[32] Courts and legislatures use the term to refer to anything "relating to" or "pertaining to" the specified thing or concept.[33] A Contribution Action "relates to" Asbestos Related Claims (because the latter provides the necessary predicate for the former) and thus seeks recovery "with respect to" Asbestos Related Claims. To avoid this simple logical conclusion, the Moving Insurers ignore the words "with respect to" and implicitly substitute the word "on" in § 524(g)(1)(B) before the phrase "any claim or demand."

Rather than interpret the statute as written, the Moving Insurers ignore language they find inconvenient and detrimental to their position. Because this rewriting of the statute renders the phrases "with respect to" and "directly or indirectly" meaningless and superfluous, the Moving Insurers' interpretation violates basic principles of statutory interpretation and must be rejected.[34]

---

[31] In fact, as discussed in section III.A.2, the court in the *Western* case interpreted the term "indirect" to include contribution actions of one insurer against another.

[32] Thus, the set of items "with respect to X" is significantly broader than the set of "X."

[33] *See Phoenix Leasing Inc. v. Sure Broad., Inc.* 843 F. Supp. 1379, 1388 (D. Nev. 1994) ("The phrase 'with respect to' means with reference to, relating to, or pertaining to"); *Int'l Milling Co. v. United States*, 27 F. Supp. 592, 597 (Ct. Cl. 1939) ("The term 'with respect to' means 'with reference or relation to,' or 'pertaining to,'"); *Hartford Cas. Ins. Co. v. Travelers Indem. Co.*, 2 Cal. Rptr. 3d 18, 24-25 (Cal. Ct. App. 2003) ("[W]e find definitions indicating that 'only with respect to' merely indicates some relationship."); *In re Weyerhaeuser Timber Co.*, 332 P.2d 947, 949 (Wash. 1958) ("'With respect to' means with reference to, or relating to").

[34] *City of Los Angeles v. U.S. Dep't of Commerce*, 307 F.3d 859, 870 (9th Cir. 2002) ("[I]t is 'a

Case: 09-31347   Doc# 1282   Filed: 07/01/11   Entered: 07/01/11 14:33:57   Page 17 of 32

## 2. Case Law Supports the Conclusion That Section 524(g) Authorizes Injunctions Barring Contribution Actions.

Despite the Moving Insurers' citations to numerous chapter 11 plans that they allege are relevant here, there is exactly <u>one</u> reported case in which the Court ruled upon the issue before the Court here: *In re Western Asbestos Co.*, a case from this District.[35]  In *Western*, Judge Tchaikovsky considered whether contribution claims could be enjoined under § 524(g) and answered the question in the affirmative.  In particular, the *Western* plan proposed to "'channel' all asbestos claims against the debtor to the Trust."[36]  "[I]f the Plan is confirmed, the Court will issue an injunction under 11 U.S.C. § 524(g), protecting [the settling insurer] and others from the 'channeled' claims as well as from any claims for contribution or indemnification by the Objecting Insurers."[37]  In this respect, the plan in *Western* and the Plan here are the same.

The *Western* court then adopted the interpretation proposed by the Proponents here: "[T]he court concludes that that the supplemental injunction may enjoin the Objecting Insurers' contribution claims."  After citing practical considerations, the court provided a concise but unequivocal statutory basis for its conclusion:

> The textual basis for the Court's conclusion is the language providing that the injunction may "enjoin entities from taking legal action for the purposes of directly *or indirectly* collecting . . . any claim that . . . is to be paid in whole or in part by a trust . . ."  The Objecting Insurers' assertion of contribution claims against [the settling insurer] would clearly constitute indirect attempts to collect the asbestos claims.  Therefore, the Objecting Insurers may be enjoined from asserting their contribution claims.[38]

The Moving Insurers, perhaps realizing the need to discredit the reasoning of the only case on point, disparage the motives of the *Western* court and present an analysis of the case that is inaccurate and misleading.[39]  The *Western* court did state (without explanation) that the "express

---

(continued…)

cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (quoting *TRW Inc. v. Andrews*, 534 U.S. 19 (2001)).

[35] 313 B.R. 832 (Bankr. N.D. Cal. 2003).

[36] *Western*, 313 B.R. at 837.

[37] *Id.* at 837-38.

[38] *Id.* at 856.

[39] *See* Insurer Brief at 14:7-15:7.

