Michael H. Ahrens (CA Bar No. 44766)
Steven B. Sacks (CA Bar No. 98875)
Michael M. Lauter (CA Bar No. 246048)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111
mahrens@sheppardmullin.com
ssacks@sheppardmullin.com
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
Counsel to Official Committee of Unsecured
Creditors

George H. Kalikman (CA Bar No. 147382)
SCHNADER HARRISON SEGAL & LEWIS
LLP
650 California Street, 19th Floor
San Francisco, CA 94108-2736
gkalikman@schnader.com
Telephone: (415) 364-6700
Facsimile: (415) 364-6785

Counsel to Reorganized Debtor

Gary S. Fergus (CA Bar No. 95318)
FERGUS, A LAW OFFICE
595 Market St., Suite 2430
San Francisco, California 94105
gfergus@ferguslegal.com
Telephone: (415) 537-9030
Facsimile: (415) 537-9038
Counsel to Futures Representative,
Hon Charles Renfrew (Ret.)

Peter Van N. Lockwood (DC Bar No. 086447)
CAPLIN & DRYSDALE, CHARTERED
1 Thomas Circle N.W.
Washington, D.C. 20005
pvnl@capdale.com
Telephone: (202) 862-5000
Facsimile: (202) 429-3301
Counsel to Official Committee of Unsecured
Creditors

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PLANT INSULATION COMPANY,<br>a California corporation,<br><br>                   Debtor.<br><br>Tax ID: 94-0292481 | Case No. 09-31347<br>Chapter 11<br><br>**PLAN PROPONENTS' MOTION FOR ORDER (A) APPROVING SETTLEMENT AGREEMENT WITH UNITED STATES FIDELITY AND GUARANTY COMPANY, (B) DESIGNATING UNITED STATES FIDELITY AND GUARANTY COMPANY AS A SETTLING ASBESTOS INSURER UNDER THE PLAN, (C) APPROVING THE SALE OF INSURANCE POLICIES FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS, AND (D) APPROVING RECONSIDERATION PROCEDURES**<br><br>*[Order Shortening Time Requested]*<br><br>Date:     August 29, 2014<br>Time:    9:00 a.m.<br>Judge:   Hon. Thomas E. Carlson<br>Place:   Courtroom 23<br>           235 Pine Street<br>           San Francisco, CA |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................ 3

    A.    Background of the Debtor, the Asbestos Claims, and the USF&G Policies............. 3

    B.    Previous Settlements. ....................................................................................... 4

    C.    Settlement Agreement with USF&G.................................................................. 5

    D.    USF&G as a Settling Asbestos Insurer Under the Plan. ...................................... 6

III. ARGUMENT ............................................................................................................. 6

    A.    The Settlement Should Be Approved, and USF&G Should Be Designated as a Settling Asbestos Insurer Under the Plan. .................................................. 6

        1.    The Bankruptcy Code Encourages Settlements. ............................................ 6

        2.    The Rule 9019 Standard Also Applies to this Court's Analysis of Whether to Designate USF&G as a Settling Asbestos Insurer Under the Plan. ................................................................................................. 7

        3.    Factor 1: Probability of Success in Litigation. ............................................. 8

        4.    Factor 2: Likely Difficulties in Collection. ................................................... 9

        5.    Factor 3: Complexity and Expense of Litigation, and Inconvenience and Delay in Collection. .................................................................................. 9

        6.    Factor 4: Interests of Creditors. ................................................................ 10

        7.    Including USF&G as Part of an Identified Group........................................ 10

    B.    The Sale of the USF&G Policies Should Be Approved......................................... 12

        1.    Sales Outside the Ordinary Course Are Permitted if There Is a Valid Business Justification for the Sale and It Is Proposed in Good Faith. ........ 12

        2.    The USF&G Policies Are Property of the Estate That May Be Sold Pursuant to Section 363(b). ..................................................................... 12

        3.    Section 363(f) Authorizes the Sale of the Policies to Be Free and Clear of Claims, Including Subject Claims. ................................................ 14

        4.    The Sale of the Policies Was Negotiated in Good Faith and USF&G is Entitled to the Protections of Bankruptcy Code Section 363(m). ........... 16

    C.    The Reconsideration Procedures Should Be Approved. ......................................... 17

Case: 09-31347   Doc# 2819   Filed: 08/27/14   Entered: 08/27/14 22:32:09   Page 2 of 24

1    1.    Procedures for Reconsideration. ................................................................. 18

2    IV. CONCLUSION .................................................................................................. 20

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. INTRODUCTION

The Plan Proponents[1] hereby move the Court for an order:

(a) approving the settlement agreement between the Plan Proponents and United States Fidelity and Guaranty Company ("USF&G");

(b) designating USF&G as a Settling Asbestos Insurer entitled to receive the benefit of the Settling Asbestos Insurer Injunction under the Plan;

(c) approving the sale of the insurance policies issued by USF&G to the Debtor (the "Policies") back to USF&G free and clear of liens, claims, and interests; and

(e) approving certain reconsideration procedures similar to those utilized in the settlement with the ACE Entities, and similar to those sought for approval in connection with the pending settlement with the Resolute-Related Parties.

The Plan Proponents proposed modifications to the Original Plan to cure the defect identified by the Ninth Circuit (the "Plan"). After a further confirmation trial, the Bankruptcy Court entered its *Order Confirming Amended and Restated Second Amended Plan of Reorganization of Plant Insulation, as Modified*, Docket No. 2722 (the "New Confirmation Order").[2] On August 18, 2014, the District Court affirmed the New Confirmation Order.