---

No. 09-31347-TC

OPPOSITION TO INSURERS'
MTN FOR SUMMARY JUDGMENT

language of 11 U.S.C. § 524(g)(1)(B) is not helpful in resolving these issues," perhaps recognizing the two conceivable interpretations of the subsection — the one presented in the Insurer Brief, and the one presented by the Proponents above. The Moving Insurers argue that because the *Western* court further stated that the language of § 524(g)(1)(B) "does not appear to permit the enjoining of contribution claims," the court acted improperly by not immediately stopping there. A fair reading of that phrase in the context of the overall opinion is that the court at first glance interpreted § 524(g)(1)(B) as not authorizing the proposed injunction. Upon further review and a closer textual analysis, however, the court was dissuaded of this view.[40]

The Moving Insurers also accuse the *Western* court of a "result-oriented" perspective because the court recognized that there were practical policy reasons — a desire to make plan injunctions "effective" — that should "inform the Court's reading of the subsection." There is nothing improper about a court considering the relevant policy rationales underpinning a statute.[41] Even so, after citing practical policy reasons, the *Western* court went on to provide a sound textual basis for its decision, as stated above. The Moving Insurers simply ignore the court's well-reasoned textual analysis.[42] In fact, the reasoned approach of the *Western* court — whose opinion has not been judicially criticized in the nearly eight years since it was issued — establishes that it is not at all the "discredited outlier" that the Moving Insurers wish that it was.

The Moving Insurers' proposed construction is not supported by the language of the statute (as discussed above) or by case law, and is unpersuasive. The Moving Insurers cite to a number of bankruptcy cases (and tender hundreds of pages of bankruptcy plans from other cases) where the statutory and constitutional issues presented here were simply not litigated or even

---

[40] *Western*, 313 B.R. at 856.

[41] *See S.D. Meyers, Inc. v. City of San Francisco*, 336 F.2d 1174, 1180 (9th Cir. 2003) (in interpreting statute, court should take into account the public policy behind the statute).

[42] In addition to § 524(g), Bankruptcy Code § 105(a) would also permit the Court to issue the Settling Asbestos Insurer Injunction. Section 105(a) permits a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." As recognized by the *Western* court, an injunction covering indirect contribution claims against settling insurers is necessary to make the injunction "effective." *Western*, 313 B.R. at 856. In fact, the *Western* court expressly acknowledged that, notwithstanding any limits of its authority under § 105, that provision could be used to supplement an injunction against certain parties if "necessary to the effectiveness of the Plan." *Id.* at 855.

Case: 09-31347   Doc# 1282   Filed: 07/01/11   Entered: 07/01/11 14:33:57   Page 19 of 32

addressed by the courts.[43]  The Proponents readily admit that <u>one option</u> for a debtor or other plan proponent seeking a § 524(g) injunction is to make a concession to its insurers and propose a so-called "judgment reduction" provision of some sort.  A debtor may voluntarily take this tactical action to narrow the issues to be litigated at confirmation or for other reasons — and asbestos creditors (and the future claimants representative) may support doing so for various reasons, including that they are simply tired of enduring the litigation tactics of insurers seeking to make the plan confirmation process as lengthy and costly as possible.[44]  But the fact that a plan was <u>voluntarily</u> proposed with a judgment reduction provision in other cases is not legal precedent, has no persuasive power and does not <u>in any way</u> reflect any legal requirement that every bankruptcy plan <u>must</u> operate in a similar manner.

Thus, contrary to the Moving Insurers' assertion that *Western* is no longer relevant, *Western* is in fact the only legal precedent regarding the issue at hand, and it remains good law in this jurisdiction.  The Moving Insurers' attempt to imply otherwise is disingenuous and erroneous.

3. <u>The Moving Insurers Misstate Section 524(g)'s Standards.</u>

The above are not the only examples of the Moving Insurers crafting alleged "requirements" found nowhere in the statute, in an attempt to prevent the Proponents from confirming the Plan.

The Moving Insurers repeatedly assert that an injunction issued under § 524(g) is properly

---

[43] The Moving Insurers' citation to the *Thorpe* case is misplaced.  *See* Insurer Brief, at 15:17-16:20.  The circumstances in *Thorpe* were vastly different than those presented here, including the fact that the plan proponents had committed to an "insurance neutral" plan which was intended to leave the insurers' rights unaffected in a number of ways.  *See* Horst Decl. Ex. E § 5.4.2 (titled "Plan Is Insurance Neutral").  The fact that the Insurers have attached a single page of a transcript as their only citation is telling: the *Thorpe* court did not decide the issue in any order or issue any written opinion; it made an arguably tentative ruling on the bench that ultimately encouraged the parties to resolve the issue.  It is difficult to envision a more tepid or less persuasive precedent.  Yet this is the highest card the Moving Insurers play.