The New Confirmation Order provides that the Plan will not become effective until the Modified Effective Date, which is defined as a date no earlier than the 15th day following entry of an order by the District Court affirming the New Confirmation Order, provided such order has not been stayed by a court of competent jurisdiction. Now that the District Court has entered its order affirming the New Confirmation Order on August 18, 2014, the Modified Effective Date can occur on or after September 2, 2014.

The last day that this Court may issue an order approving an asbestos insurance settlement and designing a settling insurer as a Settling Asbestos Insurer entitled to the benefits of

---

[1] "Plan Proponents" means, collectively, Bayside Insulation & Construction, Reorganized Debtor (the "Debtor"), the Official Committee of Unsecured Creditors (the "Committee"), and the Court-appointed representative of holders of future asbestos claims (the "Futures Representative").

[2] All of the defined terms in the Plan and the New Confirmation Order shall have the same meaning in this Memorandum unless given a different meaning.

the Settling Asbestos Insurer Injunction in the Plan is also September 2, 2014. Under section 10.3 of the Plan, this Bankruptcy Court retains jurisdiction up to and including the "Outside Date" to approve an asbestos insurance settlement and order that it is appropriate that the settling insurer is designated as a Settling Asbestos Insurer under the Plan. The "Outside Date" is defined as a date which is 15 calendar days after the entry of an order of the District Court affirming a confirmation order of the Bankruptcy Court. *See* Plan, § 1.70.1. With the District Court's order affirming the New Confirmation Order entered on August 18, 2014, the last day of that 15 day period is September 2, 2014.

Because the September 2, 2014 deadline is close at hand, the Plan Proponents request a hearing on the Motion on shortened time on August 29, 2014. In connection with the request for a hearing on shortened time, the Plan Proponents propose that any order approving this Motion contain reconsideration procedures similar to those approved by this Court in connection with the settlement with the ACE Entities, and similar to those sought for approval in the pending settlement with the Resolute-Related Parties. Under those procedures, parties in interest who object to the Motion can have their objections heard on full notice after the order is entered without the heightened scrutiny normally associated with a motion to reconsider.

The Plan Proponents and the Plant Insulation Company Asbestos Settlement Trust ("Trust") have negotiated the present settlement with USF&G to obtain the benefit of USF&G's settlement payments to the Trust in exchange for giving up any rights under the USF&G Policies with the Debtor. The Settlement Agreement provides that USF&G will make payments to the Trust in the aggregate amount of $22 million, comprised of one $21 million payment made 15 days after the New Confirmation Order and the order approving this settlement become final, and a further $1 million payment made on or before December 31, 2016. This settlement is significant because USF&G was the last remaining non-settled insurer in this case. If the pending settlement with the Resolute-Related Parties is approved and this settlement with USF&G is approved, there will be no further non-settled insurers. Consequently, there will be no parties to pursue the appeal of the New Confirmation Order and the District Court's order affirming it. The New Confirmation Order would thus become "final" in short order, satisfying a condition to a large

1  amount of settlement payments under settlements previously approved by the Court.  Not

2  including the pending settlement with the Resolute-Related Parties or this pending settlement with

3  USF&G, approximately $183,250,000 will be paid to the Trust under already-approved

4  settlements once the New Confirmation Order becomes final.  This amount, when added to the

5  settlement consideration from the Resolute-Related Parties and from this settlement with USF&G,

6  will provide a substantial amount of funding to the Trust.  The USF&G settlement would also put

7  an end to the extensive litigation in this bankruptcy case and in state court between the Plan

8  Proponents and the non-settled insurers.

9         The declarations of Stephen Snyder, Alan Brayton and Charles Renfrew that will

10  be filed prior to the hearing will demonstrate that the settlement embodied by the Settlement

11  Agreement is fair and equitable and that USF&G is entitled to the benefits of the Settling Asbestos

12  Insurer Injunction under the Plan.  These declarations and that of the representative of USF&G

13  will further show that the negotiations were conducted in good faith and that the Policies should

14  be sold free and clear of claims, and that a good faith finding under Bankruptcy Code Section

15  363(m) is appropriate.

16  ## II.  STATEMENT OF FACTS[3]

17  **A.  Background of the Debtor, the Asbestos Claims, and the USF&G Policies.**

18         Rather than setting forth all the details of Plant's operational and litigation history

19  once again, the Plan Proponents incorporate by reference Sections II.A, II.B, and II.C of the

20  Memorandum of Points and Authorities filed in support of the motion to approve the settlements

21  with Safety National and ICW [Dkt. No. 2780].  To summarize briefly, Plant was incorporated in

22  1937 and engaged in the business of selling, installing and repairing various insulation materials,

23  including those containing asbestos.  Plant was the exclusive distributor for certain Fibreboard

24  products in the Bay Area from the late 1940s through the 1990s.  Many of these products

25  contained asbestos, as did other products utilized by Plant.  On the Petition Date in this case, Plant

---

[3] The facts set forth in this Motion are supported by the Declarations of Stephen Snyder, Hon. Charles B. Renfrew (Ret.), Alan R. Brayton, Steven B. Sacks, and a USF&G representative that will be filed by Thursday, August 28, 2014.

was a defendant in thousands of asbestos bodily injury, wrongful death, and loss of consortium claims and lawsuits for damages allegedly caused in whole or in part by exposure to asbestos-containing materials handled or supplied by Plant (collectively, the "Asbestos Cases"), with approximately 40 such cases filed per month immediately prior to the Petition Date. In particular, 3,800 such cases had been tendered to Plant's insurers in January 2006 following a roughly five year period during which all of Plant's insurers claimed to have exhausted their policy limits and ceased defending. This tender was accompanied by the filing by Plant of a suit seeking declaratory relief with regards to its insurance coverage, which is pending in San Francisco Superior Court as *Plant Insulation Company v. Fireman's Fund Insurance Company, et al.* (No. CGC-06-448618) (the "Declaratory Relief Action"). The Declaratory Relief Action has proceeded through multiple phases of trials on various issues, and remains pending.