[44] The Proponents in these cases have compromised with Plant's insurers on two issues in order to narrow the scope of discovery and avoid disputes over certain confirmation issues.  *See* Confirmation Stipulation ¶¶ 1-2.  If the Moving Insurers' reasoning were accurate, in the next asbestos bankruptcy case filed in this (or some other) jurisdiction, a new debtor would be *required* to resolve these two issues in the exact same way, simply because Plant chose to do it this way in this particular case.  This is nonsense.

referred to as a "channeling injunction,"[45] and on that basis argue that only claims that are "channeled" can be enjoined. In fact, while the term "channeling injunction" is a term of art often utilized in asbestos and mass tort bankruptcy cases,[46] the word "channel" and its grammatical variants appear nowhere in the text of § 524(g). Some of the injunctions issued pursuant to plans confirmed under § 524(g) are "channeling injunctions," but some are not. There is certainly no statutory requirement that all enjoined claims be "channeled." In fact, the only channeling requirement placed on § 524(g) trusts under the statute is that a debtor's liabilities must be channeled to the trust. In particular, § 524(g)(2)(B)(i)(I) requires that a trust "assume the liabilities of a debtor." There is no statutory requirement that all claims to be enjoined (such as the Contribution Claims here) be assumed by the trust. If that was in fact the intent of Congress, the statute would simply require the trust to "assume the liabilities that are being enjoined."

Throughout the Insurer Brief, the Moving Insurers repeat their mantra that judgment reduction provisions are required in asbestos bankruptcy plans.[47] Yet the term "judgment reduction" also cannot be found anywhere in the statute. While the inclusion of a so-called "judgment reduction" provision may be used to settle certain disputed issues between insurers and asbestos debtors, it is not a statutory requirement.

In addition to their attempt to impose new requirements beyond those that are actually found in the statute, the Moving Insurers make a number of other specious arguments:

- They cite to § 524(e) in various parts of their brief, reciting case law holding that § 524(e) prohibits third-party releases.[48] That proposition, while generally correct, is simply irrelevant here: § 524(g)(4)(A)(ii) (which the Moving Insurers inexplicably ignore) expressly provides that the court may issue a § 524(g) injunction "[n]otwithstanding the provisions of section 524(e). . . ." For the same reason, the premise of the Moving Insurers' argument that § 105(a) is unavailable to supplement the Court's authority under § 524(g) — because, they argue, it would be inconsistent

---

[45] *See* Insurer Brief at 2:2, 4:25, 13:22-23, 16:23, 17:12; 19:9.

[46] Indeed, the Proponents themselves have used the term "channeling injunction" in this case, but largely when discussing the particular injunction proposed by the Plan that would enjoin prosecution of the claims that are actually being assumed by the Trust under the Plan (and thus being "channeled"). *See* Plan Exhibits, Ex. A.

[47] *See, e.g.,* Insurer Brief at 2:18-3:7; 8:3-4; 15:24-17:9

[48] *See* Insurer Brief at 18:14-19.

Case: 09-31347    Doc# 1282    Filed: 07/01/11    Entered: 07/01/11 14:33:57    Page 21 of 32

with § 524(e) — also fails.[49]

• Buried at the end of a footnote, the Moving Insurers argue that enjoining Contribution Claims of one insurer against another would violate the best interests test of § 1129(a)(7) of the Bankruptcy Code.[50] Since § 1129(a)(7) addresses the treatment of creditors' claims <u>against the debtor</u>, and Contribution Claims are not claims against the debtor, the best interests test is not even arguably implicated here.

Taken together, the above arguments demonstrate the Moving Insurers' utter failure to establish that the language of the Bankruptcy Code prevents a plan from enjoining Contribution Claims without channeling such claims to a section 524(g) trust or providing judgment reduction.

### B. The Fifth Amendment's Takings Clause Does Not Prohibit Enjoining the Contribution Claims of Non-Settling Asbestos Insurers.

#### 1. The Settling Asbestos Insurer Injunction Does Not Violate the Takings Clause.

Because of the supremacy of federal law, a conclusion that § 524(g) of the Bankruptcy Code allows the court to enjoin equitable Contribution Actions brought under state law should be the end of the analysis. To find a basis to complain about the impact of § 524(g) on their state law rights, however, the Moving Insurers attempt to manufacture a constitutional issue. Thus, the Moving Insurers assert that the Plan and the Settling Asbestos Insurer Injunction violate the Takings Clause of the Fifth Amendment[51] to the United States Constitution,[52] which prevents the

---

[49] The Court need not rely on § 105(a) to enjoin Contribution Actions; the express provisions of § 524(g) provide ample authority. *See* Section III.A.1 above. Should the Court conclude that § 105(a) is helpful or necessary, there is plainly no inconsistency with § 524(e) — or any other provision of the Code — to impair § 105's availability to support the requested injunction.

[50] *See* Insurer Brief at n.59.

[51] The Moving Insurers identify the "Fifth Amendment" as the grounds for asserting that the Plan is not confirmable, but their only specific argument focuses on the Plan as an alleged "taking." No Moving Insurer makes any other Fifth Amendment argument. Accordingly, the Proponents address only Takings Clause arguments.