USF&G was among those insurance companies that issued comprehensive general and/or excess liability insurance during Plant's involvement with asbestos materials. USF&G issued two primary liability insurance policies to the Debtor covering various policy years, described on Appendix A to the Settlement Agreement.

**B.    Previous Settlements**.

This Court has previously approved the Debtor's assumption of two prepetition settlements: with Sompo Japan Insurance Company of America, formerly known as Yasuda Fire & Marine Insurance Company ("Sompo"), for $12 million in total payments, and with United National Insurance Company ("UNIC"), for $15.5 million in total payments. The Sompo settlement was entered into on September 7, 2007, and was approved by the Bankruptcy Court in an order entered August 16, 2010. The UNIC settlement was entered into on January 15, 2009, and was approved by the Bankruptcy Court in an order entered August 16, 2010.

The Court also approved six postpetition settlements: (i) a settlement with Arrowood Indemnity Company f/k/a Royal Indemnity Company ("Arrowood") for $30 million in total payments, approved by the Bankruptcy Court in an order entered March 31, 2011; (ii) a settlement with Mt. McKinley Insurance Company ("MMIC") for $4.125 million in total payments, approved by the Bankruptcy Court in an order entered February 24, 2012; (iii) a

SMRH:431288771.2

USF&G SETTLEMENT MOTION

settlement with Fireman's Fund Insurance Company, American Automobile Insurance Company, and National Surety Corporation (collectively, the "Allianz Companies") for $69 million in total payments, approved by the Bankruptcy Court in an order entered July 5, 2012; (iv) a settlement with ACE Companies for $53 million in total payments, approved by the Bankruptcy Court in an order entered October 24, 2012; (v) a settlement with U.S. Fire Insurance Company for $61,750,000 in total payments, approved by the Bankruptcy Court in an order entered June 30, 2014; and (vi) a settlement with Safety National and Insurance Company of the West for $5,900,000 in total payments, approved by the Bankruptcy in an order entered August 4, 2014.

In addition, currently pending before this Court is a motion by the Plan Proponents filed on August 25, 2014 to approve a settlement between the Plan Proponents and the Resolute-Related Parties in the amount of $110 million.

To date, and prior to the effectiveness of the settlement with the Resolute-Related Parties and this settlement with USF&G, the total settlement consideration paid or to be paid to the Debtor or the Trust upon meeting certain conditions is approximately $251,275,000, with approximately $183,250,000 yet to be paid.

**C.     Settlement Agreement with USF&G.**

The basic terms of the settlement with USF&G are as follows: upon the fifteenth day following the finality of the orders confirming the Plan and the order approving this settlement: (i) USF&G shall pay $21 million in cash to the Trust, plus an additional $1 million payment made on or before December 31, 2016[4] (ii) the Debtor shall execute a bill of sale transferring the Policies to USF&G, (iii) the Debtor will dismiss USF&G with prejudice from the Declaratory Relief Action, and (iv) mutual releases shall be effective. The Settlement Agreement is expressly made subject to Bankruptcy Court approval.

---

[4] If the New Confirmation Order and the order approving this settlement are not final by December 31, 2016, the Settlement Agreement provides for the $1 million payment to be made 15 days after such orders become final.

Case: 09-31347    Doc# 2819    Filed: 08/27/14    Entered: 08/27/14 22:32:09    Page 8 of 24

**D.      USF&G as a Settling Asbestos Insurer Under the Plan.**

        This Court has jurisdiction to consider motions to approve settlements made before the "Outside Date," which is defined to be 15 days after the District Court issues its order confirming or affirming the Plan.  (Plan, § 10.3.)  With the District Court's order recently entered, the Outside Date is September 2, 2014.  As part of the approval of settlements with the Debtor's insurers, the Court considers whether it is appropriate that the Asbestos Insurer become a Settling Asbestos Insurer.  (Plan, § 1.105.)  The Plan Proponents seek such an order finding and declaring it appropriate that USF&G become a Settling Asbestos Insurer under the Plan and that USF&G is entitled to the benefits of the Plan injunctions.

## III.  ARGUMENT

**A.      The Settlement Should Be Approved, and USF&G Should Be Designated as a Settling Asbestos Insurer Under the Plan.**

    1.      <u>The Bankruptcy Code Encourages Settlements</u>.

        Bankruptcy Rule 9019(a) provides that a bankruptcy court may approve a compromise or settlement upon "a motion by the trustee and after notice and a hearing."  Fed. R. Bankr. P. 9019(a).  To evaluate proposed settlements, courts apply the standard set out in *Protective Committee of Indep. Stockholders for TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968).  Pursuant to that standard, a bankruptcy court will approve a proposed settlement if the court finds the settlement "fair and equitable" based on an "educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise."  *TMT Trailer Ferry*, 390 U.S. at 425.

        The Ninth Circuit has set forth the following factors to be considered in determining whether a settlement has met the "fair and equitable" standard:

> "[I]n determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the Court must consider (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises."

*Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854 (1986); *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988).