[52] The Fifth Amendment provides as follows (emphasis added):

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; **nor shall private property be taken for public use, without just compensation**.

This final clause is referred to as the "Takings Clause."

taking of private property for public use without just compensation. But clear Supreme Court and Ninth Circuit precedent demonstrate that this argument is without merit. For the Plan and the Settling Asbestos Insurer Injunction to amount to a proscribed taking, the Moving Insurers would have to establish that they have a protectable vested interest in the specific property that they assert is being taken without just compensation.[53] They cannot do so.

(a) <em>Causes of Action, Like the Contribution Claims Here, are Not Protectable Property Interests Under Takings Clause Jurisprudence.</em>

The threshold question in any Takings Clause inquiry is whether the party complaining that a taking is occurring has a property interest of the type protected by the Takings Clause:

> First, as a threshold matter, the court must determine whether the claimant has established <u>a property interest for purposes of the Fifth Amendment</u>. . . . If the claimant fails to demonstrate the existence of <u>a legally cognizable property interest</u>, the court's task is at an end.[54]

The Supreme Court has stated that "revocable" or "contingent" property interests are not subject to protection.[55] Most Takings Clause cases that discuss whether a property interest is protectable turn on whether the property right is "vested." These cases largely rely on a 19th Century Supreme Court decision that explained that "[i]t is not within the power of a legislature to take away rights which have been once vested by a judgment."[56] The test for whether alleged property interests are "vested" and thus protectable for Takings Clause purposes is more restrictive than tests for whether property interests are protectable under other constitutional provisions.[57]

---

[53] See *Bair v. United States*, 515 F.3d 1323, 1327 (Fed. Cir. 2008) ("[W]e must determine as a threshold matter whether the claimant has established a property interest for purposes of the Fifth Amendment. . . . Once the claimant has identified a valid property interest, we must determine whether the challenged governmental action constituted a compensable taking of that property interest.").

[54] See *Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004) (emphasis added).

[55] See *Dames & Moore v. Regan,* 453 U.S. 654, 674 n.6 (1981); *see also Am. Pelagic*, 379 F.3d at 1381 (where property was a revocable government permit, there is no protectable interest for takings clause purposes); *Bailey v. United States*, 53 Fed. Cl. 251, 257 (Fed. Cl. 2002) ("the contingent nature of the . . . property interest precludes the finding of any taking").

[56] See *McCullough v. Virginia*, 172 U.S. 102, 123-24 (1898).

[57] See, e.g., *Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 285 n.3 (3d Cir. 2008) (explaining that the term "property" as used in the Takings Clause context is "defined much more narrowly" than other constitutional contexts because the term can be interpreted differently in different phrases with different objectives and the Takings Clause was meant only to protect "identifiable 'property'

Case: 09-31347   Doc# 1282   Filed: 07/01/11   Entered: 07/01/11 14:33:57   Page 23 of 32

The asserted property interests of the Moving Insurers here are their equitable, judge-made contribution causes of action, both presently existing and those that might come into existence in the future. Courts considering Fifth Amendment takings clause challenges have held that no "taking" can exist where the property interest in question is a simple common law or equitable right — i.e., where there is no statutory cause of action.[58] Beginning at least with the 1987 decision in *In re Consolidated U.S. Atmospheric Testing Litigation,*[59] the Ninth Circuit has consistently held that a party's property right in a simple cause of action is not vested, and thus is not a protectable interest under the Takings Clause, "until a final unreviewable judgment is obtained."[60] In 1989, the Ninth Circuit ruled in *Grimesy v. Huff*[61] that there was no Fifth Amendment taking when the alleged property interest to be taken was certain claimants' unmatured causes of action seeking payment of AFDC benefits. Citing "controlling Ninth Circuit cases," District Judge Walker recently concluded that "[i]t is well-established that no property right [for Takings Clause purposes] vests in a cause of action until a final, unreviewable judgment is obtained."[62] Decisions from other courts outside of the Ninth Circuit are the same.[63] Decisions of courts in bankruptcy cases applying the Takings Clause are the same.[64]

_____

(continued…)

interest[s]") (citing *E. Enters. v. Apfel*, 524 U.S. 498 (1998)).

[58] *Branch v. U.S.*, 69 F.3d 1571, 1577 (Fed. Cir. 1995) (finding no Takings Clause violation under principle that "a legislature is free to make statutory changes in the common law rules of liability without running afoul of the Fifth or Fourteenth Amendment protections of property").

[59] 820 F.2d 982 (9th Cir. 1987).

[60] *Id.* at 989 (citing *Hammond v. United States*, 786 F.2d 8, 11-12 (1st Cir. 1986)).

[61] 876 F.2d 738, 743 (9th Cir. 1989).

[62] See *In re Nat'l Sec. Telecomm. Records Litig.*, No. 06-1791, 2009 WL 2245693, at *3 (N.D. Cal. Jul. 27, 2009).