In deciding whether to approve a settlement a court should not substitute its own judgment for the judgment of a trustee or a debtor. *See, In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984). Further, the Court need not conduct an exhaustive investigation of the claims sought to be compromised. *See*, *In re Walsh Constr., Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982). Rather, it is sufficient that the Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. *See*, *A & C Properties*, 784 F.2d at 1381; *In re Churchfield*, 277 B.R. 769, 774 (Bankr. E.D. Cal. 2002). Accordingly, a settlement need only "be in the best interests of the estate and 'reasonable, given the particular circumstances of the case.'" *In re Mickey Thompson Ent. Group, Inc.*, 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003) (internal citations omitted). As a result, the Court is not required to decide the numerous questions of law and fact raised by the litigation. A "mini-trial" on the merits of the underlying cause of action is not required. *See In re Blair*, 538 F.2d 849, 851-52 (9th Cir. 1976); *Walsh Construction,* 669 F.2d at 1328; *In re Schmitt*, 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997). Instead, the Court's responsibility is only to "canvass the issues to see whether the settlement 'falls below the lower point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2nd Cir. 1983); *see also, In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).

     2.   <u>The Rule 9019 Standard Also Applies to this Court's Analysis of Whether to Designate USF&G as a Settling Asbestos Insurer Under the Plan</u>.

The Plan Proponents are seeking not only approval of the Settlement Agreement and the sale of Policies, but also designation of USF&G as a Settling Asbestos Insurer under the Plan pursuant to Sections 1.105 and 10.3 of the Plan. These sections were considered in the Court's Confirmation Opinion on the Original Plan and the Court found that its determination regarding whether one of the Debtor's insurers is entitled to be designated a Settling Asbestos Insurer, such that it receives the benefit of the Settling Asbestos Insurer Injunction, is to be governed by the standards for approval of settlements under Rule 9019. *See*, Confirmation Opinion (Dkt. No. 2048), at 75-78. In other words, the Court stated that the Rule 9019 factors

1  would be used to determine whether the insurer satisfied the requirements of Section 524(g), in

2  particular the requirement that the extension of the Settling Asbestos Insurer Injunction to such

3  insurer be "fair and equitable with respect to [future claimants] in light of the benefits provided, or

4  to be provided, to such trust on behalf of … such third party." 11 U.S.C. § 524(g)(4)(B)(ii);

5  Confirmation Opinion, at 75. Thus, the analysis of the 9019 factors in connection with the

6  approval of the Settlement Agreement also encompasses the analysis of whether all requirements

7  of Section 524(g) are satisfied, such that USF&G may be designated as a Settling Asbestos Insurer

8  under the Plan.

9       3.    <u>Factor 1: Probability of Success in Litigation</u>.

10      The inherent uncertainty relating to (1) the final outcome of the complex, multi-

11 phase Declaratory Relief Action and (2) the aggregate liabilities of the Debtor for Asbestos

12 Related Claims – past, present and future, known and unknown – causes this factor to weigh

13 heavily in favor of approval of the Settlement Agreement and designation of USF&G as a Settling

14 Asbestos Insurer under the Plan.

15      USF&G has continuously denied all allegations made by the Debtor against it in

16 the Declaratory Relief Action. Although the Debtor and the Trust are confident of their position in

17 the Declaratory Relief Action, litigation is uncertain by nature. Indeed, the Declaratory Relief

18 Action is a complex litigation that involves the interpretation of complex insurance agreements,

19 litigation of hotly disputed legal theories and defenses, and well-represented litigation adversaries

20 –non-settled insurers such as USF&G – who have the resources and motivation to complicate or

21 delay that litigation. The Declaratory Relief Action is not a simple up or down action; it bears

22 with it the possibility of an array of mixed results that would affect the ability of claimants to

23 recover from the insurers. Thus, there is the possibility that if USF&G is successful on certain

24 arguments, the recovery by claimants from these insurers could be substantially reduced or

25 eliminated.

26      Further, even assuming that the Trust prevailed in all respects in the Declaratory

27 Relief Action, the value of that litigation to claimants is uncertain because it is unclear how many

28 Asbestos Related Claims exist, given that such Claims include future demands that have not yet

1   manifested themselves and because the value of the Claims, if they were to be litigated in the tort

2   system, is difficult to assess.  Further even successful litigation of claims in the tort system would

3   not assure recovery against any given insurer in light of the need to prove that the claim is covered

4   by that insurer's policy.

5           4.    <u>Factor 2: Likely Difficulties in Collection</u>.

6           Likely difficulties in collection is a significant reason why the Plan Proponents

7   have agreed to the proposed settlement with USF&G.  First of all, insurance companies are not

8   immune to financial difficulties.  For example, MMIC, Arrowood, and certain of the Resolute-

9   Related Parties were experiencing financial difficulties or were in run-off.  But moreover, settling

10  with USF&G will mean that all of the parties that appealed the New Confirmation Order to the

11  District Court will have settled, such that they will not be seeking further appeals of that Order to

12  the Ninth Circuit.  This will in turn allow the New Confirmation Order to become final, and

13  provide for the satisfaction of a condition precedent to the payment of over $180 million in

14  payments made to already-approved insurance settlements.  Absent settlement with USF&G, the

15  Plan Proponents expect that USF&G would appeal the New Confirmation Order to the Ninth

16  Circuit.  That would not only delay collection under the previous settlements by up to two years,

17  but expose the Debtor's creditors to the risk that one or more of the previously settled insurers

18  may experience financial difficulty that could hinder their ability to pay during that two year

19  period.

20          5.    <u>Factor 3: Complexity and Expense of Litigation, and Inconvenience and Delay in Collection</u>.