[63] *See, e.g., Hammond*, 786 F.2d at 11-12 (finding that a "right to a tort cause of action, or a right deriving from a tort" is not "vested" and concluding that there is no Takings Clause violation because "rights in tort do not vest until there is a final, unreviewable judgment"); *Sowell v. Am. Cyanamid Co.,* 888 F.2d 802, 805 (11th Cir. 1989) ("[A] legal claim affords no definite or enforcible [sic] property right until reduced to final judgment.").

[64] *See, e.g., In re ABC-Naco, Inc.*, 331 B.R. 773, 779 (Bankr. N.D. Ill. 2005) ("The likely reason for the Committee's failure to claim an unconstitutional taking in this respect is a well-established principle that an interest in a cause of action does not vest, for purposes of the Takings Clause, until judgment is entered.") (citing *McCullough*).

OPPOSITION TO INSURERS'
MTN FOR SUMMARY JUDGMENT
- 18 -

The very recent Ninth Circuit decision *Ileto v. Glock, Inc.* is illustrative and compelling.[65] In *Ileto*, a gunman shot four people, killing one of them. The victims filed tort actions against a number of defendants, including federally-licensed firearms manufacturers. Certain of the tort claims were dismissed in the district court but were reinstated by the Ninth Circuit. Congress then enacted legislation (the "PLCAA") protecting federally-licensed firearms manufacturers from suit. The claims were again dismissed by the district court, and the case went to the Ninth Circuit a second time. In 2009, the Ninth Circuit affirmed the dismissal of the claims against the manufacturers, stating that "[w]e have squarely held that although a cause of action is a species of property, a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained."[66] Because the plaintiffs' claims had not been reduced to judgment, any government action could not be considered a taking: "Plaintiffs' argument that the PLCAA effects an unconstitutional taking without just compensation fails for the same reason."[67]

Applying the rule that has been plainly and repeatedly announced by the Ninth Circuit, it is abundantly clear that the Moving Insurers have no vested property interest capable of Takings Clause protection here because (a) their alleged rights are simple common law rights, and thus are not protectable property interests and (b) at the time of the alleged taking, they have or will have no final judgment establishing a contribution right.

With respect to this second issue, the Moving Insurers completely avoid the question of when the alleged taking occurs here. The Moving Insurers contend that if the Court interprets § 524(g) as suggested by the Proponents, the statute is unconstitutional. The act taken by this Court here, however, is an exercise in statutory interpretation — this Court is simply determining

---

[65] 565 F.3d 1126 (9th Cir. 2009).

[66] *Id.* at 1141 (citation omitted).

[67] *Id.* The only Ninth Circuit case that could be argued to vary from the principles set forth in the text above is the 29-year old case of *In re Aircrash in Bali, Indonesia on April 22, 1974,* 684 F.2d 1301 (9th Cir. 1982). The plaintiffs there had obtained a jury verdict and judgment in their favor and no party had raised the Takings Clause issue. The Court *sua sponte* considered whether the Warsaw Convention limitation on air carrier liability amounted to a taking, concluding: "We need not decide now whether the Warsaw Convention may effect a taking, because the issue may not arise in this case." *Id.* This statement in the *Bali* case is simple *dictum*; numerous Ninth Circuit cases since then have definitively addressed this question, as discussed in the text.

now what Congress did when it enacted § 524(g) in 1994. If the Proponents' interpretation is adopted, this Court would not be instituting a change in common law rights: it would be simply implementing the regimen and the changes that Congress put into place in 1994. Thus, the question is not whether this Court is effecting a taking now; it is whether Congress effected a taking in 1994. This is, in fact, how the Supreme Court has analyzed the issue in the only case in which it struck down a bankruptcy law as an unconstitutional taking: *Louisville Joint Stock Land Bank v. Radford*.[68] In that case, where a bankruptcy referee sought to require a bank to accept a type of repayment plan provided for by a 1934 statute that gave the bank something less than its 1922 mortgage would have provided, the Supreme Court focused on what the rights of the bank were <u>at the time the act was passed; not at the time when the referee acted</u>.[69] Here, no Contribution Claim of any Moving Insurer even arguably existed when § 524(g) was enacted in 1994, since the payments that allegedly give rise to these claims did not commence until 12 years later, in 2006. As such, there simply could be no taking, as the alleged property interest had not arisen, must less matured.