21          The Declaratory Relief Action has been designated as complex litigation by the San

22  Francisco Superior Court, and involves the interpretation of complex insurance agreements and

23  the litigation of complicated legal issues, as described above.  In Phase II, the Debtor litigated

24  against 14 insurance carriers represented by no fewer than 12 different law firms.  Given the Plan

25  Proponents' familiarity with the insurers' litigation strategies, the Plan Proponents expect that

26  litigation of the Declaratory Relief Action, including as to USF&G, will continue to be complex,

27  time-consuming and expensive.  And, actual recoveries from these or other insurers would require

28

litigation of individual claims. Therefore, in the absence of settlement, the Plan Proponents expect that there would be a substantial delay in collecting any amounts from USF&G. In addition, absent the current settlement with USF&G, the Plan Proponents expect that USF&G would appeal the New Confirmation Order to the Ninth Circuit and cause a further delay of up to two years in the collection of over $180 million in already-approved insurance settlement payments.

In addition, settling with USF&G will end the litigation in state court and in this Court between the Plan Proponents and the non-settled insurers, saving the estate the significant expense associated with that litigation.

6.    Factor 4: Interests of Creditors.

The interests of creditors weigh very heavily in favor of settlement. The Committee, the Futures Representative and the Trustees of the Trust participated in the negotiation of the Settlement Agreement, all have approved it, and join in the Motion seeking the Court's approval of it. Thus, the representatives of all present and future asbestos claimants have approved the Settlement Agreement with USF&G. The Settlement Agreement will help present and future asbestos victims by funding the Trust in the near future, thereby allowing the victims to obtain compensation for their asbestos bodily injury and wrongful death claims without incurring the expense and delay of going to the tort system. The Settlement Agreement will also end the litigation with the non-settled insurers in the state court and in this Court, saving the Trust the significant expense associated with that litigation.

Thus, all of the Rule 9019 factors weigh in favor of approving the Settlement Agreement and finding that the extension of the Settling Asbestos Insurer Injunction to USF&G is fair and equitable to future claimants in light of the benefits provided and to be provided to the Debtor and the Trust under Bankruptcy Code section 524(g)(4)(B)(ii).

7.    Including USF&G as Part of an Identified Group.

Under Section 524(g)(4)(A)(ii), the injunctions issued pursuant to the Plan may protect an "identifiable group" from actions to recover on Asbestos Related Claims. Here, the Court has approved the Plan provision identifying a group of third parties (*e.g.*, Plant's asbestos insurers who had not yet settled) for whom the Court believed it would be appropriate to include

1   in certain of the injunctions provided for in the plan provided that certain conditions were met.

2   Those conditions are that the Court:

3               (i)     approves a settlement with such Asbestos Insurer;

4               (ii)    orders that it is appropriate that such Asbestos Insurer become a Settling

5                       Asbestos Insurer under the Plan, and is entitled to the benefits of the

6                       Settling Asbestos Insurer Injunction under the terms of the Bankruptcy

7                       Code, including Bankruptcy Code Section 524(g); and

8               (iii)   orders that such Asbestos Insurer shall be a Settling Asbestos Insurer under

9                       the Plan.

10  *See*, Plan §1.105.

11              Section 524(g)(4)(B)(ii) requires the court to evaluate from the perspective of

12  future asbestos claimants whether it would be fair and equitable "in light of the benefits provided

13  or to be provided" to the trust created by a plan to name a third party in the injunctions provided

14  by such a plan.  Here there is ample evidence that it would be fair and equitable to future asbestos

15  claimants to include USF&G in the injunctive protections provided for by the Plan.

16              In the declaration of Charles B. Renfrew submitted in support of this Motion (the

17  "Renfrew Decl."), the Futures Representative will identify the factors that he considered and

18  explained why in his fiduciary judgment and opinion USF&G should be included as part of the

19  group of Settling Asbestos Insurers protected under the injunctions of the Plan.  These factors

20  include:  the facts specific to Plant; the range of the number of potential future claimants; the

21  insurance policies at issue and the risks, burdens, and time delays associated with resolving the

22  Declaratory Relief Action and the appeal of this Court's Order confirming the Plan (the

23  "Appeal"); the role USF&G would play in the ongoing Declaratory Relief Action and the Appeal;

24  the availability and risks of direct action litigation by Future Claimants; the timing and amount of

25  payments by USF&G; and after reviewing the litigation risks, burden, and expense, in the Futures

26  Representative's fiduciary judgment and opinion the benefits provided to USF&G were not as

27  great as those provided to the Trust under the Settlement Agreement.

28

**B.**      **The Sale of the USF&G Policies Should Be Approved**.

　　1.      Sales Outside the Ordinary Course Are Permitted if There Is a Valid Business Justification for the Sale and It Is Proposed in Good Faith.

　　Bankruptcy Code section 363(b) provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  Such a sale will be approved if the debtor demonstrates that "such disposition has a valid business justification … [and] the sale is proposed in good faith."  *In re 240 North Brand Partners, Ltd*., 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) (citing *In re Lionel Corp*., 722 F.2d 1063, 1070 (2nd Cir. 1983) and *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991)); *see also, In re Walter*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) (stating that a debtor must show "some articulated business justification for using, selling, or leasing the property outside the ordinary course of business…. Whether the proffered justification is sufficient depends on the case.").  Great deference is generally afforded to the business judgment of the debtor.  *See, e.g., Lebbos v. Schuette*, No. 08-CV-00680, 2008 WL 5103200, at *5 (E.D. Cal. Dec. 2, 2008) (affirming bankruptcy court's approval of the sale of a cause of action by the trustee over the objection of the debtor); *see also, In re Lahijani*, 325 B.R. 282 (9th Cir. BAP 2005).  Here, not only the Debtor, but also the Trust, the Committee and the Futures Representative, have exercised their business judgment to approve the settlement.