Even if the time of the alleged taking is the Court's confirmation of the Plan or the district court's entry of the Settling Asbestos Insurer Injunction, there is no protectable property interest and thus no taking. There is no final judgment in any Contribution Action and no prospect of a final judgment on a Contribution Claim any time soon. Phase III in the Declaratory Relief Action will not commence until April 2012, and only after further Phases are complete will the Superior Court be in any position to rule on the viability of Contribution Claims. Any final judgment is, at best, a number of years away. Moreover, at this time, it cannot be known whether the Moving Insurers will be able to establish the facts they need to obtain a judgment. Under the precedent above, with no final judgment at the time the alleged taking would occur (here, at the latest, upon entry of the Settling Asbestos Insurer Injunction), the Takings Clause does not require compensation to enjoin prosecution of Contribution Actions.

---

[68] 295 U.S. 555 (1935).

[69] *Id.* at 590 ("we must ascertain what the mortgagee's rights were <u>before the passage of the Act</u>") (emphasis added).

OPPOSITION TO INSURERS'
MTN FOR SUMMARY JUDGMENT

The Moving Insurers ignore these points.  Instead, they assert the truism that the bankruptcy power is subject to the Fifth Amendment.[70]  So it is.  The only important question, of course, is whether and how the Fifth Amendment limits the action under judicial scrutiny here.  Recognizing the problems they face under controlling Ninth Circuit precedent, the Moving Insurers turn to three <u>non-constitutional</u> decisions regarding third-party releases — presenting them as if those cases announced constitutional requirements.[71]

But the *Dow Corning*, *A.H. Robins* and *Continental Airlines* cases have <u>nothing at all to do</u> with the Takings Clause or § 524(g).  The Proponents assert that § 524(g) provides a basis for the Court to enjoin Contribution Actions: this is the issue now before the Court.  It is hard to see how cases where the debtors were not seeking injunctions under § 524(g) are relevant.  It is harder still to understand how the Moving Insurers cite to these cases as part of their Fifth Amendment argument when those courts did not mention or analyze the Fifth Amendment <u>at all</u> in their decisions.[72]  Those courts either approved or refused to issue third-party releases and injunctions because of statutory and equitable concerns — the decisions had no constitutional component.  The debtors in those cases were not seeking to utilize a statutory provision like § 524(g) to support the issuance of third-party injunctions.[73]  <u>But here the situation is completely different: the Proponents rely on § 524(g).</u>  The trilogy of cases — and the Moving Insurers' entire argument here — are simply inapposite.

---

[70] *See* Insurer Brief at 20:3-4.  This truism comes from *Louisville*, 295 U.S. at 589.  Notably, this case is the only reported case in which a court has struck down a provision of bankruptcy law as unconstitutional.  There, the specific property interest to be protected was an interest in real property — the type of property interest that the Takings Clause has historically been interpreted to protect — not an interest in an inchoate, factually-undeveloped cause of action based upon the common law for which there is no judgment and no prospect of one in the near term.

[71] *See* Insurer Brief at 20:6-16.

[72] In fact, the Proponents are unaware of <u>any</u> case holding that approval of a third-party release in a bankruptcy case (under § 524(g) or otherwise) is improper as an unconstitutional taking.

[73] *In re Dow Corning Corp.*, 280 F.3d 648, 656-59 (6th Cir. 2002) (deciding issue of whether release was appropriate under section 1123(b)(6); not citing constitutional concerns); *In re A.H. Robins Co.*, 880 F.2d 694, 701 (4th Cir. 1989) (approving third party release and injunction under section 105(a) and section 524(e); not citing constitutional concerns); *In re Continental Airlines*, 203 F.3d 203, 211-14 (3d Cir. 2000) (denying approval of third party release and injunction after analyzing section 105(a) and section 524(e); not citing constitutional concerns).

Case: 09-31347   Doc# 1282   Filed: 07/01/11   Entered: 07/01/11 14:33:57   Page 27 of 32

1

              (b)      *Neither the Takings Clause nor Section 524(g) Requires "Full" (or*
*Any Other) Compensation to the Moving Insurers, and the*

2
                                  *Injunctive Relief Authorized by Section 524(g) is Just.*

3
       Section 524(g) provides for a fair and rational way to balance the interests of insurers,

4
debtors and asbestos victims.  The insurers do not argue otherwise, but instead pin their

5
constitutional argument on the unsupportable proposition that, regardless of the rationality of the

6
statutory scheme, they are entitled to demand "full"[74] compensation if the court is to issue an

7
injunction.  Section 524(g) promotes the settlement of insurance disputes for the benefit of the

8
asbestos victims who suffer in the face of insurance uncertainty.  By affording the fullest

9
protection known to the law to insurers who choose to settle, the prospects for settlement are

10
enhanced.  Insurers desiring to settle and contribute to a § 524(g) trust negotiate for and require

11
complete "peace" — that is, insulation from threat of future actions being brought against them

12
from <u>any</u> source, whether from asbestos claimants, co-insurers or otherwise.