　　The sound business purpose supporting the sale in this case is the desire of the Debtor, the Trust, the Committee, and the Futures Representative to fund the 524(g) trust for the benefit of present and future asbestos victims of the Debtor.  This purpose is the same as the general business purpose for the Settlement Agreement as a whole, of which the sale is a part.

　　2.      The USF&G Policies Are Property of the Estate That May Be Sold Pursuant to Section 363(b).

　　The Ninth Circuit Court of Appeals, along with a majority of other courts, has held that insurance policies are property of a debtor's bankruptcy estate.  *See, In re Minoco Grp. of Cos.*, 799 F.2d 517, 519 (9th Cir. 1986) (holding that insurance "liability policies meet the fundamental test of whether they are 'property of the estate' because the debtor's estate is worth more with them than without them"); *see also, First Fidelity Bank v. McAteer*, 985 F.2d 114, 116

1   (3rd Cir. 1993) ("This Court has held that insurance policies are property of the estate ...."); *In re*

2   *Johns-Manville Corp.*, 837 F.2d 89, 92 (2nd Cir. 1988) ("Numerous courts have determined that a

3   debtor's insurance policies are property of the estate, subject to the bankruptcy court's

4   jurisdiction."), *cert. denied*, 488 U.S. 868 (1988); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994,

5   1001 (4th Cir. 1986) (same), *cert. denied*, 479 U.S. 876 (1986).

6          As property of the Debtor's estate, the USF&G Policies may be sold pursuant to

7   Bankruptcy Code section 363(b).  Consequently, a number of courts, including this one, have

8   authorized the buyback of insurance policies by insurance companies pursuant to section 363 in

9   connection with settlements regarding the amount of liability coverage for asbestos claims.  *See*, *In*

10  *re Thorpe Insulation Co.*, No. 07-19271 (BB) (Bankr. C.D. Cal. Nov. 25, 2008) (approving

11  settlement involving the buyback of insurance policies pursuant to section 363 of the Bankruptcy

12  Code), appeal dismissed, 2010 WL 3199821 (9th Cir. Mar. 5, 2010); *In re Thorpe Insulation Co.*,

13  No. 07-19271 (Bankr. C.D. Cal. May 20, 2008) (same); *In re Burns and Roe Enters., Inc.*, Case

14  No. 00-41610 (RG) (Bankr. D.N.J. Feb. 17, 2005) (same).  This Court approved several such sales

15  of liability policies back to the issuing insurer when it approved the Debtor's settlements with

16  Arrowood, MMIC, Allianz, ACE, U.S. Fire, Safety National and ICW.

17          It is the Debtor's reasonable business judgment, as well as the Trust's, the

18  Committee's and the Futures Representative's, that the sale of the USF&G Policies pursuant to

19  Bankruptcy Code section 363(b), as required by the Settlement Agreement, are in the best interest

20  of the Debtor's estate and its creditors.  As stated above, absent approval of the Settlement

21  Agreement and the accompanying sale and buyback of the Policies, the Debtor, and the Trust

22  potentially will be faced with years of additional expensive and inherently uncertain litigation with

23  USF&G.  Indeed, because USF&G is the last remaining non-settled insurer, settlement with

24  USF&G will resolve the outstanding litigation in the state court and this Court.  It will also pave

25  the way for the commencement of the over $180 million in already-approved settlement payments

26  that conditioned upon the finality of the New Confirmation Order.  Finally, the sale is supported

27  by both the Committee and the Futures Representative, who were active participants in the

28

negotiation and documentation of the settlement.  Therefore, the sale of the USF&G Policies should be approved.

3.  <u>Section 363(f) Authorizes the Sale of the Policies to Be Free and Clear of Claims, Including Subject Claims</u>.

The Policies may not only be sold, they may be sold free and clear of all Claims. Bankruptcy Code section 363(f) provides that a sale under section 363(b) may be free and clear of any and all liens, claims, interests and other encumbrances if any one of the following conditions is satisfied:

> "(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

11 U.S.C. § 363(f).  Here, the Policies may be sold free and clear of Claims pursuant to subsections 363(f)(2), (f)(4) or (f)(5) of the Bankruptcy Code.

a.  *Free and Clear by Consent – 363(f)(2).*

Those holders of Claims that receive notice of the proposed Settlement Agreement and fail to object should be deemed to have consented to the Settlement Agreement for purposes of section 363(f)(2) of the Bankruptcy Code.  *See, e.g., FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002) (in context of section 363(f), "lack of objection provided of course there is notice counts as consent"); *In re James*, 203 B.R. 449, 453 (Bankr. W.D. Mo. 1997) (section 363(f)(2) satisfied where secured creditor had notice and failed to object to proposed sale and thus "implicitly conveyed its consent to the sale"); *In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (because of tax lien holder's failure to object to sale, it "may be deemed to have consented to the sale for purposes of section 363(f)(2)"); *In re Elliot*, 94 B.R. 343, 345-46 (E.D. Pa. 1988) (implied consent sufficient to authorize section 363(f)(2) sale; consent implied from non-debtor that "received notice of the proposed sale and also admits that it did not file any

timely objection"); *In re Gabel*, 61 B.R. 661, 664-65 (Bankr. W.D. La. 1985) (estopping secured creditor that was properly noticed and failed to object from denying its implied consent to sale of property under section 363(f) of the Bankruptcy Code).