13
       If the Moving Insurers' statutory interpretation or constitutional arguments are correct, the

14
Non-Settling Asbestos Insurers would, in essence, hold a blocking power over asbestos

15
bankruptcy cases.  As the Moving Insurers would have it, unless a reorganized debtor or a trust or

16
the victims agree to pay or absorb contribution claims <u>in full</u>, a plan including a § 524(g) trust

17
cannot be confirmed.  The Moving Insurers cannot explain why guarantying non-settling insurers

18
full recovery on their contingent contribution claims is "just" when a § 524(g) trust may be

19
paying injured Asbestos Claimants pennies on the dollar.  In practice, any such requirement

20
would amount to a tax imposed by holdout insurers on asbestos victims.  It makes no difference

21
whether this tax would be paid through "judgment reduction" or otherwise.  No matter how

22
implemented, any scheme paying insurer contribution claims in full reduces recoveries to

23
Asbestos Claimants.[75]  That would put the cart before the horse — it is the <u>insurers</u> who by

24
---

[74] *See* Insurer Brief at 19:19 ("[I]t is constitutionally required that enjoined claims against non-
debtors be paid in full."); 20:8-10 (an injunction is only permissible where the "party whose rights

25
against non-debtors are being enjoined or released will receive full compensation for its enjoined
claims").  No constitutional authority is cited to support these broad statements.

26
[75] While the Moving Insurers refer to judgment reduction as an "elegant" solution, they ignore the

27
fact that judgment reduction merely means that the insurers' Contribution Claims are satisfied by
reducing the compensation available to asbestos victims, either directly through reducing

28
judgments obtained by the claimants, or indirectly if the Trust has to pay them.

contract agreed to pay the full extent of the debtor's liability to injured claimants regardless of whether the debtor was in bankruptcy.[76]  It was certainly rational that Congress did not graft a requirement to compensate <u>non-settling insurers</u> onto § 524(g), as the Constitution does not require it.

In the USF&G Joinder, one Moving Insurer offers the new argument (presumably a constitutional one, but that is not clear) that enjoining Contribution Claims is "especially pernicious" under California law because of the insured's alleged right under California law to "select a single insurer's policy or policies from among multiple triggered policies for payment of the full amount of the loss."[77]  The decision cited for that proposition, however, did not actually establish such a rule of law because the proposition was not contested in the appellate court.[78]  Instead, the referenced decision established the principle that <u>each</u> insurer on the risk during the time of continuous or progressively deteriorating injury or damage is responsible to indemnify the insured "in full" up to policy limits.[79]  This is a function of the language the insurers inserted into their own contracts.  The contracts do not say that Plant may, or is required to, "pick" or "select" a "target."[80]  Each Asbestos Insurer <u>contractually</u> agreed with Plant to pay "all sums" (not "some sums") that Plant is legally obligated to pay for injury during the policy period, up to the policy limits.  The contracts do not condition this obligation on the insurers' ability to obtain equitable contribution from each other.  The precedence afforded to payments to injured claimants over insurers' contribution claims stems from the terms of the Asbestos Insurers' own contracts.  The

---

[76] *See* CAL. INS. CODE § 11580(b)(1) ("the insolvency or bankruptcy of the insured will not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of such policy").

[77] *See* USF&G Joinder at 1:19-21.

[78] In the case commonly cited for this proposition, the trial court simply stated, in a footnote, the insured's contention that it could pick and choose any insurer and noted that this contention was unchallenged.  *See Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 52 Cal. Rptr. 2d 690, 706 n.15 (Cal. Ct. App. 1996) (noting that the trial court concluded that "the policyholder may select the policy under which it is to be indemnified" and that "[t]he policyholders have not challenged this ruling").

[79] *Id.* at 705-07.

[80] In fact, Plant is not in practice "selecting a single insurer."  Plant has tendered all cases filed against it to all of its Asbestos Insurers (with the exception that pursuant to its settlement agreements, it has stopped tendering cases to insurers with whom it has settled).

only complaint left to the Moving Insurers is that California equitable principles might not save the insurers from their own contracts as much as other states' equitable principles might save them. This is hardly a constitutional issue or a basis to deny rights afforded to the Plan Proponents under the Bankruptcy Code.

2. The System Envisioned by the Plan is Constitutional.

The treatment of contribution claims envisioned by the plan creates a system similar to those in place in many states, including California, when apportioning liability amongst multiple tortfeasors. Section 524(g) is a statute that permits a party with joint liability to pay an amount in settlement and receive protection from further suit, including contribution claims. While admittedly not directly applicable to Contribution Claims here, state tort systems similarly permit one tortfeasor to make a payment which, if adjudged to be in good faith, provides such tortfeasor with statutory protection from further suit, including contribution.

For example, under § 877 of the California Code of Civil Procedure, otherwise available contribution rights between joint tortfeasors are cut off when one settles:

> Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:
>
> (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.