Further, in the context of the settlement of claims with insurers related to a debtor's asbestos liabilities, courts have held that consent by a creditors' committee and/or futures representative, plus the lack of objection by asbestos claimants notified of the proposed settlement, may also provide the necessary consent for purposes of section 363(f)(2) of the Bankruptcy Code. *See, In re Thorpe Insulation Co.*, No. 07-19271 (BB) (Bankr. C.D. Cal. Nov. 25, 2008) (holding that asbestos claimants could be deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code where no persons holding asbestos personal injury claims objected and the settlement agreement was supported by the creditors' committee and future asbestos claims representative); *see also, In re Burns and Roe Enters., Inc.*, Case No. 00-41610 (RG) (Bankr. D.N.J. Feb. 17, 2005) (holding that insurance policies could be sold back to insurance companies "free and clear of Interests under section 363(f) of the Bankruptcy Code" and, in particular, section 363(f)(2) of the Bankruptcy Code).

The instant Settlement Agreement is supported by the Trust, the Committee and the Futures Representative, who participated in their negotiation and documentation.

           b.     *Free and Clear Due to Bona Fide Dispute – 363(f)(4).*

In the event that any holders of Claims object to the sale and thus cannot be said to consent, the Policies may be sold free and clear of Claims pursuant to Bankruptcy Code section 363(f)(4). Sales free and clear are appropriate under section 363(f)(4) because the interests of the holders of such claims plainly are "in *bona fide* dispute" as a result of the insurers' (including USF&G's) positions in the Declaratory Relief Action. *See, In re Johns-Manville Corp.*, 837 F.2d at 93 (holding that vendors' alleged rights under certain endorsements for indemnity for asbestos claims were in *bona fide* dispute because dispute existed as to whether "the product liability limits on the policies to which the vendor endorsements attach have been exhausted"). USF&G and the other Insurers have asserted in the Declaratory Relief Action that no further insurance coverage exists. Even if coverage exists, the Debtor has not conceded that any particular Claim is valid in

the amounts sought by the claimant and expects that it or the Trust will challenge or deny certain Claims due to lack of proof.  Accordingly, there are a number of actual unresolved "disputes" with respect to the Claims that makes section 363(f)(4) of the Bankruptcy Code applicable.

        c.     *Free and Clear by Ability to Compel Acceptance of Money Satisfaction – 363(f)(5).*

Finally, Bankruptcy Code section 363(f)(5) also separately authorizes the free and clear aspect of the sale of the Policies.  Under (f)(5), holders of Claims, including Subject Claims, could be compelled to accept a money satisfaction for their interests.  Indeed, the potential right to a money satisfaction is likely the *only* interest that the holders of Claims have in the Policies.  For this reason, this Court and other courts have approved the sale of insurance policies free and clear of asbestos claims pursuant to section 363(f)(5) of the Bankruptcy Code.  *See*, Dkt. Nos. 1107 and 2014; *see also, In re Thorpe Insulation Co.*, No. 07-19271 (BB) (Bankr. C.D. Cal. Nov. 25, 2008); *In re Burns and Roe Enters., Inc.*, Case No. 00-41610 (RG) (Bankr. D.N.J. Feb. 17, 2005).

Thus, sale of the Policies free and clear of all Claims is appropriate pursuant to either section 363(f)(2), (f)(4) or (f)(5) of the Bankruptcy Code.

    4.    <u>The Sale of the Policies Was Negotiated in Good Faith and USF&G is Entitled to the Protections of Bankruptcy Code Section 363(m).</u>

The Settlement Agreement and related sale of the Policies were negotiated in good faith among the Debtor, the Trust, the Committee, and the Futures Representative, on the one hand, and USF&G, on the other hand, entitling USF&G to the protections afforded to a good faith purchaser under Bankruptcy Code section 363(m).

A good faith purchaser "is one who buys 'in good faith' and 'for value.'"  *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (citing *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)).  "[L]ack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'"  *Id.* (quoting *In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985)); *see also*, *In re Filtercorp, Inc.,* 163 F.3d 570, 577 (9th Cir. 1998).

There was no fraud or collusion in the negotiations of the Settlement Agreement; the Plan Proponents and USF&G negotiated it at arm's length and in good faith.  USF&G will pay

valuable settlement consideration, and will also provide its half of the mutual releases set forth in the Settlement Agreement. The Debtor, the Trust, the Committee and the Futures Representative all believe that the negotiations were conducted in good faith. Further, as will be set forth at no time did USF&G engage in any fraud or collusion in connection with the negotiations over the Settlement Agreement. USF&G is a good faith purchaser for value of the Policies and is entitled to the protections afforded by section 363(m) of the Bankruptcy Code.

**C.      The Reconsideration Procedures Should Be Approved.**

This Court should approve the procedures for reconsideration of any order approving the Motion (the "Reconsideration Procedures") in order to allow the Court to enter an order on the Motion on before the Outside Date of September 2, 2014. As stated above, by September 2, 2014, the Plan requires the Court to have entered an order finding it appropriate for a particular settling insurer to be designated as a Settling Asbestos Insurer entitled to the benefits of the Settling Asbestos Insurer Injunction in the Plan. This is a material part of the consideration that the Plan Proponents are giving to USF&G, and is an express condition to USF&G's obligation to make any settlement payments at all under the Settlement Agreement.

In a nearly identical situation in this case, the Court approved similar Reconsideration Procedures in connection with the settlement with the ACE Entitles. That settlement was reached days before the first Outside Date in October 2012, and before the Ninth Circuit reversed the Plan confirmation order and caused the Outside Date to be recalibrated based on the amended Plan. In connection with that settlement with ACE, the Court entered an order approving the settlement on October 24, 2012, one week after the motion to approve the settlement was filed. The Court approved Reconsideration Procedures in that Order (*See*, Dkt. No. 2402), which allowed objecting parties to pursue their objections on full notice after the original order was entered without facing the heightened standard applicable to motions for reconsideration. Under this procedure, several non-settling insurers did pursue reconsideration of the settlement order on full notice, though the Court affirmed the original order and overruled the further objections. (*See*, Dkt. No. 2573).