Section 877.6 provides for the implementation of this provision by establishing a procedure for determining the "good faith" of a settlement and provides the means to terminate equitable contribution and other rights of settling tortfeasors. Under § 877.6, as long as a joint tortfeasor has notice and an opportunity to be heard, it need not be a party to the suit to suffer a loss of contribution rights.[81] A non-settling tortfeasor is protected by various credits and liability apportionment available under California law.[82] Notably, good faith settlement statutes such as

_____

[81] "A settling tortfeasor's section 877.6, subdivision (c) good faith settlement determination discharges indemnity claims by other tortfeasors, whether or not named as parties, so long as the other tortfeasors were given notice and an opportunity to be heard." *Gackstetter v. Frawley*, 38 Cal. Rptr. 3d 333, 345 (Cal. Ct. App. 2006).

[82] *See, e.g., Cahill v. San Diego Gas & Electric Co.*, 124 Cal. Rptr. 3d 78, 96 (Cal. Ct. App. 2011)

Case: 09-31347   Doc# 1282   Filed: 07/01/11   Entered: 07/01/11 14:33:57   Page 30 of 32

that in California have been repeatedly upheld against constitutional challenges.[83]  By the same logic, Congress' decision in § 524(g) to include non-settling insurers among the parties that are barred by good faith settlements in asbestos cases is not subject to constitutional challenge.

A system that is quite similar to California's joint tortfeasor system is provided by § 524(g) and the proposed Plan here.  Each of the Existing Insurance Settlements has been, and any settlements that are entered into before the end of the case will be, subject to bankruptcy court scrutiny.  The settlements have been or will need to be approved by the Court as being either explicitly fair and reasonable or implicitly as a sound exercise of the Debtor's reasonable business judgment under the Bankruptcy Code.  These requirements parallel the good faith settlement provisions of California Civil Code §§ 877 and 877.6.  If Asbestos Claimants prosecute asbestos personal injury suits against the Reorganized Debtor after the Effective Date, the Plan specifically protects any rights to credits, reductions and offsets in such suits, thus reducing the amount of indemnity that the non-settling insurers will be required to pay if they cover the suits.[84]

Tortfeasors want to settle with victims free from claims by joint tortfeasors.  State laws providing for such settlements pass constitutional muster.[85]  Insurers want to settle with policy holders free from claims by other insurers.  Section 524(g) provides a vehicle for doing so, and it passes constitutional muster as well.

---

(continued…)

("A good faith settlement determination also reduces the claims against the nonsettling defendants in the amount stipulated by the settlement.").

[83] *City of Emeryville v. Robinson*, 621 F.3d 1251, 1266 (9th Cir. 2010) (noting that "non-parties with constitutionally sufficient prior notice will be bound by a 'good faith settlement' determination" under California's statute); *Burton v. Am. Cyanamid Co.*, -- F. Supp. 2d --, 2011 WL 1238905, at *4-6 (E.D. Wis. Apr. 5, 2011) (holding that imposition of liability in mass tort matter is not a Taking Clause violation because, under court's system, "damages are apportioned according to comparative negligence, a time honored and perfectly constitutional concept"); *Troyer v. Adams*, 77 P.3d 83, 94-95 (Haw. 2003) (upholding the Hawaii good faith settlement statute which, like that in California, contains provisions extinguishing contribution claims against a settler who makes a good faith payment).

[84] *See* Plan ¶ 5.2.8.3 ("[N]othing in the Plan or the TDP shall restrict the right, if any of a Non-Settling Asbestos Insurer . . . asserting a claim that it is entitled to a credit, offset, or reduction of damages based on any payment made by or any obligation of the Trust, the Debtor or the Reorganized Debtor to pay an Asbestos-Related Claim . . . .").

[85] *See supra* note 83.

| | |
|---|---|
| 1 | **IV.     CONCLUSION** |
| 2 |      The Plan Proponents respectfully request that the court enter an order denying summary |
| 3 | judgment to the Moving Insurers and granting partial summary judgment resolving this issue in |
| 4 | favor of the Plan Proponents. |

Dated:  July 1, 2011

**CAPLIN & DRYSDALE, CHARTERED**
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

By      */s/ Steven B. Sacks*
     STEVEN B. SACKS
     Attorneys for Official Committee of Unsecured
     Creditors of Plant Insulation Company

**FERGUS, A LAW OFFICE**

By      */s/ Gary S. Fergus*
     GARY S. FERGUS
     Attorney for the Hon. Charles B. Renfrew (Ret.),
     Futures Representative

**JONES DAY**

By      */s/ Peter J. Benvenutti*
     PETER J. BENVENUTTI
     Attorneys for Plant Insulation Company

CLI-1907802v26

No. 09-31347-TC

- 26 -

OPPOSITION TO INSURERS'
MTN FOR SUMMARY JUDGMENT