In addition, the pending settlement with the Resolute-Related Parties proposes identical Reconsideration Procedures.

The proposed Reconsideration Procedures, which are substantially identical to those from the ACE settlement, are as follows. The Plan Proponents seek to have any order approving the Motion contain such procedures:

1.    <u>Procedures for Reconsideration.</u>

     a.    USF&G and each of the Plan Proponents have confirmed on the record that each of them (i) agrees to the Reconsideration Procedures set forth in this paragraph, (ii) irrevocably waives any objection to such procedures or to the form, sufficiency or timeliness of submissions that are made in accordance with such procedures, and (iii) consents to extensions of time and modification of deadlines and procedures established under Rules 9023 and 9024 of Federal Rules of Bankruptcy Procedure, or under Bankruptcy Local Rule 9013-1(b), as to any motion brought pursuant to this paragraph and in accordance with the deadlines and procedures provided herein.

     b.    Any party in interest may seek reconsideration of this Order under Bankruptcy Rules 9023 or 9024 by filing, within 21 days following the date of entry of this Order, either a motion that conforms to the requirements specified in subparagraph (c) immediately below, or a written joinder in such a motion timely filed by another party.

     c.    A motion shall be sufficient for purposes of this paragraph if it includes (i) a writing entitled "Motion for Reconsideration" that identifies the moving party or parties and states that the moving party or parties intend or may wish to seek reconsideration of this Order, and (ii) a declaration of one of the moving parties, which may be signed by party's counsel, stating that the party intends or may wish to seek reconsideration. A joinder shall be sufficient for purposes of this paragraph if it is made in writing, states the party's intention to join in a motion, and identifies the party or parties on whose behalf it is filed and the motion to which it relates (either by docket number or the identity of the party filing the motion); a timely filed joinder shall entitle the joining party to participate fully in

SMRH:431288771.2

USF&G SETTLEMENT MOTION

all further proceedings conducted pursuant to this paragraph. No other papers need be filed within the 14-day deadline for a motion or joinder to be considered timely filed.

      d.     If one or more motions for reconsideration are timely filed, counsel for the moving parties and for any parties that have timely filed joinders in one or more of those motions shall meet and confer with counsel for the Plan Proponents and for USF&G to seek to establish a mutually agreeable schedule for the filing of further papers (which may include substantive declarations or other evidence by or on behalf of any of the moving parties or joining parties) and hearing on the motions for reconsideration. If the parties are not able to agree on a schedule, the Court shall, after hearing from the parties, set a schedule that permits a reasonable time for the moving and joining parties to supplement the papers filed initially as permitted under subparagraph (c) above, and that is consistent with the principles stated in subparagraph (e) below.

      e.     In any motion for reconsideration brought under these Reconsideration Procedures, the Court shall consider the Motion and the appropriateness of the Settlement with USF&G de novo; the burden on the parties seeking reconsideration shall be the same as if they had filed a timely objection prior to the issuance of this Order, and the burden on the Plan Proponents and on USF&G shall be the same as they initially had on the Motion in responding to any timely and procedurally appropriate objection to such motion. A party seeking reconsideration of this Order under the Reconsideration Procedures need not establish separate grounds for reconsideration.

      f.     A timely motion for reconsideration in accordance with the procedures in this paragraph shall operate to stay, until the expiration of 14 days after entry of an order resolving such motion, the implementation or performance of any provision of the Settlement Agreement, that is by its terms to be performed on or after the Settlement Effective Date as defined in the Settlement Agreement.

      g.     Notwithstanding any disposition of the appeal of the Plan Confirmation Order, this Court retains jurisdiction pursuant to Section 9(e), (f), and (g) of the Plan and paragraph 46 of the Order confirming the amended Plan, entered March 3, 2014 as Docket

USF&G SETTLEMENT MOTION

No. 2722, to resolve any motions for reconsideration pursuant to this paragraph. The Plan Proponents and USF&G hereby confirm, and will confirm on the record at the hearing, that they will not challenge the Court's jurisdiction to decide any such motions for reconsideration under theories of mootness, equitable mootness or otherwise, nor will they encourage or act in concert with others to do so.

## IV. CONCLUSION

For the reasons set forth above, the Plan Proponents request that the Court enter an order: (i) approving the Settlement Agreement pursuant to Bankruptcy Rule 9019, (ii) approving the sale of the Policies free and clear of Claims pursuant to Bankruptcy Code sections 363(b) and 363(f), (iii) ordering that it is appropriate that USF&G become a Settling Asbestos Insurer under the Plan; (iv) approving the Reconsideration Procedures; and (v) granting such other and further relief as the Court may deem necessary or appropriate.

Dated: August 27, 2014

CAPLIN & DRYSDALE, CHARTERED

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____*/s/ Steven B. Sacks*_____
　　　　　　　STEVEN B. SACKS

Attorneys for Official Committee of Unsecured
Creditors of Plant Insulation Company

Dated: August 27, 2014

FERGUS, A LAW OFFICE

By _____*/s/ Gary S. Fergus*_____
　　　　　　　GARY S. FERGUS

Attorney for the Hon. Charles B. Renfew (Ret.)
Futures Representative

SMRH:431288771.2

USF&G SETTLEMENT MOTION

Dated:  August 27, 2014

SCHNADER HARRISON SEGAL & LEWIS LLP

By _____
          */s/ George H. Kalikman*
          GEORGE H. KALIKMAN

Attorneys for the Reorganized Debtor